IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

THE UNITED STATES OF AMERICA,      )
                                   )
              Plaintiff,            )         CIVIL ACTION NO. 8:23-cv-416
                                   )
      v.                            )
                                   )
GENERAL DYNAMICS CORPORATION       )
                                   )
and                                 )
                                   )
DOW CHEMICAL COMPANY,              )
                                   )
              Defendants.           )
                                   )
_____  )

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States

and through the undersigned attorneys, acting at the request of both the Administrator of the

United States Environmental Protection Agency ("EPA") and the Commander of the United

States Army Corps of Engineers ("Corps"), files this Complaint and alleges as follows:

## INTRODUCTION

1.      This is a civil action brought pursuant to Sections 107(a) and 113(g)(2) of the

Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended

("CERCLA"), 42 U.S.C. §§ 9607(a) and 9613(g)(2).  The United States seeks to recover

response costs incurred and to be incurred by the United States as a result of releases of

hazardous substances at the Nebraska Ordnance Plant Superfund Site, located in Mead, Nebraska

(the "Site").  The United States also seeks a declaratory judgment that the Defendants will be

liable for future response costs that the United States may incur in connection with the Site.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over the subject matter of this action and the Defendants pursuant to Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b), and 28 U.S.C. §§ 1331 and 1345.

3.      Pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), venue is proper in this district because the releases or threatened releases of hazardous substances that give rise to the claims in this action occurred in this judicial district.

**DEFENDANTS**

4.      Defendant General Dynamics Corporation (hereinafter, "General Dynamics") and Defendant Dow Chemical Company (hereinafter, "Dow") (General Dynamics and Dow jointly, "Defendants") are each a "person," within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21), who operated the Site at the time of disposal of hazardous substances at the Site, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**BACKGROUND**

5.      The Nebraska Ordnance Plant Superfund Site occupies approximately 17,250 acres one-half mile south of the town of Mead in Saunders County, Nebraska.  The Site was placed on the National Priorities List in August 1990, after soil and groundwater at the Site were determined to be contaminated with explosives and the organic solvent trichloroethylene ("TCE").

6.      The United States Department of Defense (then, the "War Department") acquired the Site in 1942 and constructed a bomb loading plant to produce aerial bombs for World War II ("WWII").  Prior to the construction of this facility, known as the Nebraska Ordnance Plant ("NOP"), the Site consisted of agricultural lands.

2

7.      The NOP was what was known as a "load and pack facility."  Owned by the government and operated by contractors, the facility's purpose was to assemble bombs from various raw materials shipped to the Site.  Bomb castings, TNT, neutral ammonium nitrate liquor, ammonium nitrate crystals, and booster casings were shipped to the Site for assembly.

8.      During WWII, the NOP consisted of four load lines (each load line consisting of a series of buildings occupying several hundred yards) where bombs were assembled; the burning proving ground, where fuses were tested and materials were destroyed by burning; a bomb booster assembly area, where boosters that amplify the effect of the detonators were assembled; a landfill; and an administration area.  An ammonium nitrate production facility, including explosive and ammonium nitrate storage areas, was also constructed on the Site.

9.      The NOP began operating in 1943.  The plant was operated by the Nebraska Defense Corporation ("NDC"), a wholly-owned subsidiary of Firestone Tire and Rubber Company, under contract to the War Department.  At the war's end, operations ceased at the NOP, and, in September 1945, the plant was placed in standby status.  The War Department regained custody of the plant from the NDC effective in October 1945.  During NDC's years of operation, the four load lines had a total capacity of 11,520 100-pound bombs per twenty-four hours.

10.     The NOP was reactivated in 1951, and, in April 1951, National Gypsum Company was awarded the contract to operate the plant.  National Gypsum operated the NOP assembling various bombs until 1956, when the NOP was again placed in standby status.

11.     In 1959, the United States Department of the Army ("Army") granted the United States Department of the Air Force ("Air Force") permission to use land at the NOP to construct an Atlas Missile facility.  Construction of facility infrastructure was overseen by the Corps.

12.     General Dynamics and its subcontractors installed launch facilities and launch support equipment between approximately June 1960 and March 1961 for three Atlas "D" series missiles to be deployed at this Site.

13.     During the installation and operational testing of the missile facility, TCE was used and disposed of by and/or under the direction of General Dynamics and Dow in the process of cleaning various parts and structures at the facility.

14.     Upon demonstrating that the missiles were fully operational, in approximately March 1961, General Dynamics turned the missile facility back over to the Air Force.

15.     In approximately July 1961, General Dynamics re-engaged at the Site for the purpose of implementing the Golden Ram Program, intended to upgrade and enhance the reliability of the missiles.  The Golden Ram Program appears to have been completed in early January 1962.

