**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Counter Defendant,<br><br>v.<br><br>GENERAL DYNAMICS CORPORATION AND DOW CHEMICAL COMPANY,<br><br>Defendants/Counter Claimants. | Civil Action No. 8:23-cv-00416 |

**JOINT STATUS REPORT**

Plaintiff, the United States of America, and Defendants, General Dynamics Corporation (GD) and Dow Chemical Company, provide this joint status report regarding the production of classified documents in the above-captioned Action, as required by the Amended Case Progression Order entered on December 12, 2024 (Dkt. 228). Specifically, the Court ordered that the parties' joint status report "detail the parties' progress and efforts made towards the production of currently classified, responsive documents, and provide an anticipated date of completion." (Dkt. 228 ¶3.) The parties set forth below their respective statements on the relevant issues.

**Plaintiff's Statement:**

There are three sets of classified records at issue in this case:

Classified Documents Held By The Air Force

The first are those held by the Air Force at the Air Force Historical Research Agency, Air Force Materiel Command, and Air Force Global Strike Command. The parties have identified 194 potentially responsive classified documents that are held by these Air Force components. These documents are classified as Secret, and total tens of thousands of pages. The United States has reviewed 142 of these documents, totaling more than 32,000 pages, for responsiveness to

discovery requests. The United States is continuing its efforts to review for responsiveness the remaining 52 classified documents held by the Air Force.

Of the 142 classified documents held by the Air Force that the United States has reviewed for responsiveness, the United States has identified 101 documents (or portions thereof) that are responsive, which totals over 20,000 pages. The United States has requested declassification of these documents (or portions thereof). However, each page requires an initial line-by-line review by the Air Force Declassification Office. Approximately two thirds of those pages require a secondary line-by-line review by another agency's technical experts, either because they contain information that must be approved for release by that agency, or because they are marked as Restricted Data or Formerly Restricted Data (RD/FRD), meaning that they contain nuclear information. While the parties agree that information related to the nuclear warhead is not responsive in this case, the RD/FRD designation applies to the entire document. Thus, after the Air Force Declassification Office completes its review, the documents must then go to another government agency, such as the Office of the Secretary of Defense or the Department of Energy, for a secondary, technical review by a nuclear subject matter expert. To date, 23 documents (or portions thereof) have been declassified. The United States anticipates that it will produce those 23 declassified documents (or portions thereof) before the next status report.

On August 9, 2024, in response to GD's request, the United States provided to GD instructions for a GD attorney to obtain access to classified documents held at the Air Force Historical Research Agency, which includes the majority of the 194 potentially responsive classified documents that are held by the Air Force. GD has represented to the United States that GD has an attorney with the appropriate clearance to access these Secret-level documents. GD's own review of these documents could potentially speed up the declassification process—if, for

example, GD were to determine that certain documents, or portions thereof, are not responsive and need not be declassified. To the best of the United States' knowledge, GD has not reviewed any of these Secret-level classified documents held at the Air Force Historical Research Agency.

Classified Air Force Documents Held At NARA

The second set of classified documents is at the National Archives and Research Administration (NARA) and consists of Secret-level classified documents originating with the Office of the Secretary of the Air Force. NARA policy provides that the originating government office must authorize access to its collections. The United States has identified approximately 104 potentially responsive classified documents across three Records Groups in the Secretary of the Air Force collection at NARA. The United States is working with NARA to obtain access to these documents, to review them for responsiveness to discovery requests, and believes it will be able to begin that review before the next status report.

GD requested access to documents from two of these Secretary of the Air Force Records Groups, and on November 7, 2024, the Air Force submitted a letter to NARA authorizing this request. GD has represented to the United States that GD has an attorney with the appropriate clearance to access these Secret-level documents. As with the first set of classified documents (i.e., classified documents held by the Air Force), GD's own review of these documents could potentially speed up the declassification process—if, for example, GD were to determine that certain documents, or portions thereof, are not responsive and need not be declassified. To the best of the United States' knowledge, GD has not reviewed any of these Secret-level classified documents held at NARA that originated with the Air Force.

Classified Secretary of Defense Documents Held At NARA

The third set of classified documents is also housed at NARA, but originated with the Office of the Secretary of Defense. These documents are classified as compartmented Top Secret Nuclear records (TS/Q or TS/CNWDI).

On October 14, 2024, GD requested that the United States provide a point of contact at NARA so GD could arrange for a GD attorney with Top Secret clearance to assist with the responsiveness review of the Top Secret Nuclear records. The United States provided a point of contact on October 17, 2024. The United States understands from GD that on October 25, 2024, NARA informed GD's attorney that he would also need "Department of Energy Q clearance or equivalent Critical Nuclear Weapon Design Information (CNWDI) clearance" to view the requested records in the OSD Top Secret collection, that GD began the process to obtain such access through the Department of Energy, and that the Department of Energy referred the issue to the Department of Defense and the Air Force.

