IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff/Counter Defendant,<br><br>v.<br><br>GENERAL DYNAMICS CORPORATION AND DOW CHEMICAL COMPANY,<br><br>    Defendants/Counter Claimants. | Civil Action No. 8:23-cv-00416 |

**JOINT STATUS REPORT**

Plaintiff, the United States of America, and Defendants, General Dynamics Corporation (GD) and Dow Chemical Company, provide this joint status report regarding the production of classified documents in the above-captioned Action, as required by the Amended Case Progression Order entered on December 12, 2024 (Dkt. 228). Specifically, the Court ordered that the parties' joint status report "detail the parties' progress and efforts made towards the production of currently classified, responsive documents, and provide an anticipated date of completion." (Dkt. 228 ¶ 3.)

Since the parties' last status conference on this issue on February 5, 2025, the parties met and conferred on February 13, 2025 and February 26, 2025 on this issue, as well as exchanged written correspondence regarding the same. The parties set forth below their respective Statements on the relevant issues.

**Plaintiff's Statement:**

For consistency, the United States will address the same three sets of classified documents referenced in the January 17, 2025, Joint Status Report (Dkt. 241).

1

Classified Documents Held By The Air Force

The first category of documents are those held by the Air Force at the Air Force Historical Research Agency, Air Force Materiel Command, and Air Force Global Strike Command. The parties identified 194 of these documents. Nine of these documents were in fact unclassified and have been provided to Defendants, leaving 185 classified documents. The United States has received and reviewed 181 of these documents. Twenty-five of these documents were deemed non-responsive and the United States has requested declassification of the remaining 156 documents, in whole or in part. This declassification request totals 33,276 pages.

There are many steps in the declassification process. First, the documents must be received and reviewed for responsiveness by Air Force counsel with appropriate clearance. Responsive documents are then sent to the Air Force Declassification Office. The Air Force Declassification Office reviews these documents and determines whether the Air Force may declassify them on its own, or if the documents need to be reviewed by other agencies. For example, documents containing nuclear Restricted Data or Formerly Restricted Data (RD/FRD), or information that is "Not Releasable to Foreign Nationals" (NOFORN) may require review by a second or possibly third agency in accordance with the Atomic Energy Act and 10 C.F.R. § 1045.45(b)(4). Once the Air Force Declassification Office has reviewed and identified the documents that need to be reviewed by another agency, they must forward those documents to the next agency's declassification office. Here, documents designated RD/FRD or NOFORN must be reviewed by the Department of Energy (DOE) and the Office of the Secretary of Defense (OSD) as well as the Air Force. While documents may be sent digitally to the OSD, to provide documents to the DOE for review, those documents must be printed and sent via a courier. The receiving agency must then review the documents, determine whether information may or may not be released, and

courier them back to the Air Force Declassification Office. However, the receiving agency may recommend review by additional agencies. If this is the case, the Air Force Declassification Office will forward the documents to the additional agencies for review and response back to the Air Force Declassification Office. Once each receiving agency has completed its review, the Air Force Declassification Office must scan in hard copies of the documents, perform a page-by-page review to mark individual pages as declassified, remove pages that remain classified, or redact lines of information as instructed by all reviewing agencies. The Air Force Declassification Office then will compile one consolidated document with all recommended redactions for a final copy of the document, remove all markings, and sanitize the document for release. When this process is complete, the documents are returned to Air Force counsel on a Secret system.

Because the declassified documents are still on a Secret system, the documents must be printed out using a copier attached to that Secret system in the Sensitive Compartmented Information Facility (SCIF). The paper copies of the declassified documents can then be removed from the SCIF and scanned using a regular copier, Bates-stamped, and produced to Defendants.

The 33,276 pages for which the United States has requested declassification are at several stages of the review process.

Twenty documents consisting of 5,057 pages are still being reviewed by the Air Force Declassification Office to determine whether an additional agency review is needed.

Of the 28,219 pages the Air Force Declassification Office has reviewed, the Air Force Declassification Office has determined that 1,618 pages (portions of 23 documents) could be declassified or redacted without additional agency review. These 1,618 pages were provided to Defendants on February 26, 2025.

