IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff/Counter Defendant,<br><br>v.<br><br>GENERAL DYNAMICS CORPORATION AND DOW CHEMICAL COMPANY,<br><br>   Defendants/Counter Claimants. | Civil Action No. 8:23-cv-00416 |

# JOINT STATUS REPORT

Plaintiff, the United States of America, and Defendants, General Dynamics Corporation (GD) and Dow Chemical Company, provide this joint status report regarding the production of classified documents in the above-captioned Action, as required by the Court's March 4, 2025 minute entry (Dkt. 281).

Since the parties' last status conference on this issue on March 3, 2025, the parties met and conferred on this issue on April 15, 2025. The parties set forth below their respective Statements on the relevant issues.

**Plaintiff's Statement:**

For consistency, the United States will address the same three sets of classified documents referenced in the parties' prior status report (Dkt. 280). Since the last report the United State has produced an additional 34 documents, comprising 7,962 additional pages of formerly classified

1

documents to Defendants, for a total of 58 documents comprising 9,658 pages of formerly classified material.

Classified Documents Held By The Air Force

The first category of documents are those held by the Air Force at the Air Force Historical Research Agency, Air Force Materiel Command, and Air Force Global Strike Command. The parties identified 194 of these documents. Nine of these documents were in fact unclassified and have been provided to Defendants, leaving 185 classified documents. As of the last report, the United States had received and reviewed 181 of these documents. Dkt. 280 at 2. The United States has now received and reviewed the remaining four documents. One is classified top secret and three are duplicates. As the United States previously reported, twenty-five documents are non-responsive. The United States has requested declassification of the remaining 156 documents, in whole or in part. This declassification request totals 33,276 pages. Dkt. 280 at 2.

The United States previously explained the declassification process, including, in some instances, the need for additional agency review. Dkt. 280 at 2-3. The Air Force Declassification Office has dedicated one employee full-time to work on the documents and to review and coordinate with the other agencies for this case. An additional staff member has also been assigned to assist that dedicated employee with the workload.

The last report noted that twenty documents consisting of 5,057 pages were still being reviewed by the Air Force Declassification Office to determine whether an additional agency review is needed. *Id.* at 3. The Air Force Declassification Office has completed its review of all but 379 of those pages.

Of the 32,897 pages the Air Force Declassification Office has reviewed, the Air Force Declassification Office has determined that 8,980 require only that office's review. Of those 8,980

pages, the Air Force Declassification Office has completed declassification of 8,221 pages. Those 8,221 have been produced to Defendants. The Air Force Declassification Office is still reviewing 759 pages that require only that office's review.

The Air Force Declassification Office has determined that 24,296 pages require at least one additional agency review, and those pages have been provided to either the Office of the Secretary of Defense (OSD), the Department of Energy (DOE), the Army, or some combination thereof, as they contain Restricted Data or Formerly Restricted Data (RD/FRD), or information that is "Not Releasable to Foreign Nationals" (NOFORN). Those agencies have been informed of the pressing deadlines in this case and have prioritized review of these pages to the extent possible given their missions.

According to the Air Force Declassification Office, the OSD has received 23,304 pages of documents. It has returned 5,936 reviewed pages to the Air Force Declassification Office and has 17,368 pages pending review. The DOE has received 16,929 pages of documents. It has returned 13,309 pages to the Air Force Declassification Office, and has 3,620 pages pending review. The Army has received 354 pages of documents and has 354 pages pending review.[1]

The United States produced 24 documents on February 26, 2025, comprising 1,696 pages of declassified materials. The United States produced another 18 documents on April 8, comprising 2,662 pages of declassified materials, plus an additional 5 pages of memoranda authorizing the declassification and release. The April 8 production also re-produced one document originally produced on February 26; the February 26 production included 30 pages of that document but the April 8 production added 2 additional pages. Thus, the April 8 production

---

[1] Because as noted above some pages require review by more than one agency, the combined number of pages these agencies received for review (40,587 pages) is greater than the total number of pages for which the United States requested declassification.

comprised a total of 2,699 pages (2,662 + 5 + 32), of which 2,664 pages were unique declassified materials (with 30 pages that are duplicates of previously produced pages, and 5 pages that are declassification memos) pages. The United States produced an additional 16 documents on April 10, comprising 5,298 pages of declassified materials, plus 5 pages of authorization memoranda for a total production of 5,303 pages. Plaintiffs have thus produced 58 formerly classified documents, comprising 9,658 pages of declassified material to Defendants.

