## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

        Plaintiff/Counter Defendant,

v.

GENERAL DYNAMICS CORPORATION
AND DOW CHEMICAL COMPANY,

        Defendants/Counter Claimants.

Civil Action No. 8:23-cv-00416

## JOINT STATUS REPORT

Plaintiff, the United States of America, and Defendants, General Dynamics Corporation (GD) and Dow Chemical Company, provide this joint status report regarding the production of classified documents in the above-captioned Action, as required by the Court's April 23, 2025 minute entry (Dkt. 312).

Since the parties' last status conference on this issue on April 23, 2025, the parties met and conferred on this issue on May 21, 2025, June 18, 2025, and July 16, 2025. The parties set forth below their respective Statements on the relevant issues.

### Plaintiff's Statement:

As noted in our statement in the Dow Chemical Company's Emergency Motion to Extend Case Deadlines (Dkt. 349 at ¶ 4), the United States' litigation team's point of contact at the Air Force Declassification Office unexpectedly passed away. The United States anticipates it may move the Court to further extend the October 10, 2025, declassification deadline. However, as discussed below, the Air Force Declassification Office has been in a period of realignment and transition since this unexpected death, and the United States is still assessing the transition's

1

impacts.  The United States will meet and confer with the Defendants once we have sufficient information and will then return to the Court, as needed.

The United States previously explained the complexities of the declassification process, including, in many instances, the need for additional agency review (Dkt. 280 at 2-3).  The constraints of that process still apply and compliance with the process remains critical.  The improper release of classified information could cause serious or exceptionally grave damage to national security.[1]  Furthermore, each classified document does not necessarily take the same amount of time to review, even compared to a classified document with the same number of pages. The declassification process is therefore not linear, and each classified document does not take a set, or predictable, amount of time to review.  The United States' team continues to work diligently to manage the declassification process within these applicable constraints and to provide Defendants with status information as appropriate.

For consistency, the United States will again address the same three sets (or, "buckets") of classified documents referenced in the parties' prior status report (Dkt. 280).

<u>Classified Documents Held by the Air Force (Bucket 1 Documents)</u>

The Air Force Declassification Office's dedicated employee for managing the declassification efforts for this category of documents passed away suddenly on June 20, 2025. The Air Force Declassification Office has now assigned a new lead point of contact who is working to take over the prior employee's efforts on this matter.

The inheriting staff member for the Air Force Declassification Office has been working to confirm the updated status of declassification efforts, including providing specific document and

---

[1] *See, e.g.,* Air Force Declassification Office, Frequently Asked Questions, What does it mean when a document is classified? at https://www.secretsdeclassified.af.mil/Frequently-Asked-Questions/Laws-and-Executive-Orders-Governing-Declassification (last accessed July 15, 2025).

page counts.  Given the complexity of the process and the employee's recent transition into this primary role, the United States cannot provide specific document and page counts at this time. However, the Department of Justice continues to provide the relevant agencies and offices case updates and remind them of the pressing deadlines in this case; the offices have prioritized review of these pages to the extent possible given their missions and other obligations.  For example, the declassification staff at the Office of the Secretary of Defense (OSD) must also respond to declassification requests from members of the public.  While OSD continues to make progress on its declassification efforts, it has updated its estimated completion date to August 31, 2025.  On May 14, 2025, the Department of Energy (DOE) confirmed they completed their declassification reviews and returned all such documents to the Air Force Declassification Office.  Finally, the Army has 1 document of 354 pages pending their review.

There is 1 Top Secret document *en route* via courier from the Air Force Historical Research Agency in Alabama to the Air Force Declassification Office in Maryland.  The Air Force Historical Research Agency did not have the capacity to send this document via secured and proper electronic mail means.  Instead, they couriered the document.  The courier arrives at the Air Force Historical Research Agency and the Air Force Declassification Office each about once per month.  The document was picked up from the Air Force Historical Research Agency on June 25, 2025. Unfortunately, the news of the main Air Force Declassification Office point of contact's passing had not yet been circulated, so the courier shipment was addressed to the staff member who passed away suddenly and to one other staff member.  That other staff member was out of the office the day the courier arrived, and so the Air Force Declassification Office was unable to accept the document.  Given the burdens associated with declassifying Top Secret documents and the likelihood that any responsive information in this document will be duplicative of general

3

information already in the record, the United States intends to review this document, once it arrives at the Air Force Declassification Office, to determine whether it is responsive and not substantively duplicative of information already disclosed in this matter, i.e., the same standard the Court approved with respect to Top Secret documents in Category 3. The United States has agreed to inform Defendants once this document arrives at the Air Force Declassification Office.

