IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

|  |  |
|---|---|
| THE UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff and Counter-Defendant, ) <br> ) <br> v. ) <br> ) <br> GENERAL DYNAMICS CORPORATION ) <br> and ) <br> DOW CHEMICAL COMPANY, ) <br> ) <br> Defendants and Counterclaimants. ) | Case No. 8:23-cv-00416 <br><br> Judge Brian C. Buescher |

**UNITED STATES' BRIEF IN SUPPORT OF STATEMENT OF OBJECTIONS TO MAGISTRATE JUDGE NELSON'S ORDERS**

**INTRODUCTION**

The United States respectfully objects to Magistrate Judge Nelson's Orders on December 11, 2025 (ECF No. 451) and January 14, 2026 (ECF No. 470) (hereinafter "Orders").[1] Together, the Orders: a) obligated the United States to continue reviewing a subset of classified documents and producing to Defendants those documents, or portions thereof, that can be declassified until at least July 15, 2026, and to provide status reports at 45 day intervals; and b) precluded the United States from filing a motion for a protective order and submitting legal argument and factual evidence in support thereof. As set forth below, the United States objects to ongoing declassification review and production because it is not proportional to the needs of this litigation and it imposes an undue burden. The United States also objects to being foreclosed from seeking

---

[1] The objections are timely because Judge Nelson extended the deadline for objections until January 23, 2026 (ECF. No. 463).

1

a protective order and from submitting argument, including factual evidence, in support. Accordingly, we respectfully ask the Court to sustain the Objections and halt any further declassification review and production, holding the United States' discovery obligations fulfilled as it relates to that discrete universe of documents. In the alternative, we ask that if the United States is required to continue its good faith efforts to declassify and produce documents, including rolling productions, that its discovery obligations be deemed fulfilled on July 15, 2026, regardless of whether every document identified by agency counsel as responsive has been declassified and produced.

    To be fully heard, the United States asks this Court to consider both the legal arguments raised in these Objections and the factual evidence appended to a concurrently filed Motion to Submit Evidence in Support of its Objections ("Motion for Leave") (ECF No. 482) (Franzen Declaration) (ECF No. 484). In accordance with NECivR 72.2(a), the United States specifies in the Objections the parts of the Orders it objects to and the legal basis underlying those objections. Interwoven in the United States' argument is factual evidence in declarations from three agencies conducting the declassification review.[2] We respectfully ask that the Court grant the Motion for Leave so that it may fully evaluate both the legal arguments and factual evidence underlying the Objections. Separately, the United States is seeking a stay of portions of the Orders while this Court considers the Objections. *See* NECivR 72.2(c). That stay will incorporate certain of the legal arguments and factual evidence relied upon here.

---

[2] In support of the Motion for Leave, the United States attaches declarations from three individuals at three reviewing agencies: Don C. McIlwain of the National Declassification Center at the National Archives and Records Administration ("McIlwain Decl."); Sara K. MacLeod of the Air Force Declassification Office ("MacLeod Decl."); and Jonathan P. Bennett of the Office of the Secretary of Defense ("Bennett Decl.") (together the "Declarations"), respectively Exhibits A, B, and C, to concurrently filed Franzen Declaration. ECF No. 484.

Such admittedly complex choreography is not an effort to litigate the same issues in different forums. Instead, it is necessary because the United States' request to fully brief a protective order for Magistrate Judge Nelson was denied, precluding it from developing a complete record and being heard on the merits, rather than solely on the attorney representations in the status reports and hearings that preceded the Objections. *See Vallejo v. Amgen, Inc.,* 903 F.3d 733, 742–743 (8th Cir. 2018) (noting that attorney assertions are generally not an adequate substitute for "affidavits and other forms of evidence.").

The parties met and conferred via telephone, email, and during the most recent hearing.

## BACKGROUND

In this litigation arising under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C.A. § 9601 *et seq.,* the United States is seeking to recover response costs incurred by the U.S. Environmental Protection Agency ("EPA") and the U.S. Army Corps of Engineers for past and future cleanup of a hazardous substance at the Nebraska Ordnance Plant Superfund Site in Mead, Nebraska (the "Site"). The United States alleges that Defendants are liable parties under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and operated at the Site when trichloroethylene, a hazardous substance, was released incident to the cleaning and testing of the Atlas intercontinental ballistic missile system at the Site during the Cold War period (*See* ECF No. 1). Defendants deny these allegations and have counterclaimed in contribution pursuant to 42 U.S.C. § 9613(f)(1), alleging the United States is a responsible party under various of CERCLA's liability categories (*See* ECF Nos. 13 & 14).

