**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA | CIVIL ACTION NO. 8:23-CV-416 |
| Plaintiff, | |
| v. | |
| GENERAL DYNAMICS CORPORATION and DOW CHEMICAL COMPANY, | |
| Defendants. | |

## DEFENDANT GENERAL DYNAMICS'S RESPONSE IN OPPOSITION TO PLAINTIFF'S OBJECTIONS, MOTION TO STAY, AND MOTION FOR LEAVE TO SUBMIT EVIDENCE

### INTRODUCTION

Defendant General Dynamics Corporation ("GD") by and through its attorneys, respectfully requests that this Court overrule Plaintiff's ("United States" or "Government") Statement of Objections to Magistrate Judge Nelson's Orders ("Objections") (ECF No. 486) and deny Plaintiff's Motion to Stay Portions of Order ECF No. 451 ("Motion to Stay") (ECF No. 488) and Motion for Leave to Submit Evidence in Support of its Objections ("Motion for Leave") (ECF No. 482).[1]

Plaintiff's Objections and Motions follow years of considerable delay in producing responsive documents, with no mention of a protective order until nearly two years after it received the first requests for classified documents and after the parties and Judge Nelson expended considerable time and resources on the classified document issue. As a Magistrate Judge charged

---

[1] The Government's Objections and Motion for Leave are directed to Judge Buescher and the Motion to Stay is directed to Judge Nelson. To promote judicial efficiency and because the motions relate to the same factual background, GD responds to the Government's Objections, Motion to Stay, and Motion for Leave in this combined response brief.

with overseeing discovery issues (among many other things), Judge Nelson's Orders are rightfully given substantial deference, as he has been adjudicating the parties' discovery disputes in this complex matter for years. Now that discovery is nearly complete and a trial date set, the Government for the first time seeks to avoid its obligation to produce relevant classified documents. The Government initiated this lawsuit against GD and Defendant Dow Chemical Company, agreed to the case schedule after being warned by Defendants about the need for classified document review, and repeatedly failed to meet extensions of revised deadlines it represented to be sufficient.

The Government's current motions are even more suspect when put in the proper context, a history which undercuts the Government's current excuse of its own "incomplete understanding of the declassification process at the outset of the litigation." (ECF No. 487 at 12). The Government's own historian expert testified just this week that he informed the Government of the existence of relevant, classified documents as early as 2019—years before the Government initiated the lawsuit against Defendants in 2023. Moreover, before agreeing to a discovery schedule in this case in early 2024, GD informed the United States that they too thought there were relevant, classified documents requiring review, and repeatedly pushed the Government to fully engage in the process. Hence, when the Government agreed to the discovery schedule in this case over two years ago, it was fully aware of the need to declassify and produce certain documents. Despite this knowledge, the Government has continually delayed production. Now, the Government argues that the documents cannot be successfully incorporated into the arguments at this late stage of litigation—in other words, the Government, rather amazingly, asks to be excused from its discovery obligations due to its own failure to adhere to those very same obligations. But as GD has repeatedly stated, including at several hearings with Judge Nelson, the Government

should not be given additional time to comply with its discovery obligations such that the trial is delayed—the September trial date should stand. *See, e.g.*, Ex. A (January 14, 2026 Court Hearing Tr.) at 12:22–13:2; Ex. B (December 11, 2025 Court Hearing Tr.) at 15:4–6.

In sum, the Government's request to halt production of responsive documents at this late juncture violates fundamental tenets of the Federal Rules of Civil Procedure, contravenes the Government's own representations and actions, and asks the Court to deviate from Judge Nelson's sound disposition of these issues, made on a thorough and carefully developed record. The Government's Objections should be overruled and the Motions should be denied.

## FACTUAL BACKGROUND

When the Government filed this lawsuit against GD, it had been aware for years of its obligation to review and produce relevant classified documents, and still agreed to a ten-month timeline for written discovery.

- In 2019, four years before the Government filed this lawsuit, its expert historian, an experienced archivist, informed the Government that there were classified documents relevant to the cleanup of hazardous substances released at the Nebraska Ordnance Plant Superfund Site in Mead, Nebraska (the "Site"). Ex. C (Jay Brigham Dep. Tr.) at 51:8–14.

- On September 22, 2023, the Government sued Defendants, seeking over $125 million and alleging Defendants operated the Site when a hazardous substance was released. (ECF No. 1).

- In January 2024, in conjunction with their first set of RFPs, GD provided the Government with the locations of relevant classified documents. (ECF No. 353 at 7).

- In February 2024, the parties met and conferred as required under Federal Rule of Civil Procedure 26(f) and jointly agreed on a case progression order, which included a ten-month written discovery period ending in December 2024. (ECF No. 39).