16.     General Dynamics also was involved in the Dual Propellant Loading Program at the Site in approximately March and April 1962.

17.     General Dynamics' employees and subcontractors, including Dow, used and disposed of TCE in the course of cleaning various missile parts and structures throughout General Dynamics' presence at the Site.

18.     Dow Industrial Services, a division of Dow Chemical Company, furnished facilities and equipment, including TCE, as well as personnel, necessary to perform cleaning operations for various parts and equipment at the Site.  On information and belief, and subject to a reasonable opportunity for further investigation or discovery, Dow performed work at the Site between approximately April 1960 and April 1961, and again between sometime in 1962 and approximately February 1963.

4

19. The Air Force removed the missiles from the Site in 1964.

20. Through a series of transactions commencing in April 1962, the United States quit-claimed to the University of Nebraska parcels comprising more than 9,500 acres of the NOP. The University established an Agricultural Research and Development Center ("ARDC") on the former NOP parcels. The ARDC continues to operate on the Site today.

## RESPONSE ACTIONS TAKEN AT THE SITE

21. Pursuant to a January 1992 Inter-Agency Agreement ("IAG") between EPA Region 7, the State of Nebraska, and the Department of Defense, the Corps is the lead federal agency for the investigation and remediation of the Site, in consultation with the IAG signatories.

22. Site investigations performed by or under the oversight of the Corps revealed soil, sediment, surface water, and groundwater contamination by TNT and other explosive contaminants, and TCE and other chlorinated solvents in the areas of the load lines, bomb booster assembly area, burning/proving grounds, the former administrative area, the landfill area, and the area of the Atlas missile launch facilities.

23. The Corps, in consultation with EPA and the Nebraska Department of Environmental Quality ("NDEQ"), organized detailed investigation and remediation of the Site into several operable units ("OUs"). Operable Unit 1 ("OU1") was directed at the control and remediation of explosives compounds in the upper four feet of soil in the load line areas contaminated primarily with explosives compounds. Operable Unit 2 ("OU2") was directed at the control and remediation of contaminated groundwater, soils contaminated with TCE, and soil contamination by explosives at depth greater than 4 feet below ground surface.

24. The Corps commenced a Remedial Investigation ("RI") of OU2 in 1992 to evaluate the nature and extent of explosives and chlorinated solvent contamination in the

5

groundwater at the Site.  The OU2 RI identified four groundwater contamination plumes, each plume associated with one of the four load line areas.  Two of the groundwater plumes are contaminated almost exclusively with explosives; these are the plumes associated with Load Lines 2 and 3.  The groundwater plumes associated with Load Lines 1 and 4 are contaminated with commingled explosives and TCE.

25.     The Record of Decision ("ROD") for OU2 was signed by the Army in March 1997, and by EPA Region 7 in April 1997.  The OU2 ROD addresses both explosives and TCE groundwater contamination, and the chosen remedy calls for containing, extracting, and treating contaminated groundwater by a series of onsite groundwater wells.  The ROD also requires that an alternate water supply be provided to impacted area residents.  Finally, the OU2 ROD called for soil removal and incineration in specific areas where soils were determined to be potential continuing sources of contamination to groundwater.  OU2 groundwater treatment is continuing.

26.     Operable Unit 3 ("OU3") addresses remaining contamination problems not addressed by the OU1 soil remediation or the OU2 groundwater remedies.  The OU3 RI focused primarily on thirty areas of elevated soil metal concentrations in the areas of Load Lines 2 and 4. Antimony has been identified as the OU3 primary contaminant of concern.

27.     Only response actions addressing OU2, and response costs incurred and to be incurred in connection with those actions, are at issue in this Complaint.  In accordance with Section 121(f)(1)(E) of CERCLA, 42 U.S.C. § 9621(f)(1)(E), and the National Contingency Plan, 40 C.F.R. Part 300, the State of Nebraska, through the NDEQ as a signatory to the IAG, has had a reasonable opportunity to review and comment on the RI and the selected remedial activities for OU2.

## LAW GOVERNING THE UNITED STATES' CLAIMS UNDER CERCLA

28.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

(a) Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section –
> (1) the owner and operator of a vessel or a facility,
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
> * * *

shall be liable for –
> > (A) all costs of removal or remedial action incurred by the United States Government or a State . . . not inconsistent with the national contingency plan . . . .

29.     Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), provides in pertinent part:

In any such action described in this subsection [an action for recovery of costs under Section 107 of CERCLA], the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.