On January 3, 2025, the Office of the Secretary of Defense informed the Air Force and the Department of Justice that, as the owner of these records, the Office of the Secretary of Defense is the only entity that can grant GD access. According to the Office of the Secretary of Defense, these nuclear records are very strictly protected due to national security concerns and, absent a court order that explicitly states GD's "need to know" Critical Nuclear Weapon Design Information, the Office of the Secretary of Defense will not authorize GD's access to that information.

As with the Secret-level classified documents originating with the Office of the Secretary of the Air Force, the United States is working with NARA to obtain access to these documents, to review them for responsiveness to discovery requests. However, GD previously informed the United States that GD does not consider information about the nuclear warhead to be relevant.

Therefore, in the United States' view, GD has not articulated a "need to know" Top Secret Critical Nuclear Weapon Design Information, nor has GD explained why GD must be granted the necessary security clearance in order to access to Top Secret Critical Nuclear Weapon Design Information.

In addition, the United States notes that in January 2024 GD identified 1,741 boxes of documents at NARA that GD believed may contain responsive documents but that GD was unable to search due to their classification. In May 2024 GD identified an additional eleven boxes of documents at NARA that GD believed may contain responsive documents but that GD was unable to search due to their classification. In September 2024 GD revised its prior lists to remove some boxes but identified 93 additional files. Some of these files appear to be individual documents but five of the entries on GD's September list comprise multiple boxes of documents. Several, and perhaps all, of the entries on GD's September list appear to be new requests for documents or boxes identified in GD's September letter for the first time.

The United States has made and is making every effort to collect, review, and seek declassification of the tens of thousands of pages of classified documents that GD believes may be responsive to discovery requests in this case.

**Defendants' Statement**:

1.      Plaintiff's Statement starts with an incorrect premise and then includes incorrect and incomplete assertions. The responsive documents within the Plaintiff's possession are Plaintiff's responsibility to produce, not GD's. Yet, GD has gone to great efforts to assist Plaintiff in producing its own materials (from decades ago that have no national security implications).

2.      During the parties' December 5, 2024 status hearing with the Court, the United States represented that GD has equal access to the currently classified documents at issue in this

action, suggesting that the United States is somehow not obligated to review the currently classified documents within its possession, custody, and control in Government archives that may be responsive to GD's discovery requests. But the Government is not excused from its discovery obligations merely because documents stored in Government archives can be accessed by other parties.[1] Thus, while the Court ordered a joint status report to detail each party's progress and efforts made towards the production of currently classified, responsive documents; and while GD has endeavored to assist in the review process to expedite the United States' production compliance, it is critical to note that the United States (not GD) is the only party obligated to search for, review, and produce responsive documents at issue.[2]

3. Yet, the United States has failed to show any alacrity in complying with its discovery obligations—as reflected above, the Government has not produced a single declassified document in this Action to date. Instead, the Government seeks to distract from its tardiness by

[1] *See, e.g.*, *Phillips v. Hanover Ins. Co.*, No. CIV-14-871-R, 2015 WL 1781873, note 1 at *2 (W.D. Okla. Apr. 20, 2015) ("Courts consistently hold that parties have an obligation to produce even publicly available information."); *Morgan v. Safeway Inc.*, No. WMN–11–1667, 2012 WL 2135601, at *2 (D. Md. June 11, 2012) (holding that "even publicly available information might properly be the subject of a valid request for production of documents"); *Jackson v. W. Virginia Univ. Hosps., Inc.*, No. 1:10CV107, 2011 WL 1831591 at *2-4 (N.D.W. Va. May 12, 2011) (requiring production of documents even though those documents may have been available to the requesting party through a FOIA request).

[2] *See, e.g.*, *Exxon Shipping Co. v. U.S. Dept. of Interior,* 34 F.3d 774, 776 fn.4 (9th Cir. 1994) (noting that when the government is a party to litigation, "it is placed in the same position as a private litigant, and the rules of discovery in the Federal Rules of Civil Procedure apply."); *Hock Foods, Inc. v. William Blair & Co., L.L.C.*, 2011 WL 884446 at *8 (D. Kan. Mar. 11, 2011) ("The Federal Rules require a party to conduct a reasonable search for responsive information."); *Armstrong v. Executive Office of President*, 1994 WL 318083 at *1 (D.D.C. 1994) (ordering defendants to search records in the custody of NARA for documents responsive to plaintiffs' document requests); *City of Colton v. Am. Promotional Events, Inc.*, No. CV0906630PSGSSX, 2011 WL 13223968 at *3-4 (C.D. Cal. Nov. 28, 2011) (requiring Department of Defense to search and produce documents stored at NARA).

trying to shift the blame to GD—a party without equal access to the classified materials at issue and with no authority to declassify any documents for production.[3]

4. As previously explained to the Court, including during the Court's status hearing on December 5, 2024, GD first brought the issue of currently classified documents to the Government's attention via letter dated January 31, 2024—*nearly a year ago*. That letter included a specific list of documents that GD was unable to review due to their classification and requested that the United States verify that "in the course of reviewing materials for responsiveness to General Dynamics' requests for production, it has reviewed the locations" listed in the letter.