The Air Force Declassification Office has determined that 24,298 pages require at least one additional agency review, and those pages have been provided to either the OSD, the DOE, or both, as they contain RD/FRD and NOFORN. Those agencies have been informed of the pressing deadlines in this case and have prioritized review of these pages to the extent possible given their missions.

The OSD has received 23,358 pages of documents. It has returned 6,196 reviewed pages to the Air Force Declassification Office. The Air Force Declassification Office has processed 78 of those pages, and these 78 pages were provided to Defendants on February 26, 2025. The OSD has 17,162 pages pending review.

The DOE has received 17,758 pages of documents. It has returned 2,727 pages to the Air Force Declassification Office, and the Air Force Declassification Office is processing those pages. The DOE has 15,031 pages pending review.[1]

As the United States informed the Court in the January 17, 2025, Joint Status Report, the United States provided GD instructions for obtaining access to the classified records held at the Air Force Historical Research Agency on August 9, 2024. GD could review any or all of the 156 documents for which the United States has requested declassification. Upon such a review, GD could determine that some of the 33,276 pages are not in fact responsive, or are not necessary for this litigation, and potentially shrink the number of pages for which declassification is requested. The United States is not aware that GD has accessed the records.

---

[1] Because as noted above some pages require review by both the OSD and the DOE, the combined number of pages these agencies received for review (41,416 pages) is greater than the total number of pages for which the United States requested declassification.

4

Classified Air Force Documents Held At NARA

The second record collection at issue is at the National Archives and Research Administration (NARA) and consists of Secret-level classified records originating with the Office of the Secretary of the Air Force. NARA policy provides that the originating government agency (here, the Air Force) must authorize access to its collections. The United States has identified approximately 42 boxes of potentially responsive records across three Records Groups in the Secretary of the Air Force collection and has reviewed 21 boxes. The United States has determined 12 of the reviewed boxes contain responsive documents. GD requested to review records from two of the three Secretary of the Air Force Records Groups. The United States understands that an attorney with appropriate clearance from GD has reviewed these records at NARA and has provided the United States with a list of the 9 documents GD reviewed. However, GD has not notified the United States of which documents or portions of documents GD has requested be declassified or provided the United States with a timeline for production of these documents. The United States is willing to arrange for GD to have access to all of the documents in all 42 boxes. As with the documents in the first category, GD could review these documents and potentially shrink the number of documents for which declassification is requested.

Classified Secretary of Defense Documents Held At NARA

The third set of classified records is also housed at NARA, but originated with the Office of the Secretary of Defense. These records are classified as compartmented Top Secret Critical Nuclear Weapon Design Information, or TS/Q or TS/CNWDI. GD has not established a "need to know" this nuclear information, and therefore the OSD has not granted GD access to this collection. In light of the highly sensitive nature of these documents, and the very low probability

that such documents would be declassified even if they contain responsive information, the burden of reviewing these documents vastly outweighs any likely benefit.

Proposal for Going Forward

As described above, reviewing and obtaining declassification of Secret classified documents is an arduous process and one that counsel for the United States has little ability to control. Thus, it is not possible for United States' counsel to commit to deadlines by which Secret classified documents will be declassified and produced. United States' counsel do commit to continue making a good faith effort to obtain and produce responsive Secret documents as expeditiously as possible and will do so on a rolling basis; as noted above the United States has produced a first tranche of recently declassified documents. The United States does not intend to continue to pursue declassification of TS/Q or TS/CNWDI documents because of the burden of obtaining them and the scant likelihood that those highly sensitive documents, even if responsive, will be declassified. Overall the United States has produced more than 290,000 documents comprising over 5.7 million pages. It is very unlikely that the TS/Q or TS/CNWDI materials will shed additional light in resolving the issues in this case, and even less likely that they will be declassified. As a result, the burden and expense of dealing with such highly sensitive materials far outweighs any potential benefit. Discovery of such materials is not proportional to the needs of the case.

The United States proposes that the Parties continue to make joint status reports, every 30 days, updating the Court regarding progress made. The United States further proposes that all Parties may reserve all rights to seek any relief they deem appropriate.

**Defendants' Statement:**

As described in detail in the parties' January 17, 2025 Joint Status Report (ECF No. 241), GD first brought the issue of currently classified documents to the Government's attention via a letter dated January 31, 2024—more than a year ago. After communications on the topic over the course of a year, and nearly three months of direct Court oversight, the Government made its first production of documents declassified for this matter (a total of only 27 documents) just last week. This production is a fraction of the potentially responsive documents outstanding and demonstrates the need for additional relief from the Court to help resolve this issue efficiently.