As the United States previously informed the Court, the United States provided GD instructions for obtaining access to the classified records held at the Air Force Historical Research Agency on August 9, 2024. GD knows the titles and identifying information for most of these documents, because GD identified most of them by name and document number in its January 31, 2024, letter. GD could review any or all of these documents. Upon such a review, GD could determine that some of the unproduced 33,276 pages are not in fact responsive, or are not necessary for this litigation, and potentially shrink the number of pages for which declassification is requested. Contrary to GD's assertion, this would not be a second, duplicative responsiveness review. Instead, it would allow GD to assist in narrowing the documents for which Defendants are requesting review, as GD has stated that it is willing to do. GD declined this proposal to reduce the number of documents being reviewed for declassification.

<u>Classified Air Force Documents Held At NARA</u>

The second record collection at issue is at the National Archives and Records Administration (NARA) and consists of Secret-level classified records originating with the Office of the Secretary of the Air Force. NARA policy provides that the originating government agency (here, the Air Force) must authorize access to its collections. The United States has identified 42 boxes of potentially responsive records across three Records Groups in the Secretary of the Air

Force collection. Since the last status report, the United States has reviewed the remaining 21 boxes. The United States has determined 21 of the 42 boxes contain responsive documents. The United States is willing to arrange for GD to have access to all of these documents. As with the documents in the first category, GD could review these documents and potentially shrink the number of documents for which declassification is requested, but GD has declined to do so. However, GD requested to review records from two of the three Secretary of the Air Force Records Groups. The United States understands that an attorney with appropriate clearance from GD has reviewed these records at NARA and has provided the United States with a list of the 9 documents GD reviewed and requested be declassified.

Classified Secretary of Defense Documents Held At NARA

The third set of classified records is also housed at NARA, but originated with the Office of the Secretary of Defense. These records are classified as compartmented Top Secret Critical Nuclear Weapon Design Information, or TS/Q or TS/CNWDI. As previously reported, GD has not established a "need to know" this nuclear information, and therefore the OSD has not granted GD access to this collection. In light of the highly sensitive nature of these documents, and the very low probability that such documents would be declassified even if they contain responsive information, the burden of reviewing these documents vastly outweighs any likely benefit.

Proposal for Going Forward

As described above and in prior reports, reviewing and obtaining declassification of Secret classified documents is an arduous process and one that counsel for the United States has little ability to control. Thus, it is not possible for United States' counsel to commit to deadlines by which Secret classified documents may be declassified and produced. As noted above the United States has produced several tranches of declassified documents. The United States does not intend

to continue to pursue declassification of TS/Q or TS/CNWDI documents because of the burden of obtaining them and the scant likelihood that those highly sensitive documents, even if responsive, will be declassified. Overall the United States has produced more than 296,000 documents comprising over 5.8 million pages. It is very unlikely that the TS/Q or TS/CNWDI materials will shed additional light in resolving the issues in this case, and even less likely that they will be declassified. As a result, the burden and expense of dealing with such highly sensitive materials far outweighs any potential benefit. Discovery of such materials is not proportional to the needs of the case.

Counsel for the United States has limited control over the declassification of responsive Secret classified documents. To avoid having to reopen discovery – which is both inefficient and would add to the cost of litigation – the United States intends to seek a six-month extension of all case deadlines. During this period, the United States would commit to using its best efforts to complete the production of responsive Secret classified documents. In addition to endeavoring to complete the production of Secret classified documents, the United States proposes that this period be used to file any potentially dispositive motions that do not depend on anything that might be in any currently Secret classified documents. For example, the United States believes that there are no genuine disputes as to any material fact as to Defendants' CERCLA liability and, therefore, that this issue can be resolved as a matter of law. Resolving this issue now would help streamline the case and could potentially facilitate settlement.

The United States also notes the contradictions inherent in Defendants' position. Defendants oppose a six-month extension to facilitate production but cite the "adverse impact" of belated production – the very impact that could be avoided by a longer extension. They seek permission to amend expert reports if declassified documents are produced after April 10, but that

is exactly the kind of inefficiency that an extension would avoid. And they reject an extension beyond May 10 but cannot point to any concrete harm that would come to their position, aside from vague references to "unnecessary associated expenses."