Since the last report, the United States produced 3 documents on June 6, 2025, comprising 182 pages of declassified materials, plus an additional 3 pages of memoranda authorizing the declassification and release. The United States produced an additional document on July 15, 2025, comprising 20 pages of declassified material. Due to a prior printing error, the July 15 production also re-produced one document originally produced on June 6; the June 6 production included 134 pages of that document, but the July 15 production added 80 additional pages to that document.[2] Thus, an additional 4 previously classified documents, totaling 282 pages, have been produced to

---

[2] The previous page count on the above referenced 1 document with the printing error was 134 pages; after re-production, the new total page count for that document is 214 pages.

Defendants since the last status report.  Plaintiff has thus produced 60 formerly classified documents, comprising 9,947 pages of declassified material to Defendants.[3]

The United States has also cooperated with Defendants to try to improve the legibility of certain declassified documents in this category, by attempting to rescan the declassified hard copies and by providing by courier the hard copies to GD.

Classified Air Force Documents Held at NARA (Bucket 2 Documents)

The second record collection at issue is at the National Archives and Records Administration (NARA) and consists of Secret-level classified records originating with the Office of the Secretary of the Air Force.

Since the last status report, the United States has completed its responsiveness review and identified 18-20 inches of responsive materials.  The process of copying responsive materials took a significant amount of time given the condition of the documents and the limited windows of time that NARA's classified reading room was available.  The responsive materials had to be photocopied by individuals with clearance, using the single photocopier in NARA's classified reading room, which is only open, at most, two days per week for limited hours.

The parties met and conferred about the possibility of GD's reviewer with a Top Secret security clearance reviewing the materials identified as responsive by the United States' reviewers to determine whether the Defendants wanted the United States to proceed with declassification efforts on all the materials or whether there was any possibility of narrowing the declassification

---

[3] The United States previously reported that it had produced 58 formerly classified documents in Bucket 1 (Dkt. 311 at 4).  However, one document was produced in two parts, at USAF0139524 and at USAF0143855, and inadvertently counted as two separate documents.  Some declassified documents are in multiple pdf files and labeled as "Part 1," "Part 2," and so on.  For example, the United States' April 10, 2025, production contained a single document which was produced in 9 different "Parts" or pdfs.

request. The Parties agreed to proceed with declassification of all the materials identified as responsive by the United States.

An Air Force Declassification Office staff member embedded at NARA has completed the Air Force's declassification review of the identified material. The next step is for NARA to send the copied material to respective agencies (OSD and DOE) for their own internal declassification review process. NARA will inform these additional agencies that the material in this declassification request is also subject to the Court's declassification deadline of October 10, 2025, noting the critical necessity of expeditious and timely reviews.

<u>Classified Secretary of Defense Documents Held at NARA (Bucket 3 Documents)</u>

The third set of classified records is also housed at NARA but originated with the Office of the Secretary of Defense. These records are classified as compartmented Top Secret Critical Nuclear Weapon Design Information, or TS/Q or TS/CNWDI. During the April 23, 2025, status conference, the Court ordered the United States to review 2 document samples from each requested Top Secret box to determine whether they are responsive and not duplicative of information already part of the record in this matter. The United States has completed this review, and did not identify any responsive and not duplicative documents.

**Defendants' Statement:**

The Government continues to demonstrate a lack of urgency in complying with the Court's deadlines. For example, despite the Court ordering the Government to sample certain boxes of documents for responsive documents on April 23, 2025, the Government did not sample a single box for at least 3 weeks after being ordered to do so. As yet another example, when GD asked the Government after the April 23 hearing how GD could help expedite the review (which the Government had pleaded for in the hearing), the Government did not even respond for 3 weeks.