Apart from the declassification process that is the subject of these Objections, Defendants have taken extensive discovery of the United States. The United States has responded to 265

document requests, producing over 300,000 unclassified documents, and responded to 88 interrogatories. On January 12, Defendant General Dynamics served its eleventh set of requests for admission, bringing the combined total from both Defendants to 583 requests. This is in addition to 37 fact depositions Defendants noticed (including a 30(b)(6) deposition of the United States for which multiple 30(b)(6) designees gave testimony).

This litigation is now at a critical juncture with trial approaching in September. Magistrate Judge Nelson's Trial Setting Order (ECF No. 453) directs that expert discovery close this month (January 30), *Daubert* motions be submitted next month (February 27), dispositive motions be fully submitted by May 29, and trial begin on September 21.[3] That schedule is notable because it ensures that most of the salient pre-trial briefing will be concluded by early summer in advance of the pre-trial conference and motions practice.

## PRODUCTION OF DECLASSIFIED DOCUMENTS

Early in this litigation the United States agreed to attempt to review, declassify, and produce a universe of then-classified documents, determined by United States Air Force agency counsel with requisite clearance (detailed to the United States Department of Justice ("DOJ") at that time) to be responsive to discovery requests in this litigation.[4] The remainder of the DOJ case team cannot review the documents or receive overviews of them or the responsiveness determinations because none of the attorneys possess the requisite security clearance. Even if they did, the DOJ case team would not have legal authority to declassify these documents, which is statutorily prescribed. Nevertheless, since these materials were deemed responsive to this

---

[3] The deposition deadline and any related *Daubert* motion practice have been extended for one United States' expert, Wiley Wright, due to medical reasons.
[4] A paralegal in DOJ's Environmental Defense Section also possessed the requisite clearance and assisted with the responsiveness review, though she is not otherwise a member of the DOJ case team.

4

litigation's subject matter, they may implicate highly sensitive national security materials from the Cold War period and before, and declassification is not to be taken lightly. Still, the United States elected to make what it believed at the time would be reasonable efforts to review, declassify, and produce responsive, then-classified documents and not to assert any blanket privilege over these documents or to seek a protective order.

Throughout discovery the United States provided Defendants and the Court with regular updates through joint status reports that detail the extensive efforts it has undertaken to review, declassify, and produce what it can to Defendants from the identified universe of classified documents. (*See* ECF. Nos. 241, 280, 311, 353, 380, and 436). This was necessary, in part, because the United States was unable to meet production deadlines for the declassified documents, including those on March 10, 2025, April 10, 2025, and October 10, 2025.

A full recitation of the classified document background is beyond the scope of the Objections, but broadly speaking the United States divided the classified documents it is reviewing for declassification and production into different buckets: "Bucket 1" is comprised of classified documents that were held by the Air Force Historical Research Agency which must undergo review through the Air Force Declassification Office ("AFDO"); and "Bucket 2" is comprised of Department of Air Force ("DAF") documents housed at the National Archives and Records Administration ("NARA").[5] As discussed in more detail below, additional agencies with "equities" in the documents must also conduct a separate declassification review. Bennett

---

[5] A third bucket or "Bucket 3" of the classified documents evaluated consisted of documents at NARA that originated from OSD that were classified as Top Secret Critical Nuclear Weapon Design Information (TS/Q or TS CNWDI). The United States determined it was highly unlikely these documents could be declassified. After conducting a limited review of a subset of Bucket 3 documents at Magistrate Judge Nelson's direction, the United States determined that a subset of these materials did not include responsive non-duplicative information. The United States accordingly halted any further review of the Bucket 3 documents.

5

Decl. ¶ 9; MacLeod Decl. ¶¶ 4–6; McIlwain Decl. ¶¶ 4–6.  Here, that has required the Office of the Secretary of Defense ("OSD") and the Department of Energy ("DOE") to conduct additional reviews before certain documents could be declassified and produced.  As a result of this extensive, good faith effort, the United States has produced more than 17,000 declassified document pages to Defendants.

But that declassification process has now reached the point of diminishing returns.  The Orders mean that the United States is obligated to continue producing documents with periodic status reports until at least July 15, 2026, approximately two months prior to trial.  As set forth below, and in the Declarations, the United States objects to that order because continuing declassification imposes an undue burden and is not proportional to the needs of the case.  Ongoing declassification diverts finite national security resources from their core function, and, given the present posture of the case, the materials cannot be usefully incorporated into a trial scheduled to begin on September 21, 2026.