Despite its awareness of its burden to produce classified documents and agreement to a discovery schedule, the Government repeatedly delayed the declassification process. For example,

in the fourteen months after GD first requested review of certain categories of documents in January 2024, the Government did not complete a responsiveness review. This review was not particularly time-consuming, as the Government later reviewed half of these documents in approximately 45 days. (ECF No. 311 at 8). Throughout 2024, GD attempted to assist the Government in its classified document review by providing additional details about the types of documents it was seeking, providing draft language for the declassification officers, narrowing the scope of their discovery requests, and even offering to send one of GD's attorneys to assist with their responsiveness review. Ex. D (Letter from W. Thomson to F. Phillips dated April 17, 2024).[2]

On December 5, 2024, the Government sought a substantial extension of time for the specific purpose of reviewing and producing classified materials. The Government had yet to produce a single responsive classified document and would not do so until February 19, 2025. This began a pattern of the Government asking for extensions and then failing to meet every deadline, as displayed in the table below.

| Deadline to Produce Classified Documents | Result |
|---|---|
| March 10, 2025 (ECF No. 228) | Not met; extended on 3/4/25 (ECF No. 281) |
| April 10, 2025 (ECF No. 281) | Not met; extended on 4/23/25 (ECF No. 312) |
| October 10, 2025 (ECF No. 312) | Not met (*See* ECF No. 470)[3] |

---

[2] The process of getting the GD attorney access to the classified documents was repeatedly met with roadblocks and resulted in little tangible progress. (*See* ECF No. 311 at 9–10). After months of attempting to assist in the review of documents, the attorney was only given access to nine documents at one location, and the Government had already reviewed all but four documents the attorney was given access to at another location. (*Id.*).

[3] At the December 11, 2025 hearing, Judge Nelson refused to extend the October 10, 2025 deadline for the Government to produce classified documents, noting that an extension was "inconsistent with the needs of case progression in this case and the September 21st, 2026 trial date." Ex. B (December 11, 2025 Court Hearing Tr.) at 37:1–4. Judge Nelson told the Government that the documents "need to be produced now." *Id.* at 37:4–7.

4

During this time, Judge Nelson diligently oversaw the Government's declassification review and used a variety of tools to spur production. These included requiring the parties to submit joint status reports every forty-five days (ECF No. 223), admonishing the Government that there would be "no other extension," Ex. E (April 23, 2025 Court Hearing Tr.) at 46:7, and explicitly acknowledging the possibility of sanctions if the Government did not comply. (*Id*. at 31:1–5) ("[I]f all the documents cannot be produced in a timely basis, we're just putting ourself in a position where the Court will have to consider issuing sanctions."). Judge Nelson also held five separate status conferences in 2025 to discuss the declassification process and the Government's progress at length. (*See* ECF Nos. 255; 281; 312; 405; and 427).

Despite these warnings, the Government told Judge Nelson in July 2025 that it may not be able to meet the October deadline for which Judge Nelson had warned there would be no further extensions. (ECF No. 353). The Government did not seek any tangible relief at this time. (*Id.*). More specifically, it did not seek a protective order or argue that reviewing and producing the responsive materials in the Government's file were not proportionate to the needs of this $125 million-plus action that the Government initiated. The next motion from the Government was on October 1, 2025, when the Government requested a stay of case deadlines due to the federal government's lapse in appropriations. (*See* ECF No. 409). Thus, the Government sought a stay of case deadlines just nine days before the October 10, 2025 declassification deadline which Judge Nelson said he would not extend. The Government did not file anything specifically related to the classified documents and did not acknowledge any inability to meet Judge Nelson's firm deadline.

Case deadlines in this matter were stayed during the forty-three-day shutdown, until November 18, 2025. (*See* ECF Nos. 412 and 422). Accounting for a day-for-day extension, the

Government's deadline for producing classified documents was November 24, 2025 (forty-three days after October 10, 2025). But the Government neither sought relief from that deadline, nor did it increase the speed of its declassification review. In early December 2025, during the process of negotiating an amended case schedule with Defendants, Plaintiff raised for the first time that it thought it should be relieved from additional classified document review. Defendants objected to this during a status conference with Judge Nelson, Ex. B (December 11, 2025 Court Hearing Tr.) at 5:5–11, 8:2–5, who ruled that declassification must continue. (ECF No. 451).