## GENERAL ALLEGATIONS

30.     The Nebraska Ordnance Plant Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

31.     TCE is a "hazardous substance" as that term is defined at Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), and 40 C.F.R. Part 302.4.

32.     There have been, and continue to be, "releases" and "threatened releases" of "hazardous substances," as those terms are defined, respectively, at Sections 101(22) and (14) of CERCLA, 42 U.S.C. §§ 9601(22) and (14), into the environment at and from the Site.

33.     As a result of the releases or threatened releases of hazardous substances at or from the Site, the United States has incurred "response" costs within the meaning of Sections

101(25) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(25) and 9607(a), for actions taken in response to the releases or threatened releases at or from the Site. These costs include, but are not limited to, costs incurred to investigate, monitor, survey, test, and otherwise gather information at the Site, and to oversee and implement remedial actions at the Site. In addition, these costs include costs incurred by the United States for planning, legal, and other activities necessary or appropriate to plan and direct response actions, to recover the costs of response actions, and for enforcement purposes, relating to the Site. The United States will continue to incur response costs in connection with the Site.

34.    As a result of such response actions, as of September 30, 2022, the United States had incurred at least $125 million in unreimbursed response costs in connection with OU2 TCE remediation. The response costs incurred by the United States in connection with OU2 were incurred in a manner not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300. The United States continues to incur costs in connection with OU2 groundwater TCE contamination.

## DEFENDANTS' CERCLA LIABILITY

35.    Paragraphs 1 through 34 are realleged and incorporated herein.

36.    From approximately 1959 to 1964, the Army granted the Air Force permission to construct and operate an Atlas missile facility at the Site, and from approximately early 1960 to approximately early 1962, Defendant General Dynamics, under contract to the Air Force, as well as numerous sub-contractors to General Dynamics, including Defendant Dow, installed and made operational the missile facility at the Site, including the cleaning of parts and equipment as necessary to accomplish those tasks. On information and belief and subject to a reasonable opportunity for further investigation or discovery, Dow supplied and used TCE for cleaning

operations on the Site between approximately April 1960 and April 1961 and again between sometime in 1962 and approximately February 1963.

37.     Defendants' activities included the cleaning of parts and equipment associated with the missile system and the testing of that system, including test firing of rocket engines. These activities involved the use and disposal of significant quantities of TCE on the Site.  TCE continues to contaminate groundwater at the Site.  TCE is a "hazardous substance" within the meaning of CERCLA.

38.     Defendants General Dynamics and Dow are "persons" within the meaning of CERCLA Section 101(21), 42 U.S.C. § 9601(21), who operated the Site during times that TCE was disposed of on the Site.

### FIRST CLAIM FOR RELIEF:
**Section 107(a) of CERCLA**

39.     Paragraphs 1 through 38 are realleged and incorporated herein.

40.     As operators of the Site during times that hazardous substances were disposed of on Site, Defendants General Dynamics and Dow are within the class of persons described as liable parties in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).  Accordingly, Defendants are liable for response costs incurred and to be incurred by the United States in response to releases of hazardous substances at the Site, including related oversight costs and related indirect, administrative, investigative, and enforcement costs.

41.     Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the United States is entitled to recover interest on the response costs it has incurred.

42.     Defendants have not reimbursed any of the costs incurred by the United States responding to the release of hazardous substances at the Site.

## SECOND CLAIM FOR RELIEF:
### Declaratory Judgment Under Section 113(g) of CERCLA

43.     Paragraphs 1 through 38 are realleged and incorporated herein.

44.     Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the United States is entitled to "a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that the Court:

A.     Enter judgment in favor of the United States and against Defendants, jointly and severally, for unreimbursed response costs incurred by the United States in connection with TCE contamination at OU2 at the Site, plus interest;

B.     Enter a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that Defendants are liable, jointly and severally, for future response costs or damages incurred by the United States in connection with TCE contamination at OU2 at the Site; and

C.     Grant such other relief as the Court deems appropriate.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

/s/  *Frederick S. Phillips*
FREDERICK S. PHILLIPS
D.C. Bar # 433729
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044-7611
(202) 305-0439

/s/  *Charles Fletcher*
CHARLES FLETCHER
D.C. Bar # 1645155
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044-7611
(202) 514-2267

OF COUNSEL:

ANN L. WRIGHT, Esq.
EMMA ALTHEIDE, Esq.
U.S. Army Corps of Engineers
Kansas City District
Office of District Counsel
700 Bolling Federal Building
Kansas City, MO 64106-2896

JARED PESSETTO, Esq.
Assistant Regional Counsel
U.S. EPA, Region VII
Office of Regional Counsel
11201 Renner Boulevard
Lenexa, Kansas 66219

11