5. GD repeatedly sought ways to provide the Government with potential solutions to make the classified document review process more efficient. For example, during an April 9, 2024 meet and confer, GD offered to provide more detail to the Government about the types of currently classified documents it is (and is not) seeking. In an April 17, 2024 letter memorializing the meet and confer, GD explained that it was not interested in documents or information related to the development of warheads, Atlas payloads, or guidance/telemetry systems. In that letter, GD provided language for the Government to pass on to the declassification officers at the Government

[3] *See City of Colton*, 2011 WL 13223968 at *3 (explaining how the Department of Defense has "superior access" to the documents stored at NARA, and that "the principle underlying the control inquiry is not whether documents are technically 'publicly available' but whether the documents are equally available to the parties . . . a federal agency responding to discovery requests must produce even 'publicly available' documents if they are not equally available to all parties."); *see also* U.S. Department of Justice Archive, "Declassification," updated December 7, 2023, available at https://www.justice.gov/archives/open/declassification (describing the declassification review process, which must be conducted by the Government and not by private parties).

archives in an attempt to expedite the declassification process[4], and GD offered to coordinate a meeting between a GD attorney with security clearance and a government declassification officer to similarly promote an efficient review. Months later, when it became apparent that the Government was still not making progress in reviewing currently classified documents, GD (1) significantly narrowed the list of potentially responsive classified documents via letter dated September 26, 2024; and (2) began preparing its own attorney to access documents at NARA to help facilitate an efficient review.

6. GD has thus far been unable to access currently classified documents at NARA for review. GD continues to make every effort to gain such access and has promptly abided with all Government and archivist requests to date. For example, GD has taken the following steps:

a. On October 14, 2024, GD requested that the United States provide a point of contact at the National Archives and Records Administration (NARA) so GD could arrange for a GD attorney with Top Secret Clearance to assist with the responsiveness review of currently classified documents. The United States provided a point of contact on October 17, 2024.

b. On October 25, 2024, GD's attorney with Top Secret Clearance requested access to currently classified documents at NARA and was informed that he would also need "Department of Energy Q clearance or equivalent Critical Nuclear Weapon Design Information (CNWDI) clearance" to view the requested records. GD immediately began the process to obtain such access through the Department of Energy, which referred the issue to the Department of Defense.

---

[4] GD provided the following language for the United States to pass on to the government declassification officers:

> The document requests submitted by GD primarily seek information related to (i) the contractual terms between Convair and the Air Force from the 1950s-60s, (ii) Atlas engines, (iii) the LOx clean standard, (iv) the use of TCE for flush and purge and cleaning (and government specifications or manuals or instructions re same), (v) procedures for launches, and (vi) government oversight and control of the foregoing. GD is not interested in documents or information related to the development of the warhead, Atlas payloads, or guidance/telemetry systems. The Government should feel free to redact information related to those issues that GD is not interested in if that will expedite processing.

    c. On October 29, 2024, after a meet and confer among the parties regarding the classified documents review process, GD conveyed via email to the United States: (1) its understanding that the United States was coordinating with Air Force counsel on a letter to NARA to request permission for review of restricted documents; and (2) that NARA informed GD that DOJ is expected to coordinate an effort with Office of the Secretary of Defense and the Air Force to authorize GD's access to the records at issue. GD asked DOJ what it could do to help move the process forward as quickly as possible. On October 30, 2024, the United States explained that the Air Force Records Manager must send NARA a letter granting access to Air Force records.

    d. At the United States' request, on November 4, 2024, GD provided the United States with Security Clearance Verification information for its attorney with Top Secret Clearance, which the United States agreed to forward to the Air Force to facilitate access. On November 15, 2024, GD requested an update from the United States regarding GD's requested access. The United States responded that GD's attorney would need to continue working with NARA's security office regarding the required CNWDI clearance.

    e. On December 13, 2024, GD informed the United States that it had "recently learned that the ultimate owner of the materials that GD is trying to review at NARA needs to grant [GD's] attorney the CNWDI access," and that "GD's understanding is that DOJ has information about who the ultimate owner of the materials is and needs to coordinate so that [GD's] attorney can be granted the CNWDI access." By letter of December 20, 2024, the United States informed GD of its understanding that the Office of the Secretary of Defense "is aware" of GD's request and will inform GD of its decision. Additionally, the United States represented that GD's attorney with Top Secret Clearance "is free to review" certain records requested in Air-Force controlled record groups, however, GD has been told otherwise by NARA and remains unable to access such documents for review. Indeed, contrary to the United States' assertion above, NARA has informed GD that the vast majority of the documents that it has requested to review require CNWDI clearance.