While it may not be easy to deal with classified information in discovery, the Government should have been prepared for this issue when it chose to bring this case. Moreover, as detailed below, the Defendants have been proactive and reasonable in proposing solutions to narrow or solve the issues for the classified documents, but the Government has not meaningfully engaged (including failing to provide answers during meet and confers and, in the instant case, waiting until the night before the status report to provide, only as part of its portion of this status report, brand new positions/assertions never before raised during any meet and confer). At the end of this Statement, Defendants set forth a reasonable path forward, which they have already proposed to the Government. The Government, for its part, suggests proceeding with the status quo, with no certain deadlines or obligations—that, of course, is not acceptable.

The law is clear that it is the United States' obligation alone to search for, review, and produce the responsive documents at issue, notwithstanding the fact that they may be stored in Government archives that can be accessed by other parties, such as the National Archives and

Records Administration ("NARA").[2] Nevertheless, in good faith and in an effort to facilitate efficient review of the documents in question, GD has sought for months to have its own attorney with the necessary clearance review available classified documents. Only in late January 2025 was GD's reviewer able to gain access to NARA to review the classified documents stored there without Critical Nuclear Weapon Design Information ("CNWDI"). That attorney completed his review of all classified documents that the Government made available to him and, on February 17, 2025, GD provided a list of documents he reviewed to the Government to prevent duplicative review. GD's reviewing attorney requested declassification of certain documents, and that declassification process is pending.[3]

In Plaintiff's Statement above, it asserts that "GD could review" additional documents. But as described in detail in Defendants' portion of the January 17, 2025 joint status report (*see*

---

[2] *See, e.g.*, *Exxon Shipping Co. v. U.S. Dept. of Interior,* 34 F.3d 774, 776 fn.4 (9th Cir. 1994) (noting that when the government is a party to litigation, "it is placed in the same position as a private litigant, and the rules of discovery in the Federal Rules of Civil Procedure apply."); *Hock Foods, Inc. v. William Blair & Co., L.L.C.*, 2011 WL 884446 at *8 (D. Kan. Mar. 11, 2011) ("The Federal Rules require a party to conduct a reasonable search for responsive information."); *Armstrong v. Executive Office of President*, 1994 WL 318083 at *1 (D.D.C. 1994) (ordering defendants to search records in the custody of NARA for documents responsive to plaintiffs' document requests); *City of Colton v. Am. Promotional Events, Inc.*, No. CV0906630PSGSSX, 2011 WL 13223968 at *3-4 (C.D. Cal. Nov. 28, 2011) (requiring Department of Defense to search and produce documents stored at NARA)

[3] The Government asserts in its Statement above: "GD has not notified the United States of which documents or portions of documents GD has requested be declassified or provided the United States with a timeline for production of these documents." The Government, however, has never previously requested this information from GD (although the Government disagrees on that), despite repeated meet and confers on the topic of classified documents, including the one that took place Wednesday, February 26—the day before the Government submitted its draft Statement to GD for the first time. And, as the Government knows, GD's reviewer with classified clearance is limited in what he can share regarding the documents he reviewed. As noted above, it is ultimately the Government's responsibility to review and produce these documents. How the Government believes GD has the ability to provide a timeline for the Government's production of the Government's own classified documents, or what obligation GD could possibly have to do so, is difficult to understand.

ECF No. 241 at 7-8), despite GD's diligent efforts, GD has been told otherwise. If the Government is able to make additional documents available for review, GD remains willing to engage in those efforts—but GD's efforts to review additional documents have thus far been unsuccessful.

In light of the Government's representations that some of the categories of classified documents the Government has reviewed to date have not, thus far, been responsive, Defendants have proposed reasonable solutions. For example:

1. In a February 4, 2025 email, GD proposed that the Government review a sample from each of the remaining top secret boxes so that it could give Defendants relative comfort that those boxes did not contain responsive materials. GD reiterated this suggestion in a February 13, 2025 meet and confer,[4] and the Government represented at that time that it would investigate the feasibility of GD's proposal. GD requested an additional meet and confer on February 26, 2025 to further discuss this issue, but the Government declined to provide any further information on that date.