**Defendants' Statement:**

As described in detail in the parties' January 17, 2025 Joint Status Report (ECF No. 241) and February 28, 2025 Joint Status Report (ECF No. 280), GD first brought the issue of currently classified documents to the Government's attention via a letter dated January 31, 2024, and the Government agreed in March 2024 to a document production deadline in December 2024. Since that time, the Government has only produced a total of 93 documents declassified for this matter, as shown in the table below, and has continued to use its own lack of diligence to try to extract more extensions.

| Production Date | Number of Documents Produced |
| --- | --- |
| February 19, 2025 | 9 |
| February 26, 2025 | 27 |
| April 8, 2025 | 22 |
| April 10, 2025 | 35 |

The Government has consistently asserted, as it does in its Statement above, that "counsel for the United States has little ability to control" the declassification process, and, therefore, asks the Court and the Parties to accept that the process simply takes as long as it takes. First, the law is clear that the burden to produce responsive documents is on the Government, which chose to bring this case. Second, the plaintiff in this case, the United States, is in complete control of its own declassification process, and is bound by this Court's orders. Third, the Government also has control over its own responsiveness review and, as its Statement above makes clear, the

Government has not even completed that review for two categories of documents—a year and two months after Defendants first requested them. It is not that such review is unduly time-consuming and could not have been accomplished earlier in the case; in the approximately 1.5 months since the Government last reported its review progress in a status report, the Government reports that it has reviewed 21 of the 42 relevant boxes of Classified Air Force Documents held at NARA. Rather, the fact is that the Government has not adequately prioritized reviewing these documents for over a year, yet still agreed to discovery deadlines.

The Government now suggests it will seek to use its own lack of diligence to extract yet another lengthy extension from the Court. The Parties have not meaningfully met and conferred about the Government's apparently impending request beyond the Government's bare indication that it might choose to seek such an extension at an unidentified future date, there is no motion before the Court on the matter, and the Government's premature arguments in favor of such a blanket extension are not properly a part of this status report. Importantly, the Government does not even commit to completing its review and production of classified documents—the Court-directed subject of this report—within the hypothetical extension period. The Court should not entertain the Government's arguments.[2]

The Government also seeks to blame Defendants for its own delay in reviewing the classified documents, arguing that Defendants should review or re-review the classified documents in the Government's stead—notwithstanding that it is black letter law that the Government alone

---

[2] The impropriety of the Government's attempt to argue for an extension as part of this Joint Status Report is all the more apparent by the fact that the Government *did* meet and confer with Defendants on its request for a *limited* extension of the expert report deadline and properly filed a motion seeking such an extension just four days ago.

has the burden to produce the declassified documents.[3] GD did, in good faith and in an effort to facilitate efficient review, enlist its own attorney with clearance to review classified documents. Also, as the Government acknowledges, GD provided to the Government titles and identifying information for various classified documents it believed likely to be relevant in its January 31, 2024 letter, and sought to aid the Government in first-level review of those documents.

As explained in detail in prior status reports, however, even trying to provide the Government with help for its job was not easy. In fact, it took over three months for the Government to give access to the documents after GD initiated the process (*see* ECF No. 241 at 8), and even then, GD's reviewer was able to access only nine documents that did not have Critical Nuclear Weapon Design Information ("CNWDI") (*see* ECF No. 280 at 8).[4] By the time GD's reviewer had completed the review of the limited documents made available to him at NARA, the Government was reporting to the Court that it had already reviewed 181 documents of the 185 it identified for review at the Air Force Historical Research Agency ("AHFRA") in Alabama, leaving

---

[3] As Defendants set out in the prior status reports, the law is clear that it is the United States' obligation alone to search for, review, and produce the responsive documents at issue, notwithstanding the fact that they may be stored in Government archives that can be accessed by other parties, such as NARA. *See, e.g.*, *Exxon Shipping Co. v. U.S. Dept. of Interior,* 34 F.3d 774, 776 fn.4 (9th Cir. 1994) (noting that when the government is a party to litigation, "it is placed in the same position as a private litigant, and the rules of discovery in the Federal Rules of Civil Procedure apply."); *Armstrong v. Executive Office of President*, 1994 WL 318083 at *1 (D.D.C. 1994) (ordering defendants to search records in the custody of NARA for documents responsive to plaintiffs' document requests). Moreover, it is clear here that the documents are not equally accessible. *See, e.g., City of Colton v. Am. Promotional Events, Inc.*, No. CV0906630PSGSSX, 2011 WL 13223968 at *3-4 (C.D. Cal. Nov. 28, 2011) (requiring Department of Defense to search and produce documents stored at NARA and explaining how the Department of Defense has "superior access" to the documents stored at NARA, and that "the principle underlying the control inquiry is not whether documents are technically 'publicly available' but whether the documents are equally available to the parties . . . a federal agency responding to discovery requests must produce even 'publicly available' documents if they are not equally available to all parties.")*; see also* U.S. Department of Justice Archive, "Declassification," updated December 7, 2023, available at https://www.justice.gov/archives/open/declassification (describing the declassification review process, which must be conducted by the Government and not by private parties).