6

In this Joint Status Report, the Government raises the possibility that it may seek yet another extension for producing unclassified documents, raising the unfortunate death of one Government employee who was working on one of the three categories of documents. The Government has not yet made any proposal for an extension to the Defendants or the Court, and Defendants are always willing to be reasonable and afford professional courtesies. For now Defendants simply note that given the facts as known, there is no good cause for yet another extension.

As described in detail in the parties' January 17, 2025 Joint Status Report (ECF No. 241), February 28, 2025 Joint Status Report (ECF No. 280), and April 17, 2025 Joint Status Report (ECF No. 311 at 10-12), GD first brought the issue of currently classified documents to the Government's attention via a letter dated January 31, 2024, and the Government agreed in March 2024 to a document production deadline in December 2024. Since that time, the Government has sought and obtained numerous extensions for production of classified documents from the Court. However, to date, the Government has produced a total of only 97 documents[4] declassified for this matter, only 4 of which were produced since the parties' most recent April 17, 2025 Joint Status Report (ECF No. 311), as shown in the table below.

| Production Date | Number of Documents Produced |
| --- | --- |
| February 19, 2025 | 9 |
| February 26, 2025 | 27 |
| April 8, 2025 | 22 |
| April 10, 2025 | 35 |

---

[4] The Government discloses for the first time in this Joint Status Report that it produced some individual documents in multiple parts. This number represents the number of files received by Defendants, and may inflate the number of "documents" as the Government defines them.

| April 17, 2025 Joint Status Report (ECF No. 311) | |
|---|---|
| June 6, 2025 | 3 |
| July 15, 2025 | 1[5] |

Given that production of declassified documents has slowed to a trickle in the last 3 months, Defendants are concerned that the Government is still declining to allocate sufficient resources to meet the Court's October 10, 2025 deadline for production of classified documents.  (*See* ECF No. 312.)  It is the Government's burden alone to review and produce the classified documents GD first requested nearly a year and a half ago, in January 2024.[6]   And the Government has had more than sufficient time to do so.  The Government's attorneys have argued that they have little control over the pace of declassification review by various government agencies, but this a false premise in that the Plaintiff here is the United States, including its agencies.  Plaintiff is in complete control

---

[5] In this production, the Government also re-produced a classified document that it had produced in incomplete form on June 6, 2025.

[6] As Defendants set out in the prior status reports, the law is clear that it is the United States' obligation alone to search for, review, and produce the responsive documents at issue, notwithstanding the fact that they may be stored in Government archives that can be accessed by other parties, such as NARA. *See, e.g.*, *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d 774, 776 fn.4 (9th Cir. 1994) (noting that when the government is a party to litigation, "it is placed in the same position as a private litigant, and the rules of discovery in the Federal Rules of Civil Procedure apply."); *Armstrong v. Executive Office of President*, 1994 WL 318083 at *1 (D.D.C. 1994) (ordering defendants to search records in the custody of NARA for documents responsive to plaintiffs' document requests).  Moreover, it is clear here that the documents are not equally accessible.  *See, e.g.*, *City of Colton v. Am. Promotional Events, Inc.*, No. CV0906630PSGSSX, 2011 WL 13223968 at *3-4 (C.D. Cal. Nov. 28, 2011) (requiring Department of Defense to search and produce documents stored at NARA and explaining how the Department of Defense has "superior access" to the documents stored at NARA, and that "the principle underlying the control inquiry is not whether documents are technically 'publicly available' but whether the documents are equally available to the parties . . . a federal agency responding to discovery requests must produce even 'publicly available' documents if they are not equally available to all parties."); *see also* U.S. Department of Justice Archive, "Declassification," updated December 7, 2023, available at https://www.justice.gov/archives/open/declassification (describing the declassification review process, which must be conducted by the Government and not by private parties).