## APPLICABLE LEGAL STANDARDS

As a threshold matter, NECivR. 72.2(a) authorizes a party to object to a nondispositive Magistrate Judge's order provided the party timely files a Statement of Objections, delineates the parts of the order it objects to, and provides the legal basis for its objection.  NECivR. 72.2(b)(1) forecloses including additional evidentiary material without a court order, which is why the United States filed its Motion for Leave concurrently.  The Court has discretion to consider additional evidentiary materials.  *See John Ernest Lucken Revocable Tr. v. Heritage Bancshares Grp., Inc.*, No. C16-4005, 2017 WL 8640924, at *3 (N.D. Iowa Mar. 23, 2017).

Generally, a magistrate judge's discovery orders are treated as nondispositive motions and afforded significant deference.  *Shukh v. Seagate Tech., LLC,* 295 F.R.D. 228, 235 (D. Minn. 2013).  "A district court may reconsider a magistrate judge's ruling on nondispositive pretrial

matters where it has been shown that the ruling is clearly erroneous or contrary to law." *Ferguson v. United States,* 484 F.3d 1068, 1076 (8th Cir. 2007); Fed. R. Civ. P. 72(a). Here, however, there is no opinion or factual record (aside from the hearings/status reports) for the Court to evaluate. Indeed, the United States' inability to create a record through a motion for a protective order is precisely what prompts the Objections and the concurrently filed Motion for Leave. Accordingly, this Court may review the Orders *de novo*. *See E.E.O.C. v. Peters' Bakery,* 301 F.R.D. 482, 485-86 (N.D. Cal. 2014)*; Hirsch v. Zavaras,* 920 F. Supp. 148, 150 (D. Colo. 1996*); But see General Steel Domestic Sales, LLC v. Chumley,* 129 F. Supp. 3d 1158, 1166 (D. Colo. 2015).

The scope of discovery is broad but not unlimited. Fed. R. Civ. P. 26(b)(1) provides that the Parties:

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Rule 26 thus dictates that relevancy is not the only limiting factor. *Liguria Foods, Inc. v. Griffith Labs., Inc.,* 309 F.R.D. 476, 479 (N.D. Iowa 2015) ("A party resisting discovery on the basis of relevance bears the burden of establishing the lack of relevance. In addition, discovery must be proportional to the needs of the case.") (citation omitted); *Wells v. Lamplight Farms Inc.,* 298 F.R.D. 428, 433 (N.D. Iowa 2014) ("discovery must not only be relevant, it must also be proportional to the needs of the case."). The 2015 amendments to Rule 26, which moved the proportionality factors from Rule 26(b)(2)(C)(iii) to 26(b)(1), did not alter the rule's substance, but were intended to emphasize the application of proportionality to the scope of permissible discovery. Fed. R. Civ. P. 26 advisory committee note to the 2015 amendments ("Restoring the

proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality . . . . The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes."). Indeed, on motion or of its own accord, the court *must* limit the frequency and extent of discovery to the extent that it is outside the scope of Rule 26(b)(1). Fed. R. Civ. P 26(b)(2)(C)(iii). Responsibility for proportionality is a shared obligation. *Hartman v. City of Lincoln,* No. 4:19-CV-3100, 2021 WL 3856129, at *2 (D. Neb. Aug. 27, 2021) ("In the end, it is the collective responsibility of the parties and the court to consider the proportionality of all discovery requests.").

Separately, discovery may be curtailed by Rule 26(c) which allows a party to seek a protective order when the court finds "good cause" to protect a party from annoyance, embarrassment, oppression, undue burden or expense. Fed. R. Civ. P. 26(c)(1). "Because of liberal discovery and the potential for abuse, the federal rules confer[ ] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required." *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (citing *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984) (internal quotations omitted). Good cause exists when the moving party will suffer "specific prejudice or harm" if no protective order issues, *Heller v. HRB Tax Grp., Inc.*, 287 F.R.D. 483, 485 (E.D. Mo. 2012), and must be "based on more than stereotypical and conclusory statements." *Misc. Docket Matter No. 1*, 197 F.3d at 926. The burden to show good cause rests on the moving party. *Gen. Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d 1204, 1212 (8th Cir. 1973). The district court has broad discretion to grant a protective order and determine the appropriate discovery limitation. *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 362 (8th Cir. 2003).