On January 14, 2026, at least six years after the Government was alerted to relevant, classified materials, two years after the Government was undoubtedly aware of its declassification obligations, a year after the parties had first raised the declassification issues to the Court, and after three separate extensions totaling sixteen months, the Government stated it would seek leave to file a protective order during a status conference. Ex. A (January 14, 2026 Court Hearing Tr.) at 6:1–10, 7:5–8. Noting the Government's history of delay, and likely prejudice to Defendants, Judge Nelson denied the Government's motion for leave to file a protective order during the conference. (*Id.* at 9:7–10). It is also worth noting that before Judge Nelson ruled, Government counsel went into detail about the review process (as it had done previously in several status hearings and status reports on classified documents)—in short, the Government already made the arguments it made to Judge Nelson on January 14, 2026, and it is now re-hashing those arguments again in its latest motions.

The Government then filed its Objections to Judge Nelson's December 11, 2025 and January 11, 2026 orders (ECF No. 486), a motion to stay certain aspects of the Government's declassification obligations (ECF No. 488), and a motion for leave to supplement its Objections with additional evidence (ECF No. 482).

**ARGUMENT**

I.  **Judge Nelson's decision to hold the Government to its discovery obligations should be upheld and follows years of the Government's delay in a case the Government chose to prosecute.**

The Government should not be rewarded for its continued delays by being relieved of its discovery obligations altogether.  The Government asserts that Judge Nelson erred in requiring it to review and produce responsive documents subject to declassification because of the undue burden posed by the intricacies of the declassification process. But any burden claimed by the Government was present both when it decided to sue GD, and when it agreed to the discovery schedule at the outset of the case.  The Government's production delays have been exacerbated by the Government's own failure to diligently work towards declassification. Indeed, the Government admits in its own motions that "**[t]he United States now recognizes that it is in this position because of its incomplete understanding of the declassification process at the outset of the litigation.**" (ECF No. 487 at 12) (emphasis added). Further, the Government could have pursued a protective order at any earlier time but only now seeks a late protective order that will deprive GD of documents needed to defend itself, a right afforded to all civil litigants.

A.  *The Court should apply the deferential standard consistently given to magistrate judges' orders.*

In discovery matters, a magistrate judge is afforded great deference. *Meza v. Union Pac. R.R. Co.*, No. 8:22CV102, 2023 WL 4931697, at *1 (D. Neb. Aug. 2, 2023). A district court can only set aside a magistrate judge's decision on a non-dispositive matter when the order is clearly erroneous or contrary to law. 28 U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 72(a). Under a clearly erroneous standard, a district court can reverse a magistrate judge's order "only if the court is left with the definite and firm conviction that a mistake has been committed." *Benson v. City of Lincoln*, No. 4:18CV3127, 2022 WL 1121805, at *2 (D. Neb. Apr. 14, 2022) (quoting *Brooks v.*

*Lincoln Nat'l Life Ins. Co.*, No. 8:05CV118, 2006 WL 2487937, at *3 (D. Neb. Aug. 25, 2006). Similarly, "[a]n order is contrary to law if it 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *ACI Worldwide Corp. v. Churchill Lane Assocs.*, LLC, 8:14CV249, 2019 WL 1472583, at *1 (D. Neb. April 3, 2019) (quoting *Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1043 (S.D. Iowa 2010)).

Presumably aware that Judge Nelson's Orders readily satisfy review under Rule 72(a), the United States contends that the Court should review the Orders *de novo*. The United States obfuscates a fundamental distinction between non-dispositive orders under Rule 72(a) and dispositive orders under Rule 72(b). As written directly in the rule, *de novo* review is reserved for the latter. *Compare* Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.") *with* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."). The United States points to no decision in the Eighth Circuit deviating from the text of Rule 72(a). To the contrary, the United States District Court for the District of Nebraska has consistently applied the text of Rule 72(a) as written. *See e.g.*, *Jim Daws Trucking, LLC v. Daws, Inc.*, No. 4:24CV3177, 2025 WL 3754412, at *2 (D. Neb. Dec. 29, 2025); *Wilkins v. Union Pac. R.R. Co.*, No. 8:22CV239, 2025 WL 3228986, at *5 (D. Neb. Nov. 19, 2025). The Government asserts that because there was "no opinion or factual record," Judge Nelson should not be afforded the traditional deference. (ECF No. 487 at 7). This argument fails both factually and legally.