7. On January 10, 2024, GD was informed that Air Force Legal was reviewing GD's discovery request to "determine if there is a need for access." In Plaintiff's Statement above, the United States represents for the first time that a court order is required for GD to access certain requested records. Plaintiff did not inform GD of this requirement until January 15, 2025, when submitting its draft portion of this status report. This is telling given that Defendants, in response to the Government's late-stage request for discovery extensions in this Action, suggested to the United States that the parties seek a court order for the classified documents at issue, and this

suggestion was rejected by Plaintiff. Moreover, despite GD's repeated representations that it is willing to help expedite the classified document review process, including by narrowing the scope of requested information where necessary, the United States has not once asked GD to provide additional detail regarding its "need to know" information contained in the requested records. The fact that GD cannot access such documents without a court order that explicitly states GD's "need to know" exemplifies GD's point that the records at issue are *not equally accessible* to Defendants as previously represented by the United States to this Court.

8. The Government has been aware of the universe of currently classified documents that require review for nearly a year and has exclusive control over whether documents submitted for declassification are in fact declassified. Even knowing that, the Plaintiff agreed to a discovery schedule that it ultimately failed to meet and sought an extension yet now tries to blame Defendants that it chose to sue for over $100 million dollars. While GD will continue its best efforts to assist in the review process to the extent it is able, the review and production of currently classified documents is and always has been Plaintiff's responsibility.

Dated this 17th day of January, 2025.

Respectfully submitted,

**Counsel for Plaintiff United States:**

/s/ Corrina Carter
CORRINA CARTER
Trial Attorney
FREDERICK PHILLIPS
MARK ELMER
Senior Counsel
Environmental Enforcement Section
DANIEL DERTKE
Trial Attorney
Environmental Defense Section

**Counsel for Defendant General Dynamics:**

/s/ Wade A. Thomson
Wade A. Thomson
Steve M. Siros
Sarah L. Futernick
*Pro hac vice*
Attorneys for Defendant General Dynamics Corporation
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654

Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044
(202) 305-0478 (Carter)
(202) 305 0439 (Phillips)
(303) 844-1352 (Elmer)
(202) 514-0994 (Dertke)
Corrina.Carter@usdoj.gov
Frederick.Phillips@usdoj.gov
Mark.Elmer@usdoj.gov
Daniel.Dertke@usdoj.gov

Telephone: (312) 840-8613
Fax: (312) 527-0484
Email: wthomson@jenner.com
Email: ssiros@jenner.com
Email: sfuternick@jenner.com

Matthew S. Hellman
*Pro hac vice*
Attorney for Defendant General Dynamics Corporation
JENNER & BLOCK LLP
1099 New York Avenue, N.W., Suite 900
Washington, DC 20001
Telephone: (202) 639-6861
Fax: (202) 639-6066
Email: mhellman@jenner.com

Steven D. Davidson
Bar Number: 18684
Lindsay K. Lundholm
Bar Number: 22224
Brian Barmettler
Bar Number: 27017
Attorneys for Defendant General Dynamics Corporation
BAIRD HOLM LLP
1700 Farnam Street, Suite 1500
Omaha, Nebraska 68102
Telephone: (402) 344-0500
Fax: (402) 344-0588
Email: sdavidson@bairdholm.com
Email: llundholm@bairdholm.com
Email: bbarmettler@bairdholm.com

**Counsel for Defendant Dow:**

/s/ Frank G. Dylewski
FRANK G. DYLEWSKI (pro hac vice)
JARAN R. MOTEN (pro hac vice)
161 N. Clark, Suite 1700
Chicago, IL 60601
Telephone No. (312) 794-7307
FDylewski@phillipslytle.com
jmoten@phillipslytle.com

JOEL A. BLANCHET (pro hac vice)

JEREMY M. AMAR-DOLAN (pro hac vice)
Phillips Lytle LLP
One Canalside
125 Main Street
Buffalo, New York 14203
Telephone No. (716) 847-8400
jblanchet@phillipslytle.com
jamar-dolan@phillipslytle.com

WILLIAM F. HARGENS (#16578)
MICHAEL L. MORAN (#24042)
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Telephone No. (402) 341-3070
whargens@mcgrathnorth.com
mmoran@mcgrathnorth.com