2. In January 24, 2025 and February 4, 2024 emails, at the February 5 status hearing, and again during the February 13 and February 26, 2025 meet and confers, GD asked whether it would be possible to review document titles or other identifying information for the unreviewed documents in order to determine whether those documents were likely to be (i) responsive and (ii) still sought by Defendants. The Government stated at the February 13, 2025 meet and confer that, generally, it could not provide document titles or other identifying information because that information is itself classified, but represented that it would confirm. The Government has still not provided any further insight into the feasibility of the proposal offered.

Defendants learned for the first time on the evening of February 27, 2025, when Plaintiff submitted its draft portion of this status report, that rather than providing (or even responding to Defendants' request for) the information Defendants seek that would assist in narrowing their review of the requested top secret documents, Plaintiff has decided not to review those documents at all: "The United States does not intend to continue to pursue declassification of TS/Q or TS/CNWDI documents because of the burden of obtaining them and the scant likelihood that those

---

[4] In this instance, many attorneys participated virtually, while one lawyer for the DOJ, one lawyer for the Army Corps, one lawyer for GD, and one lawyer for Dow participated in person together.

9

highly sensitive documents, even if responsive, will be declassified." That is of course inconsistent with the Government's discovery obligations. All Defendants have asked for to help resolve this category of documents is that the Government review just a few samples from the other boxes which have not yet been opened and confirm that those samples are also not responsive. If the samples are indeed not responsive, Defendants would agree that no more work is required for this entire category of documents. Defendants stand by this reasonable proposal and hope the Government will agree to it.

At the meet and confer on February 13, 2025, Defendants sought details concerning the Government's progress in reviewing, declassifying, and producing responsive documents, and outlined potential solutions that could provide an efficient off-ramp to the dispute. The Government committed to consider Defendants' proposals and provide responses. On February 26 (nearly two weeks later), however, the parties met and conferred again and the Government had no updates related to the issues raised by Defendants during their February 13 dialogue. One concrete example involves metadata. The Government raised for the first time during the February 13, 2025 meet and confer that it was having issues producing some declassified documents because it was concerned about contamination of classified metadata into non-classified servers. GD explained during that meet and confer that there should be no metadata with respect to those documents because they are historic (pre-1967), hard-copy documents. The Government acknowledged the reality that the documents should have no metadata, and committed to investigate further and follow up with Defendants, but has not done so.

Defendants continue to be open to ways to expedite and facilitate the Government's review of classified documents. But, as highlighted above, the Government has thus far not meaningfully engaged with Defendants' proposals, nor has the Government provided alternative solutions. The

Government's failure to produce more than a handful of classified documents to date is troubling in light of the March 10 preliminary deadline for production of all declassified documents. Even more troubling is that the Government still cannot provide any estimate of how long it believes it needs to complete its review and production. The Government's purported "Proposal for Going Forward" is not new or reasonable—Plaintiff seeks to continue producing declassified documents indefinitely and offers no plan regarding the impact of those continued, indefinite productions on the progress of the case as a whole. That is untenable. Accordingly, Defendants respectfully request that the Court order as follows, which Defendants proposed to the Government on February 20, 2025:

- The Government shall be given one additional month (until April 10, 2025) to (a) produce all responsive classified documents in the Government's possession, custody, or control; or (b) to otherwise disclose information concerning the unproduced classified document to Defendants sufficient to provide adequate comfort that any outstanding classified responsive documents are not materially additive to that which the Government has already produced. Determination of the adequacy of such disclosure by the Government shall be the exclusive prerogative of Defendants, but agreement to the sufficiency of such disclosure shall not be unreasonably withheld. Further, GD will continue its good-faith efforts to assist the Government with its responsibility to review classified documents for responsiveness subject to the Government permitting GD to do so.

- Should the Government fail to (a) certify completion of its production of all responsive documents; or (b) provide adequate disclosures to Defendants sufficient to warrant cessation of additional review and production by the Government, by April 10, 2025, then the Court shall impose a hard deadline to produce all outstanding responsive documents by May 10, 2025.