[4] The Government states, in its Statement above, that it is "willing to arrange for GD to have access to all of the[] documents" at NARA, but it has not done so, despite GD's repeated requests for access.

only four left for review (i.e., less than approximately two percent left). (ECF No. 280 at 2.) GD reasonably expected, at that point, that the Government's review of those documents would be completed promptly.

The Government admits in its Statement above that GD's reviewer cannot access the Classified Secretary of Defense Documents held at NARA. With respect to the other two categories of documents—"Classified Documents Held by the Air Force" and "Classified Air Force Documents Held by NARA"—the Government argues that despite the fact that the Government's responsiveness review is complete or nearly complete, GD's reviewer should nevertheless re-review those documents for responsiveness. With respect to the second category, as noted above, GD has been unable to access any documents other than those it has already reviewed. Moreover, a second round of responsiveness review for these documents would be costly, inefficient, and would be unlikely to substantially move the needle in terms of decreasing the volume of documents for which declassification is needed, especially given that the Government has already identified them as responsive.

GD has gone above and beyond to offer reasonable assistance (and suggested proposals to reduce the amount to be reviewed) to the Government to help it in its classified document review in good faith. Ultimately, though, it is the Government's burden to review and produce responsive classified documents, and it chose not to prioritize production of the materials and failed to offer its own alternative solutions. It should not be permitted to shift the blame to Defendants.

History of the Parties' Discussions regarding Classified Documents

As noted above, GD sent a letter seeking the Government's review and production of currently classified documents on January 31, 2024—more than a year ago. Subsequently, the

Government agreed to a discovery schedule that included a document discovery deadline of December 23, 2024. (*See* ECF No. 39.)

Near the end of the original, agreed discovery period, the Government sought a lengthy extension of the discovery deadline *solely* for review and production of classified documents. Defendants agreed to a two-month extension, extending the deadline for production of classified documents to March 10, 2025. (*See* ECF No. 228.) But at a hearing about the extension on December 5, 2024, GD clearly stated its position that an open-ended period for production of classified documents was untenable given the adverse impact of belated production on the other deadlines in the case, and requested that if the Government were unable to meet the March 10, 2025 deadline, the Court should require the Government to show cause as to why it was unable to meet that deadline. This Court did not order that at this time but did ask for status reports about the matter.

The Parties filed joint status reports regarding the status of the Government's review and production of classified documents on January 17, 2025 (ECF No. 241) and February 28, 2025 (ECF No. 280). The Parties also attended hearings regarding the classified documents issue following each status report, on February 5, 2025 and March 3, 2025. At the February 5, 2025 hearing, GD reiterated its request that the Court should require the Government to show cause if it was unable to meet the March 10, 2025 deadline. As GD said then, there needs to be some "teeth" in an order to spur the Government to quicker review.

By the time of the February 28, 2025 status report, it had become clear that the Government would be unable to meet the March 10, 2025 deadline. Accordingly, Defendants proposed that the Government should be given one additional month (to April 10) to produce responsive declassified documents (or otherwise disclose information about the unproduced documents sufficient to

11

provide Defendants adequate comfort that they were not materially additive)—after that point, Defendants requested that the Court set a hard deadline for production, reserving their rights to move for an adverse inference if that hard deadline were not met. (ECF No. 280 at 11.) The Court ultimately extended the deadline for production of classified documents to April 10, 2025. (ECF No. 281.)

In the status reports and hearings, Defendants made clear that they had made many efforts to work with the Government to narrow the universe of documents requiring review and declassification. (*See, e.g.*, ECF No. 241 at 7; ECF No. 280 at 9.) For example, Defendants have repeatedly suggested, since at least January 2025, that the Government review samples of as-yet unreviewed boxes of classified documents and/or provide identifying information (i.e. document titles, box identifiers, etc.) that would assist in narrowing the documents for which Defendants are requesting review. (*See* ECF No. 280 at 9.) Plaintiff has refused to engage with Defendants on these proposed solutions.