of the declassification process, is subject to the Court's orders, and, similar to any other litigant, could add more resources to the review if it believed it was necessary to do so to comply with the Court's order. Moreover, the Government's attorneys have complete control over their own initial responsiveness review, which necessarily needed to be completed *before* the documents were sent for declassification review. But as to the documents in the Government's "Category 1" (classified documents held by the Air Force) and "Category 2" (classified documents held at the National Archives and Records Administration ("NARA")), the Government did not report that it had completed that responsiveness review until April 2025—more than a year after GD asked the Government to review those documents. (*See* ECF No. 311.) As explained in the prior status report, review of those documents was not unduly time consuming—the Government was able to review half of the "Category 2" documents, for example, in a period of less than 1.5 months. (*See id.* at 8.) And the Government only completed its initial review of a sample of 2 documents from each box in "Category 3" (classified Secretary of Defense documents held at NARA) as of July 18, 2025—three months after that review was ordered by the Court (*see* ECF No. 312). This is despite the fact that at the parties' last meet and confer on July 16, 2025, the Government reported that it can generally sample 9 boxes in a single day. Indeed, as reported at the May 21, 2025 meet and confer between the parties, the Government did not *begin* sampling the Category 3 documents until approximately a month after the Court ordered the Government to sample those documents.

Given its serial review delays, to the extent the Government is unable to meet the Court's October 10, 2025 deadline, the fault rests solely with the Government. Defendants urge the Government to make every effort to meet the deadline in the next three months—and the Court to hold Plaintiff to the same—and reserve the right to move for appropriate sanctions, including an adverse inference, should the Government fail to meet that deadline.

<u>Recent Discussions Regarding Classified Documents</u>

As noted above, since the last status report and hearing, the Government has produced only 4 declassified documents. The Government has indicated that all of the declassified documents produced to date correspond to Category 1. The parties have also met and conferred three times, on May 21, 2025, June 18, 2025, and July 16, 2025, and exchanged email communications. Prior to each of those meetings, GD asked the Government to identify the number of documents and pages not yet reviewed for declassification. The Government did not provide that information (just as it does not provide it in this Joint Status Report)—so Defendants are left to guess at the Government's progress in declassification review.

At the April 23, 2025 status hearing, the Government sought GD's assistance in re-reviewing the documents in Category 2 that the Government had already reviewed and identified as responsive, in the hopes that GD's reviewer with the necessary clearance would be able to narrow the scope of the documents the Government needed to submit for declassification review. After that hearing, GD promptly reached out to the Government on April 25, 2025, requesting information regarding the documents that the Government wished GD to re-review so that GD's reviewer could aid the Government with its review obligations as it requested. It took the Government three weeks to even respond to GD's email (after GD followed up several times). Ultimately, the Government never identified any documents for GD's review, and decided not to seek GD's help in re-reviewing Category 2 documents.

In order to make sure there was sufficient time for declassification review before the October 10, 2025 production deadline, Defendants requested that the Government immediately submit for declassification review the Category 2 documents it had already identified as responsive. While it is not GD's burden, GD explained that it could make its reviewer available

10

to re-review those responsive documents and would agree to remove any documents its reviewer did not believe were responsive from declassification review.[7]  At the May 21, 2025 meet and confer, however, the Government explained that once documents are sent for declassification review, it is inadvisable to remove them from the declassification process, so there would be no need for GD's reviewer to re-review any documents that had already been submitted (including the Category 1 documents).  At the June 18, 2025 meet and confer, the Government confirmed that it had complied with Defendants' request to submit all Category 2 documents for declassification review, and that as a result, there was no longer any need for GD's reviewer to re-review those documents.

Additionally, on July 2, 2025, the Government advised Defendants that the Government learned the previous day that "the Air Force Declassification Office employee assigned to work" on this matter had passed away suddenly.  The Government now discloses, in this Joint Status Report, that the employee passed away on June 20, 2025.  At the July 16, 2025 meet and confer, the Government explained that the employee had been working on declassification efforts related to Category 1 documents, and that the Government did not expect her death to have any impact on the timeline for production of Category 2 or 3 documents.  As noted above, Defendants will of course consider any request from the Government for an extension related to this unfortunate event.  That said, it appears from the Government's own statements that none will be necessary. At the April 23, 2025 hearing, the Government projected that the Secretary of Defense should be finished with its review of the Category 1 documents by "mid-July"—predicting that the work

---

[7] Dow notes that its counsel does not have necessary clearance to assist the Government with its review and is therefore unable to even take part in this process.  During the course of meet and confer, Dow determined that, because it did not have its own counsel available to review classified materials, any documents identified by the Government's reviewers as responsive should be sent for declassification.

should take less than three months in total.  It now, in this Joint Status Report, updates its projection to August 2025.  Thus, it appears many documents were likely reviewed prior to June 20, and the Government should be able to complete the remaining work in the short term, and more than a month before the October 10 deadline.