While the respective inquiries—proportionality and undue burden—inform one another, they nevertheless provide the Court with distinct bases to limit discovery. *See Unknown Party v. Ariz. Bd. of Regents,* No. CV-18-01623, 2021 WL 2291380, at *1 (D. Ariz. June 4, 2021) ("With respect to undue burden and expense, Rule 26(c) operates parallel to, and in tandem with, the proportionality limits now set forth in Rule 26(b)(1).") (quoting 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 26, at 865 (2021); *Norfolk S. Ry. Co. v. Pittsburgh & W. Va. R.R.*, No. 2:11–cv–1588, 2013 WL 6628624, at *2 (W.D. Pa. Dec. 17, 2013) ("the exercise of [Rule 26(c)] discretion is often guided by the proportionality test under Rule 26(b).").

## ARGUMENT

### I. Ongoing declassification review places an undue burden on the United States by requiring an enormous resource outlay that diverts agency personnel from their core missions.

Continuing the declassification process places an undue burden on the United States by obligating it to continue an exhaustive review process that diverts agency personnel from their core missions. As an initial matter, it is an appropriate exercise of this Court's discretion to protect the United States from having its resources commandeered in litigation, whether or not it is a party to it. *See Exxon Shipping Co. v. U.S. Dep't of Interior,* 34 F.3d 774, 779 (9th Cir. 1994) ("We acknowledge the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations."); *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991) (Upholding the district court's decision to quash a subpoena issued to government in private litigation due to resource concerns: "The plaintiffs' interest in getting the deposition of Dr. Evatt simply cannot compare to the government's interest in maximizing the use of its limited resources in dealing with a national health crises."); *Kellogg Brown & Root Servs., Inc. v.*

9

*United States,* 117 Fed. Cl. 1, 5–6, 8 (2014) (granting the United States' protective order because documents request were overbroad and imposed undue burden: "practical execution of Document Request No. 3 would require the government to invade an overwhelming number of computers, email accounts, and paper files from both past and present government employees and would require the government to devote substantial time and resources to the review of the material for relevancy, privilege, and security."); *United States v. Duke Energy Corp.*, 214 F.R.D. 392 (M.D.N.C. 2003) (precluding discovery of DOE's interpretation of the EPA's regulations as irrelevant and outweighed by the significant burden of production).

The Declarations make clear the burden of the ongoing declassification review and its impact on the reviewing agencies. Specifically,

- Only a small number of highly specialized and trained employees can review the documents for declassification. While agency counsel with appropriate clearance may be able to review the classified documents for *responsiveness*, they cannot make classification determinations. Only employees at the classifying agency with the requisite clearance and specialized training and expertise in declassification may conduct the required review. Bennett Decl. ¶ 9; MacLeod Decl. ¶ 14; McIlwain Decl. ¶ 8.

- Many documents must be reviewed by more than one agency before declassification. The original classifying agency or "OCA" and any agency with "equities" or an interest in the documents is required to review the documents as well. Bennet Decl. ¶ 9; MacLeod Decl. ¶¶ 4–6; McIlwain Decl. ¶¶ 4–6. Thus, many documents must be referred for declassification to additional agencies. This is especially so at NARA where it is generally not the OCA. Bennett Decl. ¶ 4. For example, many documents in the custody of AFDO marked as Restricted Data or Formerly Restricted Data or "RD/FRD" implicate equities held by DOE and must be reviewed by that agency as well. MacLeod Decl. ¶ 4.

- Reviewing documents for declassification is a necessarily slow and deliberative process. Often review for declassification must proceed slowly, with each document being reviewed on a page-by-page or even a line-by-line basis. Bennett Decl. ¶ 9; MacLeod Decl. ¶ 6. Some of the documents can be voluminous, totaling hundreds or even thousands of pages. McIlwain Decl. ¶ 12; MacLeod Decl. ¶ 18; Bennett Decl. ¶¶ 13–14.

- <u>Significant steps remain even after the declassification review by multiple agencies is complete</u>. After review, often from multiple agencies, the declassification determinations are consolidated into a single hard-copy document that is scanned to a secure system for line-by-line redactions. McIlwain Decl. ¶¶ 6–7; MacLeod Decl. ¶¶ 6–7. The consolidated, redacted document must then be printed from the classified system and manually scanned into a non-classified system before transmission to DOJ for ultimate production. MacLeod Decl. ¶ 8; McIlwain Decl. ¶ 8.