First, the Government cites isolated, out-of-circuit cases that demonstrate *de novo* review can sometimes be given to a magistrate judge's order when no rationale is given. (ECF 487 at 7). Every single case that the Government cites for its alternative standard of review involved a ruling

issued by a magistrate judge *with no rationale or discussion,* thereby rendering meaningful judicial review impossible, and each of those cases articulated the proper standard for sustaining an objection outside of that narrow circumstance. *See Equal Emp. Opportunity Comm'n v. Peters' Bakery*, 301 F.R.D. 482, 486 (N.D. Cal. 2014) (confirming that "the magistrate's factual determinations are reviewed for clear error," but applying *de novo* review to a narrow issue on which "the underlying order provides no discussion of the rationale") (internal quotation marks omitted); *Hirsch v. Zavaras*, 920 F. Supp. 148, 150 (D. Colo. 1996) (confirming that, "[o]rdinarily, the test in reviewing a magistrate judge's order on nondispositive matters is whether that order is clearly erroneous or contrary to law," but applying *de novo* review because "the magistrate judge has ruled without any discussion of his rationale"); *Gen. Steel Domestic Sales, LLC v. Chumley*, 129 F. Supp. 3d 1158, 1166 (D. Colo. 2015) (holding that the objections at issue "will be overruled unless the Court finds that the Magistrate Judge abused her discretion or, if after viewing the record as a whole, the Court is left with a definite and firm conviction that a mistake has been made" even though the objecting party argued that "the Magistrate Judge's explanation for her ruling did not contain any meaningful discussion of her rationale") (internal quotation marks omitted).

Second, this record is far from the isolated precedents relied on to justify a *de novo* review. Judge Nelson carefully weighed the considerations and explained his reasoning in detail when he denied the Government's motion for leave to file a protective order. At the December 11, 2025 hearing, Judge Nelson noted that he was "not inclined to take the risk that Plaintiff's production would be further delayed" and that there was no "good cause to allow Plaintiff to cease its efforts with regard to classified document production[.]" Ex. B (December 11, 2025 Court Hearing Tr.) at 24:24–25:12. Judge Nelson expressly acknowledged that the Government had made its record with regard to its claimed "burden," and noted that the facts presented by the Government were

adequately considered. *Id*. at 36:21–37:14 ("The Court recognizes that the government has appropriately set forth the difficulties with regard to the classified document review and production process but the United States cannot give anything more than an estimate as to when that production will be completed[.]")

Moreover, this ruling was not made in a vacuum—Judge Nelson had convened several hearings on the classified documents issue and reviewed numerous status reports prior to this hearing. Disagreement alone does not justify foregoing appropriate deference to a magistrate judge who has been supervising the case for years and has lived with a complex factual record. The Court thus should apply the default deferential standard of review here.

> B. *The Government's argument that it is burdened by declassification is unavailing because it repeatedly delayed the production of declassified documents, despite being aware of its declassification obligations for years.*

Regardless of the standard of review applied to Judge Nelson's Orders, the Government cannot satisfy the standard for a protective order, even if it was granted leave to file one. The Government has been aware of the activity required for declassification for years. Its own failure to take the process seriously cannot excuse its obligation now.

A court will only grant an order protecting disclosure or discovery upon a showing of good cause. *See* Fed. R. Civ. P. 26(c)(1)(G). The party moving for the protective order has the burden to demonstrate good cause for issuance of the order. *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2,* 197 F.3d 922, 926 (8th Cir. 1999). In order to make the requisite showing of good cause, the moving party must make "a particular and specific demonstration of fact, as distinguished from stereotype and conclusory statements." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n.16 (1981); *Miscellaneous Docket Matter,* 197 F.3d at 926. For good cause to exist, the parties seeking protection must show that specific prejudice or harm will result

if no protective order is granted. *See Frideres v. Schiltz,* 150 F.R.D. 153, 156 (S.D. Iowa 1993).

"Such determination must also include a consideration of the relative hardship to the non-moving

party should the protective order be granted." *General Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d

1204, 1212 (8th Cir. 1973) (citing *United States v. Kordel,* 397 U.S. 1, 4–5 (1970)).

Defendants served their first set of requests for production in January 2024. In the

intervening two years, the Government never once sought the relief of a protective order. Instead,

the Government continuously delayed discovery by failing to meet every deadline for

declassification imposed by the Court. This pattern of delinquency is entirely of the Government's

own making and represents a repeated lack of diligence in the declassification process.[4] Despite

knowing of the need to declassify documents when it filed this lawsuit, the Government failed to

adequately prioritize reviewing these documents while still agreeing to new discovery deadlines.

Now, despite repeated reminders of the intricacies of the declassification process from GD

and Judge Nelson, the Government inexplicably argues that it was *never* fully aware of its

discovery obligations when it agreed to the discovery timeline in the case it chose to prosecute.