- No further extensions of the document production deadline shall be provided for any reason whatsoever. If the Government fails to certify that its production is complete by May 10, 2025, Defendants will reserve all rights, including but not limited to the right to seek an adverse inference from the Court.

- Should the Government produce any additional documents after March 30, 2025, Defendants shall be given leave to amend any already-tendered expert reports as necessary, and/or to address newly disclosed evidence in rebuttal or surrebuttal reports not yet tendered. The Government shall not object that the inclusion of newly disclosed evidence or opinions related thereto exceeds the scope of a rebuttal or surrebuttal report.

- Additionally, Defendants shall be given leave to re-open fact discovery for the limited purpose of seeking information related to documents produced after February 24, 2025 (as

11

permitted by the current, operative order), including by propounding additional written discovery and re-opening any depositions, including 30(b)(6) depositions, at their discretion.

- To help effectuate this modification, the Government is ordered to (a) make an interim production of a reasonably significant amount of de-classified documents on March 14, 2025 and (b) provide as much disclosure as possible related to the content of any unproduced responsive documents (including titles of documents) by March 14, 2025.

Although Defendants proposed these terms to the Government in writing on February 20, 2025, and asked for the Government's position concerning the proposed terms during the parties' February 26 meet and confer, the Government was unable to provide its position on the proposal during the scheduled meet and confer, and instead submitted its own "Proposal for Going Forward" above. Defendants request that the Court adopt the Defendants' proposal as necessary to ensure the current case schedule is not jeopardized.

Dated this 28th day of February, 2025.

Respectfully submitted,

**Counsel for Plaintiff United States:**

*/s/* Corrina Carter
CORRINA CARTER
Trial Attorney
FREDERICK PHILLIPS
MARK ELMER
Senior Counsel
Environmental Enforcement Section
DANIEL DERTKE
Trial Attorney
Environmental Defense Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044
(202) 305-0478 (Carter)
(202) 305 0439 (Phillips)
(303) 844-1352 (Elmer)

**Counsel for Defendant General Dynamics:**

*/s/* Wade A. Thomson
Wade A. Thomson
Steve M. Siros
Sarah L. Futernick
*Pro hac vice*
Attorneys for Defendant General Dynamics Corporation
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654
Telephone: (312) 840-8613
Fax: (312) 527-0484
Email: wthomson@jenner.com
Email: ssiros@jenner.com
Email: sfuternick@jenner.com

Matthew S. Hellman

(202) 514-0994 (Dertke)
Corrina.Carter@usdoj.gov
Frederick.Phillips@usdoj.gov
Mark.Elmer@usdoj.gov
Daniel.Dertke@usdoj.gov

*Pro hac vice*
Attorney for Defendant General Dynamics Corporation
JENNER & BLOCK LLP
1099 New York Avenue, N.W., Suite 900
Washington, DC 20001
Telephone: (202) 639-6861
Fax: (202) 639-6066
Email: mhellman@jenner.com

Steven D. Davidson
Bar Number: 18684
Lindsay K. Lundholm
Bar Number: 22224
Brian Barmettler
Bar Number: 27017
Attorneys for Defendant General Dynamics Corporation
BAIRD HOLM LLP
1700 Farnam Street, Suite 1500
Omaha, Nebraska 68102
Telephone: (402) 344-0500
Fax: (402) 344-0588
Email: sdavidson@bairdholm.com
Email: llundholm@bairdholm.com
Email: bbarmettler@bairdholm.com

**Counsel for Defendant Dow:**

*/s/* Frank G. Dylewski
FRANK G. DYLEWSKI (pro hac vice)
JARAN R. MOTEN (pro hac vice)
161 N. Clark, Suite 1700
Chicago, IL 60601
Telephone No. (312) 794-7307
FDylewski@phillipslytle.com
jmoten@phillipslytle.com

JOEL A. BLANCHET (pro hac vice)
JEREMY M. AMAR-DOLAN (pro hac vice)
Phillips Lytle LLP
One Canalside
125 Main Street
Buffalo, New York 14203
Telephone No. (716) 847-8400
jblanchet@phillipslytle.com

13

jamar-dolan@phillipslytle.com

WILLIAM F. HARGENS (#16578)
MICHAEL L. MORAN (#24042)
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Telephone No. (402) 341-3070
whargens@mcgrathnorth.com
mmoran@mcgrathnorth.com