Recent Discussions Regarding Classified Documents

In an April 9, 2025 email—the day before the April 10, 2025 deadline to complete production of classified documents (*see* ECF No. 281)—the Government informed Defendants that "there are still [classified] documents to process" and indicated it may seek a six-month extension to all deadlines in the case progression order "[t]o avoid the inefficiencies of having experts disclose reports and then seek to amend or supplement those reports as declassified documents are produced on a rolling basis." The Government hints again at the upcoming request in its Statement above. While Defendants contend that the Government's arguments in favor of its unfiled extension request are improper, Defendants note that the Government has had over a year to fulfill its discovery obligations, it chose not to prioritize this issue, and it has already

12

extracted extensions of several months, including specifically in connection with its production of classified documents. The Government cannot continue to unnecessarily postpone the schedule for a case in which it has sued Defendants for more than $100 million simply because Government will not do what is required to produce responsive documents in the Government's possession.

The Government has not been proactive in trying to solve the problems it has created. Defendants repeatedly tried to meet and confer with the Government regarding these issues after the March 3, 2025 hearing and ahead of the April 10, 2025 deadline to produce classified documents. In particular, on March 25, 2025, Defendants sent an email requesting a written update on the progress of the Government's review and production of classified documents as well as a meet and confer on the topic. Defendants' email also requested assurances that the Government was continuing to review and pursue declassification of classified Secretary of Defense documents held at NARA. Receiving no response, Defendants followed up on March 31, 2025. On April 3, the Government responded that it was unwilling to meet and confer until after it had prepared and transmitted to Defendants its draft of the instant Status Report, which it did not expect it would be able to accomplish until at least April 11, 2025. In fact, the Government did not send its draft Status Report until April 15, 2025. Accordingly, the parties did not meet and confer until April 15, 2025—after the classified documents production deadline, after the Government requested yet another extension, and three weeks after GD requested a meet and confer and update.

At that meet and confer, the Government indicated it was unlikely to be able to finish production of declassified documents for at least the next six months—and it could not commit to completing production by even that time. In short, the Government has never and still cannot commit to any deadline. Moreover, it confirmed that it had reviewed no additional documents in the Government's third category, "Classified Secretary of Defense Documents Held at NARA,"

13

based on its unilateral determination that the burden of reviewing those documents outweighed the likely benefit. Again, the Government refused to engage regarding Defendants' proposal that the Government review just a sample of the unreviewed documents or provide non-classified identifying information sufficient to give Defendants comfort that those documents would be non-responsive or cumulative of other produced documents. This is a continuation, as detailed in past Joint Status reports, of Defendants proposing reasonable solutions to narrow or resolve issues whereas the Government continues with the single "solution" of seeking extensions and blaming Defendants for not doing more of what the Government is obligated to do.

Defendants' Proposal

The Plaintiff, the United States, chose to bring this suit and agreed to a discovery schedule it has repeatedly failed to meet. It has also decided where to put resources for adhering (or not) to those deadlines. The Government's inability to adhere to a discovery schedule that it agreed to in a case that it brought should not impede Defendants' ability to continue with the case schedule as planned, and Defendants should not be forced to have the case take longer and incur unnecessary associated expenses.

Therefore, Defendants respectfully request that the Court order substantially the same relief Defendants requested in the last joint status report (ECF No. 280), filed nearly two months ago, and consistent with what it has proposed to Plaintiff, as follows:

- The Court shall impose a hard deadline to produce all outstanding responsive documents by May 10, 2025.
- Additionally, by May 10, 2025, the Government shall review a sample of just two documents from each of the unreviewed boxes of Classified Secretary of Defense Documents held at NARA (which Defendants understand should be less than 40 documents total) and report to Defendants whether any of those samples were responsive. If none are responsive (as the Plaintiff says is likely the case), Defendants will no longer pursue this entire category of documents.

- No further extensions of the document production deadline shall be provided for any reason whatsoever. If the Government fails to certify that its production is complete by May 10, 2025, Defendants will reserve all rights, including but not limited to the right to seek an adverse inference from the Court.