* * *

The Plaintiff, the United States, chose to bring this suit and agreed to a discovery schedule it has repeatedly failed to meet.  It has also decided where to put federal resources for adhering (or not) to those deadlines.  The Government should adhere to the Court's current deadline of October 10, 2025, and should not be permitted to seek any further extensions, which would impede Defendants' ability to continue with the case schedule as planned, resulting in the case taking longer and Defendants incurring unnecessary associated expenses.  To the extent the October 10, 2025 deadline is not met, Defendants reserve the right to seek appropriate sanctions, including an adverse inference.

Dated this July 23, 2025.

Respectfully submitted,

**Counsel for Plaintiff United States:**

/s/ Daniel R. Dertke
JOHANNA FRANZEN
CORRINA CARTER
VANESSA MOORE
U.S. Department of Justice
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0467 (Franzen)
Johanna.Franzen@usdoj.gov
Corrina.Carter@usdoj.gov
Vanessa.Moore@usdoj.gov

DANIEL DERTKE

**Counsel for Defendant General Dynamics:**

/s/ Wade A. Thomson
Wade A. Thomson
Steve M. Siros
Sarah L. Futernick
*Pro hac vice*
Attorneys for Defendant General Dynamics Corporation
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654
Telephone: (312) 840-8613
Fax: (312) 527-0484
Email:  wthomson@jenner.com
Email:  ssiros@jenner.com

U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 514-0994
Daniel.Dertke@usdoj.gov

/s/ Mark C. Elmer
MARK C. ELMER
U.S. Department of Justice
Environmental Enforcement Section
999 18th Street, North Terrace, Suite 600
Denver, CO 80210
(303) 844-1352 (PHONE)
(303) 844-1350 (FAX)
Mark.Elmer@usdoj.gov (EMAIL)

Email: sfuternick@jenner.com

Matthew S. Hellman
*Pro hac vice*
Attorney for Defendant General Dynamics
Corporation
JENNER & BLOCK LLP
1099 New York Avenue, N.W., Suite 900
Washington, DC 20001
Telephone: (202) 639-6861
Fax: (202) 639-6066
Email:  mhellman@jenner.com

Steven D. Davidson
Bar Number: 18684
Lindsay K. Lundholm
Bar Number: 22224
Brian Barmettler
Bar Number: 27017
Attorneys for Defendant General Dynamics
Corporation
BAIRD HOLM LLP
1700 Farnam Street, Suite 1500
Omaha, Nebraska 68102
Telephone: (402) 344-0500
Fax: (402) 344-0588
Email:  sdavidson@bairdholm.com
Email:  llundholm@bairdholm.com
Email:  bbarmettler@bairdholm.com

**Counsel for Defendant Dow:**

/s/  Frank G. Dylewski
FRANK G. DYLEWSKI (pro hac vice)
JARAN R. MOTEN (pro hac vice)
161 N. Clark, Suite 1700
Chicago, IL 60601
Telephone No. (312) 794-7307
FDylewski@phillipslytle.com
jmoten@phillipslytle.com

JOEL A. BLANCHET (pro hac vice)
JEREMY M. AMAR-DOLAN (pro hac vice)
Phillips Lytle LLP
One Canalside
125 Main Street

13

Buffalo, New York 14203
Telephone No. (716) 847-8400
jblanchet@phillipslytle.com
jamar-dolan@phillipslytle.com

WILLIAM F. HARGENS (#16578)
MICHAEL L. MORAN (#24042)
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Telephone No. (402) 341-3070
whargens@mcgrathnorth.com
mmoran@mcgrathnorth.com