- <u>Review of classified documents in this civil litigation diverts agency resources from their core functions</u>. Ongoing reviews of documents for declassification causes the already finite resources of the reviewing agencies to be diverted from their core functions, including review of records requested by the public. Bennett Decl. ¶¶ 6,11; MacLeod Decl. ¶ 11; McIlwain Decl. ¶ 10.

The burden imposed by this exhaustive review process is exacerbated by several factors unique to the United States. First, the reviewing agencies have limited resources, and some cannot scale up because of an ongoing hiring freeze. MacLeod Decl. ¶ 14. The unexpected death of a vital AFDO employee at a critical juncture in the declassification review illustrates the risk posed by reliance on a few individuals with unique expertise and the inability to backfill. *Id*. ¶ 16. Second, the United States is still confronting the impact of a weeks-long shutdown due to a lapse in appropriations which forced employees in the reviewing agencies to unexpectedly halt work. MacLeod Decl. ¶ 14; Bennett Decl. ¶ 14; McIlwain Decl. ¶ 11. Third, the declassification processes in place are not intended or staffed to be shoe-horned into the demands of civil litigation. Bennet Decl. ¶ 11; MacLeod Decl. ¶ 10. Fourth, even in seeking protection, the United States must fight with a hand tied behind its back: Defendants have made only nebulous allegations of prejudice (though we understand a dismissal motion based on purported prejudice is forthcoming), and the United States cannot advance arguments about the importance (or lack thereof) of the yet to be produced documents because the case team is unaware of their contents and forbidden from discussing classified information. Taken together, the burdensome process

11

and the unique constraints faced by the United States counsel in favor of halting the declassification process.

Though Defendants may claim the United States is a monolith with unlimited resources, the Declarations make clear that is not so. In sum, the offices conducting declassification reviews at the agencies are staffed with a limited number of employees with specialized expertise and *only* they can complete this sensitive review involving the nation's wartime secrets. Those agencies are laboring under time and resource constraints, while being forced to divert employees from their core functions. Attorneys on this case team are unable, practically and legally, to expedite the process. Put another way, the delay in production is not attributable to the case team's unwillingness to assign additional resources to this case. Instead, it is a result of the uncomfortable merger of two adjudicative processes—declassification and litigation—each with inherently different objectives. Declassification is by necessity deliberative and conservative, commensurate with the highly sensitive information at issue. By contrast, the Federal Rules foundational directive is to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The United States is caught between these competing forces—aligned in the preference for an expedient resolution to this matter, while simultaneously obligated to protect the national security interests of its client agencies.

The United States now recognizes that it is in this position because of its incomplete understanding of the declassification process at the outset of the litigation. The United States acknowledges that it brought this cost-recovery case against Defendants, with all the concomitant discovery obligations; agency counsel were authorized to conduct a responsiveness review of classified documents; and it committed to producing declassified documents, albeit without understanding how rare that concession was, how difficult it would be for the case team

to control that process, how many pages of documents would require review, and how burdensome and resource-intensive it would become for the United States. This is an eventuality contemplated by the Federal Rules:

> The parties may begin discovery without a full appreciation of the factors that bear on proportionality. A party requesting discovery, for example, may have little information about the burden or expense of responding. Fed. R. Civ. P. 26 advisory committee note to the 2015 amendments.

This frank acknowledgement contextualizes the present dispute but does not negate the ongoing undue burden the United States faces by litigating this matter full bore in tandem with a resource-intensive declassification process. Importantly, that burden is compounded by the limited utility of ongoing review, declassification, and production.

## II. Ongoing production of declassified documents is disproportionate to the needs of this litigation because the documents will be produced too late to be incorporated into motions practice before trial.

Further declassification efforts here are no longer proportional to the needs of this litigation because the documents will not be produced in time to be usefully incorporated into the parties' trial preparations. The latter two factors of the Rule 26 proportionality standard warrant special attention here: the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). By the time the declassified documents are produced they will be of little use to the parties.

As an initial matter, the unproduced documents are known unknowns: no attorney on the DOJ case team has seen them or is able to learn about their content because they have not been declassified. In this way the DOJ case team and the Defendants are at an identical disadvantage—neither party knows what's in the remaining classified materials or, critically, can

make use of the information contained therein. Thus, this information, which remains functionally unknown to all parties, cannot be of use in resolving the issues in this litigation.