The Government writes:

> **The United States now recognizes that it is in this position
> because of its incomplete understanding of the declassification
> process at the outset of the litigation.** The United States
> acknowledges that it brought this cost-recovery case against
> Defendants, with all the concomitant discovery obligations; agency
> counsel were authorized to conduct a responsiveness review of
> classified documents; and it committed to producing declassified
> documents, albeit without understanding how rare that concession
> was, how difficult it would be for the case team to control that
> process, how many pages of documents would require review, and

---

[4] The Government's delays are not only an issue in the declassification process, but also throughout
other aspects of discovery. For example, the Government was late in producing custodial
documents, delinquently provided documents relating to Expert Ward, and has provided an
untimely expert report. *See* Ex. F (Letter from S. Sebor to F. Philips dated July 15, 2024); Ex. G
(Letter from F. Dylewski to D. Gordon dated January 8, 2026); ECF No. 474.

> how burdensome and resource-intensive it would become for the
> United States.

(ECF No. 487 at 12) (emphasis added). The revealing admission comes almost seven years after the Government learned of the existence of relevant classified documents (which the Government itself began looking into to help its case), after years of discovery, and after the Government had ample time to determine it may have needed more time to declassify the documents.  Only now, after trial preparations are underway and nearly all discovery has been completed, does the Government seek relief.

> *C. The Government is afforded no special treatment in civil litigation and its repeated delays in declassification should not be forgiven.*

GD certainly respects the need for diligent declassification to protect our nation's secrets. Indeed, GD has narrowed its requests to try to avoid documents or portions of documents that could implicate national security information in documents that are several decades old. *See* Ex. D (Letter from W. Thomson to F. Phillips dated April 17, 2024). But "'merely raising national security concerns cannot justify an unlimited delay.'" *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 416 F. Supp. 2d 30, 42 (D.D.C. 2006) (citing *ACLU v. Dep't of Def.*, 339 F. Supp. 2d 501, 505 (S.D.N.Y. 2004) (ordering production of documents because national security concerns do not justify moving at a "glacial pace")). In the context of civil litigation, the Government is positioned the same as any other litigant, and must comply with discovery orders, especially when it decides to take action against private businesses. *See United States v. Stabl Inc.*, No. 8:16CV233, 2018 WL 3758204, at *5 (D. Neb. Aug. 8, 2018) ("Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure. It is not entitled to special consideration concerning the scope of discovery, *especially when it voluntarily initiates an action.*") (citations omitted) (emphasis added). While some delay may result from declassifying a large volume of documents,

the Government is not entitled to multiple years to gain an understanding of its own declassification process. Indeed, courts have recognized that the "Byzantine" workings of the Government do not forgive excessive delays, and that the Government has "repeatedly proven that it can process mass quantities of documents on short deadlines." *Barre v. Obama*, 932 F. Supp. 2d 5 (D.D.C. 2013) (ordering production of documents when Government shows "lack of urgency" even when it claims it does not have adequate staff to complete review).

The Government cites five reasons from its untimely declarations that it argues demonstrate the undue burden of declassification. (*See* ECF No. 487 at 10–11). Even if the Court elects to consider these declarations, the Government has been afforded ample leeway here. Each of the reasons has been known to the Government for years, was present when the Government initially agreed to the discovery schedule, and does not excuse the Government moving at a "glacial pace." *See ACLU v. Dep't of Def.*, 339 F. Supp. 2d at 505. The Government submits that only a few employees can review the classification, which moves at a slow pace, with multiple agencies involved in the process. Any burden the Government claims exists, it could and should have raised when it agreed to the Progression Orders. (ECF Nos. 39; 228; and 309).

While the Government highlights some factors from later in the litigation that impeded the process, none of these were present until months after the Government already missed multiple deadlines. For example, the Government cites the unexpected death of a key staffer in June 2025 as a reason for the declassification delay. By that time, the Government had already missed two production deadlines and had only completed an initial review of two documents from each box related to that category of documents in July 2020—three months after the review was ordered by Judge Nelson. And while the government shutdown may have reduced the Government's ability to declassify documents in the short term, DOJ attorneys did not even ask the declassifying offices

about the status of review until *after* the shutdown ended in November 2025. (ECF No. 485 at 4).

Lacking the factual support necessary for a protective order, the Government cites cases that purport to show that its resources cannot be "commandeered" for litigation. (ECF 487 at 9). In all but one of these cases, the Government, unlike here, was not the plaintiff who chose to initiate the suit. *See Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (government as defendant); *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991) (considering a party's subpoena of a government employee when the agency was not a party to the case); *Kellogg Brown & Root Servs., Inc. v. United States*, 117 Fed. Cl. 1, 5–6, 8 (2014) (government as defendant).