- Should the Government produce any additional documents after April 10, 2025, Defendants shall be given leave to amend any already-tendered expert reports as necessary, and/or to address newly disclosed evidence in rebuttal or surrebuttal reports not yet tendered. The Government shall not object that the inclusion of newly disclosed evidence or opinions related thereto exceeds the scope of a rebuttal or surrebuttal report.

- Additionally, Defendants shall be given leave to re-open fact discovery for the limited purpose of seeking information related to documents produced after February 24, 2025 (as permitted by the current, operative order), including by propounding additional written discovery and re-opening any depositions, including 30(b)(6) depositions, at their discretion.[5]

Dated this 17th day of April, 2025.

Respectfully submitted,

| **Counsel for Plaintiff United States:** | **Counsel for Defendant General Dynamics:** |
|---|---|
| JOHANNA FRANZEN | */s/* Wade A. Thomson |
| CORRINA CARTER | Wade A. Thomson |
| VANESSA MOORE | Steve M. Siros |
| U.S. Department of Justice | Sarah L. Futernick |
| Environmental Enforcement Section | *Pro hac vice* |
| P.O. Box 7611 | Attorneys for Defendant General Dynamics Corporation |
| Washington, D.C. 20044 | |
| (202) 305-0467 (Franzen) | JENNER & BLOCK LLP |
| Johanna.Franzen@usdoj.gov | 353 N. Clark St. |
| Corrina.Carter@usdoj.gov | Chicago, Illinois 60654 |
| Vanessa.Moore@usdoj.gov | Telephone: (312) 840-8613 |
| | Fax: (312) 527-0484 |
| DANIEL DERTKE | Email: wthomson@jenner.com |
| U.S. Department of Justice | Email: ssiros@jenner.com |
| Environmental Defense Section | Email: sfuternick@jenner.com |
| P.O. Box 7611 | |

---

[5] The Government argues in its Statement above that there are "contradictions inherent in Defendants' position." But there is no contradiction. The "adverse impact" of belated production Defendants sought to avoid is continued delay in this case, increasing the costs of litigation. Defendants' proposal allows this matter to proceed on schedule expediently as possible—as Defendants have always sought—but allows for the record to be supplemented if new materials are provided. This is not inefficient. And, to be clear, any minor inefficiency this process may introduce is the result of the Government's lack of diligence in promptly reviewing and producing documents Defendants have sought for over a year.

Washington, D.C. 20044
(202) 514-0994
Daniel.Dertke@usdoj.gov

/s/ Mark C. Elmer
MARK C. ELMER
U.S. Department of Justice
Environmental Enforcement Section
999 18th Street, North Terrace, Suite 600
Denver, CO 80210
(303) 844-1352 (PHONE)
(303) 844-1350 (FAX)
Mark.Elmer@usdoj.gov (EMAIL)

Matthew S. Hellman
*Pro hac vice*
Attorney for Defendant General Dynamics Corporation
JENNER & BLOCK LLP
1099 New York Avenue, N.W., Suite 900
Washington, DC 20001
Telephone: (202) 639-6861
Fax: (202) 639-6066
Email: mhellman@jenner.com

Steven D. Davidson
Bar Number: 18684
Lindsay K. Lundholm
Bar Number: 22224
Brian Barmettler
Bar Number: 27017
Attorneys for Defendant General Dynamics Corporation
BAIRD HOLM LLP
1700 Farnam Street, Suite 1500
Omaha, Nebraska 68102
Telephone: (402) 344-0500
Fax: (402) 344-0588
Email: sdavidson@bairdholm.com
Email: llundholm@bairdholm.com
Email: bbarmettler@bairdholm.com

**Counsel for Defendant Dow:**

/s/ Frank G. Dylewski
FRANK G. DYLEWSKI (pro hac vice)
JARAN R. MOTEN (pro hac vice)
161 N. Clark, Suite 1700
Chicago, IL 60601
Telephone No. (312) 794-7307
FDylewski@phillipslytle.com
jmoten@phillipslytle.com

JOEL A. BLANCHET (pro hac vice)
JEREMY M. AMAR-DOLAN (pro hac vice)
Phillips Lytle LLP
One Canalside
125 Main Street
Buffalo, New York 14203
Telephone No. (716) 847-8400

jblanchet@phillipslytle.com
jamar-dolan@phillipslytle.com

WILLIAM F. HARGENS (#16578)
MICHAEL L. MORAN (#24042)
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Telephone No. (402) 341-3070
whargens@mcgrathnorth.com
mmoran@mcgrathnorth.com