Further, the current scheduling order will preclude additional declassified materials from being useful even as the parties (and the Court) expend substantial time and resources before trial. The estimated declassified document production completion date (July 15, 2026) is little more than two months from the trial date (September 21, 2026). By July 15, all fact and expert discovery will have closed, *Daubert* motions will have been filed, and summary judgment and all cross motions and responses will have been fully submitted for months (*See* ECF No. 453). The Court may have expended significant resources in adjudicating *Daubert*, dispositive, and other motions that could be impacted by the production of additional declassified materials. Apart from the pre-trial order and motions in limine, functionally all the major remaining milestones before trial will have come and gone, and the parties will have spent enormous resources on discovery and briefing that can make no use of these materials. The aggregate burden of the parties' preparation for trial, the outlay of resources by the reviewing agencies, and the judicial economy that may be sacrificed, indicate the burden of continuing declassification likely outweighs the benefit.

The inefficiency risked by continued production is compounded by the case team's inability to guarantee that the documents will be produced by July 15, 2026. As the Declarations make clear, each classified document is evaluated on its own basis, and some require more time to review and declassify than others. This raises the prospect that the parties and the Court will go through the exercise of vigorously litigating this matter up to the doorstep of trial only for the parties to reach the same crossroads we sit at now: some declassified documents will have been produced; some documents will remain classified and unknown to both parties; Defendants will

likely contend the United States failed to meet its discovery obligations and move accordingly; and the Court will have presided and even issued rulings in the interim.

Whether excluded on relevance or proportionality grounds, courts may curtail discovery into information that cannot be applied to the claims and defenses at issue. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (products liability appeal upholding denial of discovery into predecessor models because of burden and materials sought would be of no use to parties); *Bepex Int'l, LLC v. Hosokawa Micron BV*, No. 19-CV-2997, 2022 WL 3701406 (D. Minn. Feb. 8, 2022) (limiting the temporal and substantive scope of requests for production because materials sought were irrelevant and therefore disproportionate); *Smith v. Toyota Motor Corp.*, No. 2:16-CV-00024, 2017 WL 1425993 (E.D. Mo. Apr. 21, 2017); *Lopez v. United States*, No. 15-CV-180, 2017 WL 1062581 (S.D. Cal. Mar. 21, 2017) (applying the proportionality factors to deny an additional inspection because it could not resolve issues of the case due to government's stipulations).

The United States concedes there are mitigating measures. But each potential mitigating measure presents its own burdens and logistical problems. For example, the United States will continue rolling productions in good faith (if the Objections are not sustained) which may be able to be incorporated into various motions and the reviewing agencies will continue to prioritize this civil litigation as set forth in the Declarations. Even documents received in July may be at least partially incorporated into the parties' presentation at trial. But these examples raise more questions: Will Defendants be allowed to seek additional discovery concurrent with pre-trial motions practice? Will the parties' experts be able to incorporate the contents into their reports? If so, will the parties be allowed to re-depose certain experts regarding new or altered opinions? What implications, if any, would there be for the Court's rulings issued prior to

production? These questions illustrate the disruption and inefficiency that could compromise the Court's schedule and future deadlines as trial nears, even as the parties expend tremendous time and energy litigating this matter to resolution.

## CONCLUSION

In light of the foregoing, the United States respectfully asks the Court to sustain the Objections and halt any further declassification review and production, holding the United States' discovery obligations fulfilled as it relates to that discrete universe of documents. This request is appropriate because continuing the declassification process imposes an undue burden on the United States and is not proportional to the needs of this litigation. In the alternative, we ask that if the United States is required to continue its good faith efforts to declassify and produce documents, including rolling productions, that its discovery obligations be deemed fulfilled on July 15, 2026, regardless of whether every document identified by agency counsel as responsive has been reviewed, declassified, and produced.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

*/s/ Zachary N. Moor*
ZACHARY N. MOOR (MA Bar No. 681469)
Senior Attorney
Environment and Natural Resources Division
U.S. Department of Justice
150 M Street, NE
Washington, DC 20002
(202) 532-3394
zachary.moor@usdoj.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d)(1)(D), I certify this brief complies with the requirements of NECivR 7.1(d)(1). Relying on the word-count function of Microsoft Word 365, this document contains 5,168 words. The word-count function was applied to all text, including the caption, heading, footnotes, and quotations.

.

> */s/ Zachary N. Moor*
> Senior Attorney
> U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Zachary N. Moor*
Senior Attorney
U.S. Department of Justice