Even in the single case the Government cites where the Government *was* the plaintiff, the court limited discovery only because an entire cabinet agency would have to search all of its files for particular documents. *See United States v. Duke Energy Corp.*, 214 F.R.D. 392 (M.D.N.C. 2003). Here, GD has narrowly tailored its production requests to the most important documents and prepared one of its own attorneys to review the documents he can access to ease the Government's burden. The substantial burden considered in *Duke Energy* is not present here.

Finally, in one of the cases the Government itself cites, the court denied the Government's request to stop discovery into a federal agency. *See Exxon Shipping Co.*, 34 F.3d at 779. In recognizing that the Government should receive no special treatment in discovery, the Ninth Circuit wrote that "district courts should apply the federal rules of discovery when deciding on discovery request made against government agencies, whether or not the United States is a party to the underlying action." *Id.* at 780. There, like here, the Government was given a proper discovery request. The Government should not be permitted to avoid its discovery obligations because of purported bureaucratic inefficiencies.

> D. *The Government could have moved for a protective order at any time.*

The timing of the Government's request for a protective order further belies its alleged
burden. The Government could have sought relief from its declassification process at any point in
the last two years but only waited until after nearly all of discovery had taken place and a trial date
had been set.

Had the Government truly needed relief from its discovery obligations, it only needed to
follow two simple, common-sense requirements, aimed to minimize impact on "the court's final
scheduling order."  Magistrate Judge Civil Case Management Practices at pp. 7–8. *First*, a party
seeking to file a motion for protective order must confer with opposing counsel in good faith. *Id*;
NECivR 7.1(i). *Second*, the party must contact "the magistrate judge assigned to the case to discuss
the discovery dispute." *Id.*  If the parties are unable to resolve the dispute at the pre-motion
conference, "deadlines for filing a written motion and an accelerated briefing schedule may be set
at the conclusion of the conference." *Id.* Alternatively, if the magistrate judge denies leave to file
a motion for protective order, a movant may appeal the denial under Federal Rule 72(a).

The Government could have followed that process at any time. It did not. *See Travelers
Indem. Co. v. Trumpet, Inc.*, No. 8:19-cv-01036-PSG (JDEx), 2020 WL 5372108, at *8 (C.D. Cal.
May 8, 2020) (ordering production because a party failed to timely seek a protective order which
it could have done "at any time"). The Government contends it had not, as of the December 11,
2025 hearing, met and conferred with Defendants and thus could not move for a protective order.
(ECF No. 485 at 6–7). This proposition is false. The parties met and conferred on December 3,
2025 to discuss reinstating case deadlines and the Government chose not to raise the issue of a
protective order at that time. (*See* ECF No. 485 at 5–6).

On this record, there is no reason to deviate from Judge Nelson's sound disposition of the

Government's request. *See Todd v. Ocwen Loan Servicing, Inc.*, No. 219CV00085JMSDLP, 2020 WL 13883081, at *2 (S.D. Ind. Sept. 11, 2020) (noting the magistrate judge is "in the best position to gauge the extent to which discovery should be allowed and maintains extremely broad discretion to control the discovery.")

> E. *The continued production of classified documents is entirely proportional to the needs of litigation and is necessary for GD to shield itself against the Government's claim.*

The Government maintains that continuing to review and produce responsive classified documents provides little benefit because those materials purportedly "cannot be usefully incorporated" into a trial set for September 2026. (ECF No. 487 at 13). That framing is precisely backwards. A litigant that has failed for more than two years to meet its discovery obligations cannot invoke the consequences of its own delay as a reason to avoid compliance. Under the Government's theory, the closer a party gets to trial while still withholding responsive documents, the stronger its argument becomes that producing them is unnecessary. That result would upend the most basic principles of fair discovery. *See Pully v. I.R.S.*, 939 F. Supp. 429, 439 (E.D. Va. 1996) ("The Court will not allow the plaintiff to complain of alleged prejudice to his case when the plaintiff's own lack of diligence gave rise to the purported prejudice.") (internal parentheses omitted).

Both parties were fully aware of potential "burdens and logistical problems" that could result when they agreed to the July 2026 deadline for ending the declassification of documents. (ECF No. 487 at 15). The Government's own declarations contradict its belated attempt to backtrack now. (*See* ECF 484-2, MacLeod Decl. at ¶ 18) (noting that declassification process could be completed no earlier than March 30, 2026, with results being delivered to DOJ by the end of June).

16

*F.  Excusing the Government's discovery obligations would unduly harm GD.*

In determining whether to grant a protective order, a court must also consider "the relative hardship on the non-moving party should the protective order be granted." *General Dynamics Corp.* 481 F.2d at 1212. Surprisingly, the Government asserts that any prejudice to GD is "unclear." That is demonstrably incorrect. The United States is the plaintiff. It elected to sue GD over alleged contamination at a 17,000-acre site with eight decades of intertwined operations by multiple Government agencies and contractors. GD's involvement was much more limited and significant portions of the contamination at issue are attributable to Government activities.

The Government's failure to produce responsive documents deprives GD of the very evidence needed to test the Government's narrative and its experts' assumptions. When a party brings a $125 million suit and then refuses to produce the historical record in its possession that GD could use to defend itself, the prejudice is real and immediate, depriving GD of the information the Federal Rules of Civil Procedure entitle it to.

## II.    The Government's Motion for Stay should be denied and is another example of the Government's delay.

In addition to its objections to Judge Nelson's Orders, the Government also requests a stay of certain aspects of the declassification process while the court considers the Government's objections to Judge Nelson's decisions.

Pursuant to the Nebraska Civil Rules, "the filing of a statement of objections to a nondispositive order does not stay the magistrate judge's order pending resolution of the statement of objections." Neb. Civ. R. 72.2(c).  The party requesting the stay of discovery must "demonstrate good cause for the stay." *Buc-ee's Ltd. v. Bucks, Inc.*, No. 8:17CV287, 2018 WL 443320, at *4 (D. Neb. Jan. 16, 2018). Courts generally grant stays of discovery for "specific, somewhat unique, reasons." *TE Connectivity Networks, Inc. v. All Sys. Broadband, Inc.*, No. CIV. 13-1356

17

ADM/FLN, 2013 WL 4487505, at *2 (D. Minn. Aug. 20, 2013). "The decision granting or denying a stay 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Prism Techs., LLC v. United States Cellular Corp.*, No. 8:12CV125, 2015 WL 13215454, at *1 (D. Neb. Sept. 29, 2015) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

The Government requests a limited stay not for the actual declassification of documents, but merely for the "final steps" of the declassification process. This includes the "time consuming efforts to transmit declassified documents from classified systems to non-classified systems, complete rolling productions, and submit status reports during the pendency of the Objections." (ECF No. 489 at 8). In essence, the Government is not requesting that they be permitted to stop declassifying documents, only that they be permitted to stop giving those documents to Defendants and updating the Court on their efforts. This argument is at odds with one of the Government's own bases for objection. The Government argues that permitting the continued review of classified documents would "divert[] agency resources from their core functions." (ECF No. 487 at 11). But the Government is only seeking to stop work being done by its attorneys, not work done by the reviewers who are supposedly being distracted from their "core functions."

In light of the Government's track record of delay in the case, granting even a limited stay would not "maintain an even balance" but rather further prejudice GD. GD has been requesting the declassification of documents for years, and the Government was aware of those requests when it agreed to the discovery schedule. In addition to the numerous attempts described above where GD offered to assist the Government in the declassification process, Judge Nelson has expended significant time and resources on this issue. Both GD and the Court have been met with repeated delays and missed deadlines. As the Government argues that the declassification process is unduly burdensome, it is requesting even further delay in producing declassified documents to GD.

18

The Government contends that it should be afforded relief because of upcoming expert depositions and *Daubert* motions. (ECF No. 489 at 9). But this is a problem of the Government's own making. The Government has had years to review the classified documents but failed to take its production obligations seriously. If the Government was concerned with declassification overlapping with other litigation obligations, it should have acted with diligence to declassify and produce the documents at the outset of litigation. Instead, it waited years to seriously evaluate the declassification process and has burdened both the Court and GD with repeated delays, numerous status conferences, and now motion practice to halt declassification. As GD has repeatedly stated, its primary interest is that the set trial date should be preserved. *See, e.g.*, Ex. A (January 14, 2026 Court Hearing Tr.) at 12:22–13:2; Ex. B (December 11, 2025 Court Hearing Tr.) at 15:4–6. Affording additional delay in this case jeopardizes that date and continues to prejudice GD.

Judge Nelson already warned the Government in April 2025 that no additional extensions for declassification would be permitted, and that sanctions may result from further delay. Instead of heeding this admonition, the Government seeks to further delay discovery and thereby frustrate the Court's purpose of securing the "just, speedy, and inexpensive determination" of the action it initiated against GD. *See* Fed. R. Civ. P. 1.

**III.    The Government's Motion for Leave to Submit Evidence should be denied because Judge Nelson has consistently reviewed the Government's arguments regarding the burdens of declassification.**

The Government further seeks leave to submit three declarations in support of its objections. (*See* ECF No. 482). Generally, Local Rule 72.2 prohibits the introduction of new evidentiary materials when seeking to reverse a Magistrate Judge's decision on a nondispositive motion.  NECivR 72.2(b)(1) ("A party may not offer additional evidentiary materials without a court order.").  The Government contends that it has never been fully heard on the merits of its

request for a protective order because it has not had the opportunity to submit evidence in support of its arguments on burden and proportionality.

The Government's additional declarations are duplicative of the arguments it has been making for years. *See e.g.*, Ex. H (December 5, 2024 Status Conference Tr.) at 4:16–6:24; Ex. E (April 23, 2025 Status Conference Tr.) at 7:9–10:18; ECF No. 353 at 1–6. Judge Nelson has considered the burdens of declassification, held five status conferences in 2025 to weigh the issues, and given the Government repeated extensions to declassify and produce documents. The declarations are merely an attempt to distract from the ultimate issue: the Government failed to take the declassification process seriously. Instead of submitting evidence of the burden of declassification years ago, the Government waited until after discovery is nearly complete and a trial date has been set. The attempt to supplement the record at this late date should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's Objections (ECF No. 486) should be overruled, and Motion for Leave to Submit Evidence (ECF No. 482) and Motion to Stay (ECF No. 488) should be denied.

Dated: February 6, 2026

Respectfully Submitted,

GENERAL DYNAMICS CORPORATION,
Defendant,

**s/ Steven D. Davidson**
_____

Steven D. Davidson
Bar Number: 18684
Lindsay K. Lundholm
Bar Number: 22224
Brian Barmettler
Bar Number: 27017
Attorneys for Defendant General Dynamics

Corporation
BAIRD HOLM LLP
1700 Farnam Street, Suite 1500
Omaha, Nebraska 68102
Telephone: (402) 344-0500
Fax: (402) 344-0588
Email: sdavidson@bairdholm.com
Email: llundholm@bairdholm.com
Email: bbarmettler@bairdholm.com

Wade A. Thomson
Steven M. Siros
Sarah L. Futernick
*Pro hac vice*
Attorneys for Defendant General Dynamics
Corporation
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654
Telephone: (312) 840-8613
Fax: (312) 527-0484
Email: wthomson@jenner.com
Email: ssiros@jenner.com
Email: sfuternick@jenner.com

Matthew S. Hellman
*Pro hac vice*
Attorney for Defendant General Dynamics
Corporation
JENNER & BLOCK LLP
1099 New York Avenue, N.W., Suite 900
Washington, DC 20001
Telephone: (202) 639-6861
Fax: (202) 639-6066
Email: mhellman@jenner.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of February, 2026, I caused a copy of the foregoing to be sent via email to the following counsel of record:

Johanna Franzen - johanna.franzen@usdoj.gov
Mae Bowen - Mae.Bowen@usdoj.gov
Gabriela Campbell - Gabriela.Campbell@usdoj.gov
Mark Elmer - Mark.Elmer@usdoj.gov
David Gordon - David.Gordon@usdoj.gov
Vanessa Moore - vanessa.moore@usdoj.gov
Brandon A. Adkins - brandon.adkins@usdoj.gov
Christopher H. Mitchell - Christopher.mitchell@usdoj.gov
Nathaniel D. Boesch - nathaniel.boesch@usdoj.gov
Zachary Moor - zachary.moor@doj.gov
Ann L. Wright - Ann.L.Wright@usace.army.mil
Jared D. Bustamante - Jared.D.Bustamante@usace.army.mil
Jared Pessetto - Pessetto.Jared@epa.gov
Erin Davis - Erin.Davis@usdoj.gov
Catherine Chiccine - Chiccine.Catherine@epa.gov

Steven M. Siros - ssiros@jenner.com
Sarah L. Futernick - sfuternick@jenner.com
Wade A. Thomson - wthomson@jenner.com
Lindsay K. Lundholm - llundholm@bairdholm.com

John R. Worth - jworth@phillipslytle.com
Joel A. Blanchet - jblanchet@phillipslytle.com
Jaran R. Moten - jmoten@phillipslytle.com
Frank G. Dylewski - FDylewski@phillipslytle.com
Michael L. Moran - mmoran@mcgrathnorth.com

**s/ Steven D. Davidson**

## CERTIFICATE OF COMPLIANCE

The undersigned, pursuant to NE Civ. R. 7.1(d)(1)(D), hereby certifies that the foregoing brief complies with all requirements of subsection (d)(1). This certification relies on the word-count function of my word-processing software, Microsoft Office 365. The word-count function, which included all text, including the caption, headings, footnotes, and quotations, calculated that this brief contains 6,795 words.

/s/**Steven D. Davidson**