IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL DYNAMICS CORPORATION, and DOW CHEMICAL COMPANY,<br><br>Defendants. | 8:23CV416<br><br><br>**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO SUBMIT EVIDENCE IN SUPPORT OF OBJECTIONS; PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDERS; AND DEFENDANT DOW CHEMICAL COMPANY'S MOTION TO DISMISS FOR FAILURE TO MEET DISCOVERY OBLIGATIONS** |

This is a civil action by the United States pursuant to Sections 107(a) and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (CERCLA), 42 U.S.C. §§ 9607(a) and 9613(g)(2), to recover response costs incurred and to be incurred by the United States as a result of releases of hazardous substances at the Nebraska Ordnance Plant Superfund Site, located in Mead, Nebraska (the Site). Filing 1 at 1 (¶ 1). The Site was placed on the National Priorities List in August 1990, after soil and groundwater at the Site were determined to be contaminated with explosives and the organic solvent trichloroethylene (TCE). Filing 1 at 2 (¶ 5). Defendants are General Dynamics Corporation (GD) and Dow Chemical Company (Dow) who are each alleged to be a "person," within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21), who operated the Site at the time of disposal of hazardous substances there, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2). Filing 1 at 2 (¶ 4). This case is currently set for a bench trial expected to last several weeks beginning on September 21, 2026. Filing 453.

1

This case is now before the Court on three matters. The first matter is Plaintiff's Motion for Leave to Submit Evidence in Support of Its Objections to Magistrate Judge Nelson's Orders. Filing 482. The second matter is Plaintiff's Statement of Objections to two of Judge Nelson's Orders. Filing 486. The third matter is Dow's Motion to Dismiss for the Government's Failure to Meet Its Discovery Obligations. Filing 505. The Court concludes that it must also consider as a preliminary matter whether to continue the trial *sua sponte* because the current trial date is impracticable.

In summary, all the matters now before the Court arise from the inability or unwillingness of the United States to produce documents it was long ago required to produce on deadlines it has already missed. The United States makes numerous excuses as to why it cannot produce documents, blaming the 43-day government shutdown that happened five months ago, short staffing, budget problems, inability to declassify documents under any reasonable timeline relating to military activities that happened 60 to 80 years ago, negative impact on the producing entities' ultimate mission, along with a myriad of other excuses. Essentially, the United States has not been able to get the work done that any plaintiff is required to do if it is going to file a lawsuit in federal court.

The initial deadline for document production was December 23, 2024. This was continued several times, with the latest deadline on October 10, 2025. The government missed all these deadlines. In a status report filed December 5, 2025, the United States stated that the Department of Justice "estimates the final declassified document productions will not be completed until July 15, 2026." It has reiterated that estimate in subsequent status reports. However, now it appears that the United States is seeking to squirm out of that anticipated production date as well.

If this Court goes along with the United States' excuses and refusal or purported inability to follow court deadlines, the undersigned has little doubt that this case would be hanging around the undersigned's docket for five, ten, or fifteen years. The Court can assure the parties that this will not happen.

The top leadership of the producing entities now have a decision to make. Either they decide to provide the support needed to produce the documents required by the lawsuit the United States filed, or they decide to forgo a claim to recover cleanup costs in excess of $125,000,000. The Court orders the agencies involved to inform the appropriate chain of command in charge of deciding what resources to provide to this case—all the way to United States Cabinet level leadership—that this case is likely to be dismissed if the United States does not follow this Court's orders and produce the documents in question by July 15, 2026. The Court is ordering this because based upon its extensive review of this record, it is not convinced the ultimate decision makers with public facing positions who will be impacted if this alleged $125+ million case is dismissed know that this case is in danger of being thrown out because the United States cannot get its work done. As illustrated by the proceedings with Judge Nelson, this Court has already been exceedingly flexible with the United States' unwillingness or inability to follow this Court's orders.

## I.   INTRODUCTION

This factual background concerning the use and cleanup of the Site is drawn from Plaintiff's Complaint. Filing 1. In 1942, the United States War Department (now the Department of Defense) acquired agricultural lands to build the Nebraska Ordinance Plant (NOP), which became operational in 1943. Filing 1 at 2–3 (¶¶ 1–2, 9). The NOP was used for bomb assembly until 1945, then again from 1951 to 1956. Filing 1 at 2–3 (¶¶ 6–10). The NOP was reopened in 1959 to construct an Atlas Missile facility. Filing 1 at 3 (¶ 11).

3

GD and its subcontractors became involved to install launch facilities and launch support equipment between approximately June 1960 and March 1961 for three Atlas "D" series missiles to be deployed at the Site. Filing 1 at 4 (¶ 12). GD's involvement at that time allegedly involved the use and disposal of TCE "by and/or through the direction of General Dynamics and Dow [apparently as GD's subcontractor] in the process of cleaning various parts and structures at the facility." Filing 1 at 4 (¶ 13). After the missiles were fully operational in March 1961, GD turned the missile facility back over to the Air Force, but in July 1961, GD allegedly "re-engaged" at the Site for the purpose of implementing the Golden Ram Program, intended to upgrade and enhance the reliability of the missiles, and GD stayed involved until that project ended, apparently in early January 1962. Filing 1 at 4 (¶¶ 14–15). In March and April 1962, GD was again involved at the Site in the Dual Propellant Loading Program, and one of its subcontractors was Dow. Filing 1 at 4 (¶ 16, 18). As to Dow, the Complaint alleges further,

> 18.     Dow Industrial Services, a division of Dow Chemical Company, furnished facilities and equipment, including TCE, as well as personnel, necessary to perform cleaning operations for various parts and equipment at the Site. On information and belief, and subject to a reasonable opportunity for further investigation or discovery, Dow performed work at the Site between approximately April 1960 and April 1961, and again between sometime in 1962 and approximately February 1963.

Filing 1 at 4 (¶ 18). The Air Force removed the missiles from the Site in 1964, and parcels of the Site were quit-claimed to the University of Nebraska, which established an Agricultural Research and Development Center on the former NOP parcels. Filing 1 at 5 (¶ 19–20).

As mentioned above, Site investigations by the Army Corps of Engineers eventually revealed soil, sediment, surface water, and groundwater contamination by TNT and other explosive contaminants, and by TCE and other chlorinated solvents in the areas of the load lines, bomb booster assembly area, burning/proving grounds, the former administrative area, the landfill

4

area, and the area of the Atlas missile launch facilities. Filing 1 at 5 (¶ 22). Investigation and remediation actions began in 1992. Filing 1 at 5–6 (¶¶ 21–27).

Plaintiff estimates that as of September 30, 2022, as a result of its response actions, it had incurred at least $125 million in unreimbursed response costs in connection with Site remediation. Filing 1 at 8 (¶ 34). Plaintiff filed this action on September 22, 2023, "acting at the request of both the Administrator of the United States Environmental Protection Agency ('EPA') and the Commander of the United States Army Corps of Engineers ('Corps')," to recover response costs incurred and to be incurred by the United States as a result of releases of hazardous substances at the Site. Filing 1 at 1 (¶ 1).

According to Plaintiff, this litigation has already required it to respond to 265 document requests and 88 interrogatories, to produce over 300,000 unclassified documents, and to produce more than 17,000 pages of declassified documents to Defendants. Filing 487 at 3–4, 6.[1] The first deadline for completion of discovery was December 23, 2024, Filing 39, with deadlines for Plaintiff's completion of disclosures extended to March 10, 2025, Filing 223; to April 10, 2025, Filing 281; and finally to October 10, 2025, Filing 312. On October 1, 2025, shortly before Plaintiff's last deadline for production, a government shutdown began, and on October 3, 2025, the Court stayed all deadlines because of the lapse in appropriations. Filing 412. After the government reopened, the time left for Plaintiff to complete production would have expired on November 24, 2025. Filing 506 at 18–19. No new deadline for production of classified documents has been set, so full disclosure of classified documents is past due.

---

[1] Plaintiff asserts elsewhere that it has produced more than 5 million pages of unclassified documents. Filing 527 at 1.

In a text minute entry after a conference on November 20, 2025, Judge Nelson set a deadline of December 5, 2025, for the parties to meet, confer, and provide the Court with a proposed schedule for reinstatement of case progression deadlines. Filing 427. By email dated November 25, 2025, Judge Nelson's judicial assistant notified the parties that the undersigned had decided that the trial would start on September 21, 2026, for four consecutive weeks. The email also notified the parties, "You may incorporate the trial date into your proposed schedule for reinstatement of progression deadlines that is due on December 5, 2025."

In a status report filed December 5, 2025, Plaintiff stated that the Department of Justice "estimates the final declassified document productions will not be completed until July 15, 2026." Filing 436 at 2. Plaintiff then stated,

> Given that the documents will not be available to be used in a meaningful way at a September 21, 2026, trial, the burden of continuing declassification review efforts and associated productions is no longer proportional to the needs of the case (though the United States is currently continuing those efforts).

Filing 436 at 3.

On December 11, 2025, after a status conference, Judge Nelson made the following text minute entry at issue in Plaintiff's Objections:

> Plaintiff is ordered to continue production of all classified documents as previously ordered, and shall file a status report every forty-five (45) days from today's date regarding the status of such production with the first report being due on **January 26, 2026.** Defendants are given leave to file motions relating to Plaintiff's production of classified documents **after July 15, 2026**, if necessary. On or before **January 8, 2026**, the parties shall meet and confer regarding Plaintiff's classified document production efforts and related motions, and advise the Court of any agreements or otherwise request a telephone conference.

Filing 451 (emphasis in the original). Judge Nelson also extended the deadline to January 8, 2026, for any objections to the rulings in that conference. Filing 451. He later extended the deadline for those objections to January 23, 2026. Filing 463. On December 11, 2025, Judge Nelson also

entered a separate order setting this matter for a non-jury trial to begin on September 21, 2026.

Filing 453 at 1–2 (¶ 5).

On January 14, 2026, Judge Nelson held another status conference with the parties. Filing

470 (text minute entry). In a text minute entry for that conference that is also at issue in Plaintiff's

Objections, Judge Nelson stated,

> After additional argument and by the agreement of the parties, the Court reconsidered its previous ruling limiting Defendants to filing motions relating to Plaintiff's production of classified documents after July 15, 2026; Defendants are given leave to file motions related to Plaintiff's production of classified documents at Defendants' discretion. The remainder of the Court's rulings made on December 11, 2025, are unaltered, and the deadline for filing Objections under NECivR 72.2(a) remains January 23, 2026.

Filing 470.

Plaintiff's Objections and Motion for Leave to Submit Evidence followed on January 23,

2026, Filing 482; Filing 486, and Dow's Motion to Dismiss followed on February 5, 2026, Filing

505.

## II. LEGAL ANALYSIS

### A. Preliminary Matter

The matters before the Court suggest that this case presents a choice among three

unpalatable options, where the Plaintiff instituted this lengthy and expensive litigation: (1) forging

ahead with trial before Plaintiff completes its discovery obligations; (2) allowing Plaintiff to escape

further discovery obligations; or (3) dismissing this case because Plaintiff cannot meet its

discovery obligations. These choices are all unpalatable at this time because they would not serve

the interest of justice in resolving this complex case on its merits after a full and fair hearing.

After reviewing the record and consulting with Judge Nelson who has been shepherding

this case through the complex discovery and scheduling matters, it is clear to the Court that a trial

beginning on September 21, 2026, simply is not practicable. This is true even if Plaintiff succeeds

in completing disclosure of declassified materials by its estimated date of July 15, 2026. *See* Filing 436 at 2. That late date for completing disclosures would not allow the parties sufficient time to incorporate all disclosures into trial preparations. Moreover, numerous motions are already pending—and others are anticipated—that may be impacted by whether and when Plaintiff is able to complete production of declassified documents. The Court finds it untenable to excuse Plaintiff from further discovery obligations because Plaintiff misjudged the size and scope of discovery in a case that Plaintiff brought after more than three decades of remediation at the Site and litigation against other allegedly responsible parties. In the Court's view, it is untenable to dismiss Plaintiff's claims at this point, either.

The Court concludes that the better choice is a continuance of the trial date. "Motions for continuances are addressed to the sound discretion of the court and rulings upon such motions are reversible only upon showing abuse of discretion." *Temple v. Mercier*, 127 F.4th 709, 716 (8th Cir. 2025) (quoting *Lessmann v. Comm'r*, 327 F.2d 990, 996 (8th Cir. 1964)). Likewise, federal appellate courts have reviewed district courts' decisions on whether to continue a trial *sua sponte* for abuse of discretion. *See Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1316 (11th Cir. 2001) ("We do not believe the district court's failure to continue the trial *sua sponte* constitutes an abuse of discretion."); *see also Willis v. ITT Cont'l Baking Co.*, 822 F.2d 60 (6th Cir. 1987) (considering whether granting a continuance *sua sponte* might have been an abuse of discretion).

When a court is deciding in its discretion whether to continue a trial *sua sponte* a key question appears to be the extent to which a party's right to present its case would be prejudiced by the lack of a continuance. *See Bearchild v. Cobban*, 947 F.3d 1130, 1139 (9th Cir. 2020) ("[T]he focus of our prejudice inquiry is the extent to which the aggrieved party's right to present his [case] has been affected by the failure to continue the trial *sua sponte*." (internal quotation marks and

citations omitted)); *Hixson v. French*, 517 F. App'x 767, 770 (11th Cir. 2013) (considering whether the failure to continue trial *sua sponte* resulted in a miscarriage of justice). Here, the Court concludes that it would be prejudicial to the parties to compel them to go to trial in September 2026 given the lateness of the government's production.

The problems with timely completion of disclosures and the potential prejudice to the parties from going to trial before disclosures are complete are best and most justly alleviated by continuing the trial. Indeed, Dow asserts that if its Motion to Dismiss is not granted, "then the currently scheduled trial must effectively be postponed indefinitely to ensure that Dow is not forced to forgo its fundamental discovery rights." Filing 506 at 40. Similarly, GD argues that Plaintiff's own papers establish, at a minimum, that the current trial date and associated pre-trial deadlines must be "vacated" pending completion of Plaintiff's disclosures. Filing 515 at 4. Plaintiff likewise asserts that "the most obvious alternatives" to dismissal or other resolutions of discovery issues is to "reset the trial date." Filing 533 at 2. Having suggested a continuance, the parties cannot be heard to complain that the Court's decision to continue the trial *sua sponte* is prejudicial or an abuse of discretion.

However, the Court rejects Dow's suggestion that the continuance should be "indefinite." The Court's schedule does not reasonably provide many opportunities to schedule a bench trial of the anticipated duration and complexity while maintaining the timely disposition of other cases. The logistics involved in scheduling such a trial are substantial for both the parties and the Court, so that a specific trial date is preferable. Also, an undue delay before trial is unacceptable to the Court and the parties. Under the circumstances, the Court *sua sponte* continues the trial to a date in early 2027 to be determined by separate order. The Court refers to Judge Nelson the

determination, after consultation with the parties, of the appropriate date for a trial to begin in early 2027 and the setting of appropriate remaining deadlines.

The Court will now address the three matters presented by the parties in the context of a trial that has been continued from September 21, 2026, to early 2027.

### B. Plaintiff's Motion for Leave to Submit Evidence

The first matter now before the Court is Plaintiff's Motion for Leave to Submit Evidence in Support of Its Objections to Magistrate Judge Nelson's Orders. Filing 482. The Objections in question were filed the same day. Filing 486.

#### 1. The Parties' Arguments

Plaintiff asserts that its Motion is "to ensure that it is fully heard on the merits of its request for a protective order to halt the process of reviewing and producing declassified documents." Filing 485 at 1. Thus, Plaintiff seeks an order under Civil Rule 72.2(b)(1) of the United States District Court for the District of Nebraska allowing Plaintiff to submit evidence to ensure that the Court can consider both the legal and factual arguments underlying Plaintiff's Objections to Judge Nelson's Orders. Filing 485 at 1. More specifically, Plaintiff seeks leave to submit three declarations from declassifying offices "detailing the rigors and burdens" of the review process and showing that the burdens cannot be alleviated given the importance of the process to ensure national security. Filing 485 at 2. Plaintiff asserts that it "raised" the proportionality and burdensomeness issues of continued discovery of classified materials in conferences with Judge Nelson, but that it was not permitted to move for a protective order or to provide evidence of specifics of the declassification process. Filing 485 at 3.

GD responds that the Court should deny leave to submit evidence because Judge Nelson has consistently considered Plaintiff's arguments regarding the burdens of declassification. Filing 513 at 19. GD argues that, contrary to Plaintiff's contentions, its declarations are duplicative of the

10

arguments that Plaintiff has been making for years and that Judge Nelson has considered in at least five status conferences in 2025 and 2026. Filing 513 at 20. Dow's Consolidated Response to Plaintiff's Motion for Leave to Submit Evidence and Objections states no specific opposition to Plaintiff's submission of such evidence. Filing 515 *passim*. Nor does its Brief in Support of its Motion to Dismiss. Filing 506; *see also* Filing 515 (incorporating by reference its Motion to Dismiss and accompanying papers).

In reply, Plaintiff contends that Defendants offer "scant" arguments in opposition to submission of the evidence in question. Filing 523 at 2. Plaintiff also asserts that the evidence it offers is not merely "duplicative" of its arguments because that assertion ignores its years of good faith effort to review and declassify documents and the proportionality issue. Filing 523 at 3.

   2. *Leave to Submit Evidence Is Granted to Ensure a Full and Fair Hearing on the Objections*

The Court's local rule on objections to a magistrate judge's rulings provides in part that as to nondispositive rulings, "A party may not offer additional evidentiary materials [in support of objections] without a court order." NECivR 72.2(b)(1). Although no specific standard is stated, the Court believes that some showing of good cause is required and that the Court's determination is a matter of discretion. Assuming for the sake of argument that Plaintiff states good cause by asserting that additional evidence is necessary to a full and fair hearing on its Objections, the Court will grant Plaintiff's Motion for Leave to Submit Evidence. The Court has considered the additional evidence submitted by Plaintiff to the extent that the Court finds appropriate in ruling on Plaintiff's Objections. Plaintiff's Motion for Leave to Submit Evidence in Support of Its Objections to Magistrate Judge Nelson's Orders, Filing 482, is granted.[2]

---

[2] Although the Court believes it is procedurally appropriate to allow additional evidence, the Court is highly doubtful the evidence provided will provide an excuse for the Government's inability or unwillingness to produce

11

### C.  Plaintiff's Objections to Judge Nelson's Rulings

*1.  The Rulings and the Objections*

The second matter now before the Court is Plaintiff's Statement of Objections to Magistrate Judge Nelson's Orders. Filing 486. Plaintiff objects to the part of Judge Nelson's ruling during a conference on December 11, 2025, and set out in the text minutes, ordering Plaintiff to continue production of all classified documents. Plaintiff also objects to the part of Judge Nelson's ruling during a conference on January 14, 2026, also set out in the text minutes, maintaining Judge Nelson's previous rulings related to the review, declassification, and production process, without granting leave to Plaintiff to move for a protective order and submit supporting legal argument and factual evidence. The pertinent parts of the text minutes from the conferences are set out in Filing 451 and Filing 470 and quoted above on pages 6 and 7.

> Plaintiff states,
>
> Together, the Orders: a) obligated the United States to continue reviewing a subset of classified documents and producing to Defendants those documents, or portions thereof, that can be declassified until at least July 15, 2026, and to provide status reports at 45 day intervals; and b) precluded the United States from filing a motion for a protective order and submitting legal argument and factual evidence in support thereof.

Filing 487 at 1. Plaintiff objects to continued declassification review and production because it is not proportional to the needs of this litigation and imposes undue burdens. Filing 487 at 1. Plaintiff also objects to foreclosure of its opportunity to seek a protective order and to submit argument and factual evidence in support. Filing 487 at 1–2. Plaintiff seeks the following relief:

> [W]e respectfully ask the Court to sustain the Objections and halt any further declassification review and production, holding the United States' discovery obligations fulfilled as it relates to that discrete universe of documents. In the alternative, we ask that if the United States is required to continue its good faith efforts to declassify and produce documents, including rolling productions, that its

documents. The United States should operate pursuant to the understanding that its hard deadline of July 15, 2026, to get these documents produced will be enforced.

discovery obligations be deemed fulfilled on July 15, 2026, regardless of whether
every document identified by agency counsel as responsive has been declassified
and produced.

Filing 487 at 2.

### 2. The Parties' Arguments

Plaintiff argues that while a magistrate judge's rulings on nondispositive matters are usually afforded deference and will be overturned only if they are clearly erroneous or contrary to law, review here should be *de novo*. Filing 487 at 6–7. Plaintiff asserts this is so, because there is no opinion or factual record to review, which is what prompts its Motion for Leave to Submit Evidence. Filing 487 at 7. Plaintiff then argues that relevance is not the only limitation on discovery; burdensomeness and proportionality are also concerns under Federal Rule of Civil Procedure 26. Filing 487 at 7–8.

As to more specific grounds for objection, Plaintiff argues that ongoing declassification review places an undue burden on Plaintiff because it requires enormous outlay of resources that diverts agency personnel from their core missions. Filing 487 at 9. Plaintiff asserts that some of the reviewing agencies cannot "scale up" to address the issue because of hiring freezes, lack of expertise, and the impact of the government shutdown. Filing 487 at 11. Plaintiff admits that "it is in this position because of its incomplete understanding of the declassification process at the outset of the litigation," but that such a circumstance is recognized in the advisory committee note to the 2015 amendments to Federal Rule of Civil Procedure 26. Filing 487 at 12–13. Plaintiff argues further that ongoing production is disproportionate to the needs of the litigation "because the documents will be produced too late to be incorporated into motions practice before trial." Filing 487 at 13 (emphasis removed). Plaintiff contends that this problem is exacerbated by the case team's inability to guarantee that the documents will be produced by July 15, 2026. Filing 487 at

14. Finally, Plaintiff argues that potential mitigating measures present their own burdens and logistical problems. Filing 487 at 15.

GD responds that Plaintiff's Objections follow years of delays in producing responsive documents with no mention of a protective order until two years into the disclosure process. Filing 513 at 1, 7. GD argues that Judge Nelson's considerable efforts to deal with the classified documents problems should merit deference in the Court's review of his rulings. Filing 513 at 1–2, 7–10. GD also disputes Plaintiff's current contention that it was not aware when it initiated this lawsuit of the burdens of the declassification process because Plaintiff's own historian expert informed Plaintiff of the existence and relevance of classified documents as early as 2019. Filing 513 at 2. GD contends that the problem here is Plaintiff's failure to take the disclosure process seriously. Filing 513 at 10–11. GD contends that the government is not entitled to any special leeway in civil litigation, particularly litigation that it started. Filing 513 at 12–14. GD also argues that Plaintiff could have moved for a protective order at any time, even if it was pursuing informal discovery dispute procedures. Filing 513 at 15. Next, GD argues that the production of classified documents is proportional to the needs of the case because it is necessary for GD to shield itself against Plaintiff's claims and that excusing Plaintiff from its discovery obligations would unduly harm GD's defense. Filing 513 at 16–17. GD argues that Plaintiff's failure to produce responsive documents deprives GD of the evidence it needs to test Plaintiff's narrative and its experts' assumptions. Filing 513 at 17. GD asserts that a party should not be allowed to bring a $125 million suit, then refuse to produce the historical record in its possession that would allow the opposing party to defend itself. Filing 513 at 17.

Much like GD, Dow argues that Plaintiff's request in its Objections "would effectively allow the Government to usurp this Court's authority and trample Dow's rights by forcing it to

14

trial on an incomplete record." Filing 515 at 5. Dow also argues that because Plaintiff chose to file this lawsuit, "it must bear the consequences of its own decision." Filing 515 at 4.

Plaintiff's reply asserts that Defendants have not identified any example of prejudice or proportionality in light of the huge amounts of documents produced and the tiny percentage of those documents that were declassified pages. Filing 527 at 1. Plaintiff also asserts that it has continued the declassification process to reduce any prejudice to Defendants and that it has been "transparent" about its inability to guarantee production within the deadlines. Filing 527 at 1–2.

3. *The Applicable Standard of Review*

Both 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a) provide for reconsideration of a magistrate judge's ruling on a pretrial, nondispositive matter only if it is "clearly erroneous" or "contrary to law." In contrast, review of a magistrate judge's recommendation on a dispositive matter is *de novo*. *See* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b)(3); *accord Gonzales-Perez v. Harper*, 241 F.3d 633, 636 (8th Cir. 2001) ("When a party timely objects to a magistrate judge's report and recommendation, the district court is required to make a de novo review of the record related to the objections. . . .").

Nevertheless, in support of its contention that Judge Nelson's rulings at issue should be reviewed *de novo*, Plaintiff cites *E.E.O.C. v. Peters' Bakery*, 301 F.R.D. 482, 485–86 (N.D. Cal. 2014). That decision says only that when a magistrate judge rules on a nondispositive pretrial matter, "[t]he magistrate[ judge's] legal conclusions are reviewed *de novo* to determine whether they are contrary to law." *Peters' Bakery*, 301 F.R.D. at 484. The Court can discern no difference between reconsideration of a magistrate judge's decision to determine if it is "contrary to law" and reviewing such a ruling *de novo* to determine whether it is "contrary to law." The *Peter's Bakery* decision later states where an "underlying order provides no discussion of the rationale for ordering disclosure of records," the court may review a motion to quash *de novo* as to those records. *Id.* at

15

486. Similarly, in another case Plaintiff cites, the court concluded that it would review *de novo* a ruling on a motion for change of venue because "the magistrate judge has ruled without any discussion of his rationale." *Hirsch v. Zavaras*, 920 F. Supp. 148, 150 (D. Colo. 1996). Judge Nelson set out his rationale for his rulings on the record, so the "clearly erroneous or contrary to law" standard applies. However, even if the Court were to review the rulings *de novo* in light of Plaintiff's additional evidence, the Court would affirm Judge Nelson's rulings.

### 4.  Plaintiff's Objections Are Overruled

The Court overrules Plaintiff's objections to Judge Nelson's purported failure to allow Plaintiff to move for a protective order and present evidence to support such a motion. That objection is essentially moot in light of the Court's decision above in § II.B.2. to grant Plaintiff's Motion for Leave to Submit Evidence in Support of Its Objections to Magistrate Judge Nelson's Orders. The Court has reviewed the evidence submitted and agrees with Plaintiff that the declarations demonstrate the scope and difficulties of the process for reviewing and declassifying documents. Thus, Plaintiff has now had the opportunity to present all the evidence it believes is necessary to support relief from its discovery obligations.

However, the Court also overrules Plaintiff's objections to Judge Nelson's order to continue disclosures because Plaintiff believes continued disclosures are burdensome and disproportionate to the needs of the case. Discovery requires consideration of "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Discovery also must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Court acknowledges that the advisory committee comments to the 2015 amendments to Federal Rule of Civil Procedure 26 include the observation, "The parties may begin discovery without a full appreciation of the factors that bear on proportionality." Fed. R. Civ. P. 26, advisory committee notes to 2015 amendments. The comments also include a second sentence quoted by Plaintiff: "A

16

party requesting discovery, for example, may have little information about the burden or expense of responding." *Id.*; Filing 487 at 13. However, Plaintiff leaves out the next sentence of the comments: "A party requested to provide discovery may have little information about the importance of the discovery in resolving the issues as understood by the requesting party." *Id.* The comments also state that the court's responsibility is to consider all pertinent factors "in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

In this case, the "party requested to provide discovery" of classified information is Plaintiff, but Plaintiff cannot plausibly claim that it was unaware of classified documents or the importance of discovery of those documents to Defendants. *Id.* For example, in 2019, the team that was investigating pertinent records prior to the filing of this lawsuit identified classified records related to the Atlas Missile project and notified the Department of Justice of the presence of those documents. Filing 514 at 100 (Brigham Aff., 51:8–14). Where the Complaint in part relates to Defendants' involvement in that missile program, the importance of the documents to Defendants should have been apparent. Filing 1 at 4 (¶¶ 12–13). Plaintiff should have been equally aware of the likelihood of substantial numbers of classified documents from other projects involving Defendants over the span of time that the NOP was operational and from Plaintiff's prior litigation over cleanup of the Site against other allegedly responsible parties.

The minutes of the discovery conferences (and in the case of the December 11, 2025, and January 14, 2026, conferences, the transcripts, Filing 457; Filing 480) make clear that Plaintiff understood and made Judge Nelson aware of the scope of the documents requested and the complexity of the process to review, declassify, and produce them—as now confirmed by the declarations Plaintiff has been granted leave to submit. The transcripts and minutes also show that Judge Nelson carefully considered Plaintiff's counsel's representations about those difficulties

17

with discovery and Defendants' need for the documents in reaching his case-specific determination that continued disclosures were required. Fed. R. Civ. P. 26, advisory committee notes to 2015 amendments. Judge Nelson's determinations were neither clearly erroneous nor contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Indeed, the Court would not overturn them if it reviewed them *de novo*.

As to burdensomeness more generally, the Court is unconvinced by Plaintiff's arguments that the documents so far declassified have not produced any startling new revelations and that the classified documents at issue are a tiny fraction of the documents produced. It would be unjust to allow a party to avoid producing discovery that party knew would be necessary in a case that party brought just because that party now finds it miscalculated the value of the lawsuit compared to its burdens to get a favorable verdict—at least in this case, where over $100 million and the reputation of defendant businesses are at issue.

Plaintiff's primary argument that the discovery is disproportionate is premised on a trial beginning on September 21, 2026. Filing 487 at 13 (arguing that ongoing production is disproportionate to the needs of the litigation "because the documents will be produced too late to be incorporated into motions practice before trial." (emphasis removed)). However, this disproportionality argument is essentially moot in light of the Court's continuance of the trial date to early 2027. Where Plaintiff estimated that it could complete disclosures by July 15, 2026, when the trial was set for September 21, 2026, the continuance of the trial date to early 2027 has dissipated the purported disproportionality problem. The parties should now be able to complete discovery as well as fairly litigate pre-trial matters and prepare for trial by incorporating all disclosures.

Plaintiff's objection to Judge Nelson's failure to order an end to disclosures or to declare Plaintiff's duty to disclose has been fulfilled on July 15, 2026, are overruled. Indeed, the Court now imposes a deadline of July 15, 2026, for completion of disclosures of declassified documents with continued obligations to supplement such disclosures thereafter. July 15, 2026, is the date that Plaintiff has estimated it could complete such disclosures; that estimate is now a hard deadline. Although Plaintiff complains of lack of personnel and resources to complete timely disclosures, Plaintiff can now take comfort in the fact that a federal judge has ordered it to comply with a specific deadline to complete disclosures in a case that Plaintiff brought in the first place. There are some federal judges who would allow this kind of litigation to drag on for a decade or more. As noted above, this judge is not one of them. All parties should be working efficiently and expeditiously toward a trial in early 2027 for final resolution of this litigation.

In short, Plaintiff's Objections to Magistrate Judge Nelson's Orders, Filing 486, are overruled, and Judge Nelson's challenged rulings are affirmed.

### D. Dow's Motion to Dismiss

The last matter now before the Court is Dow's Motion to Dismiss for the Government's Failure to Meet Its Discovery Obligations. Filing 505. Although Dow's arguments in its brief are extensive, Filing 506, the Court concludes that the pertinent arguments can be summarized comparatively briefly.

#### 1. The Parties' Arguments

Dow seeks dismissal of Plaintiff's claims because Plaintiff has failed to meet its basic discovery obligations despite repeated Court orders. Filing 506 at 2. Dow points out that those discovery issues arise from Plaintiff's choice to sue and that Plaintiff's discovery obligations necessarily include producing responsive documents within Plaintiff's possession, custody, or control, including records that must be declassified before production. Filing 506 at 2. Dow asserts

that the obligation and Plaintiff's noncompliance are both undisputed. Under these circumstances, Dow argues that "[t]he Court must either (1) dismiss [Plaintiff's] complaint; (2) vacate the September 2026 trial date and reopen discovery so Dow can obtain and use the withheld documents before trial; or (3) trample Dow's rights by forcing Dow to litigate and try this case on an incomplete record—without access to the documents [Plaintiff] alone possesses." Filing 506 at 2.

Dow outlines at length Plaintiff's failure to meet deadlines for disclosures and asserts that the failure is "willful." Filing 506 at 28. Dow also sets out why it believes the failure of disclosure is prejudicial. Filing 506 at 34. Dow argues,

> [E]xpecting Dow to prepare for and/or proceed to *trial* before *fact discovery* is complete, where the Government admits the parties and their experts would be prevented from reviewing and considering admittedly relevant documents and would instead try the case on an incomplete record, is beyond the pale.

Filing 506 at 34 (emphasis in the original). Although Dow argues that lesser sanctions than dismissal of Plaintiff's claims are inappropriate, Dow asserts that if its Motion to Dismiss is not granted, "then the currently scheduled trial must effectively be postponed indefinitely to ensure that Dow is not forced to forgo its fundamental discovery rights." Filing 506 at 40.

Plaintiff responds that Dow seeks the "extreme and unjustified sanction" of dismissal to obtain a premature determination of the outcome of this case as to Dow. Filing 533 at 1. Plaintiff asserts that it has pursued disclosures in good faith while attempting to protect national security interests and that Dow fails to show why now is the right time to impose a sanction. Filing 533 at 1. If some sanction is somehow appropriate, Plaintiff urges consideration of lesser sanctions, including allowing Plaintiff to stop disclosures as burdensome and disproportionate, which Plaintiff argues would moot Dow's Motion to Dismiss. Filing 533 at 2. If the Court does not grant Plaintiff such relief, Plaintiff argues that "the most obvious alternative" is to deny Dow's Motion, allow continued disclosure, reset the trial date, and then consider any issue of prejudice upon

20

completion of disclosures. Filing 533 at 2. Plaintiff also asserts that Dow's argument that Plaintiff should have anticipated Defendants' discovery requests years before they were filed is unsupported. Filing 533 at 3.

### 2. Dismissal As a Discovery Sanction Is Inappropriate at this Time

The Eighth Circuit has explained,

> The Federal Rules of Civil Procedure expressly authorize sanctions for failure to comply with a court's discovery order, including striking pleadings or dismissing an action in whole or in part. *See* Fed. R. Civ. P. 37(b)(2)(A)(iii), (v). We review Rule 37 sanctions for abuse of discretion. *See St. Louis Produce Mkt. v. Hughes, 735 F.3d 829, 832–33 (8th Cir. 2013).* As the district court recognized, dismissal is an extreme sanction that should be applied "only where there is an order compelling discovery, a willful violation of the order, and prejudice to the other party." *Hughes, 735 F.3d at 832; see Hairston v. Alert Safety Light Prods., Inc., 307 F.3d 717, 719– 20 (8th Cir. 2002).* "[B]efore dismissing a case under Rule 37(b)(2) the court must investigate whether a sanction less extreme than dismissal would suffice, unless the party's failure was deliberate or in bad faith." *Comstock v. UPS Ground Freight, Inc., 775 F.3d 990, 992 (8th Cir. 2014)* (quotation omitted).

*United States v. Eleven Million Seventy-One Thousand One Hundred & Eighty-Eight Dollars & Sixty-Four Cents ($11,071,188.64) in United States Currency*, 825 F.3d 365, 369 (8th Cir. 2016). Here, the Court agrees that Plaintiff has failed to complete disclosures of classified material by the deadlines that the Court imposed, despite extensions. Thus, Rule 37 sanctions including dismissal should be considered. *Id.*; Fed. R. Civ. P. 3(b)(2)(A)(iii), (v). However, dismissal is "an extreme sanction" that is not warranted in the circumstances of this case at this time. *Id.*

As the Court stated above, dismissing the case because Plaintiff has been unable to complete disclosure of declassified documents is undesirable where legitimate interests on both sides warrant a disposition of the case on the merits. As to the factors the Court considers when deciding to dismiss a case as a sanction, this Court believes that the failure to produce the documents in this case has been willful. The Court believes that the United States certainly has had the capacity to produce the documents it is required to produce, but the United States simply

has chosen not to assign the appropriate priority and staff to get the job done. However, the Court does not find the requisite prejudice required to dismiss this case now. The Court's decision to continue the trial to early 2027 relieves Dow of most or all of the prejudice that it claims is a result of Plaintiff's failure to complete disclosure. *Id.* This is so, in part because Plaintiff is now ordered to complete that disclosure by July 15, 2026, and thereafter to continue to supplement disclosures if more responsive classified materials are found. The prejudice is also abated by the continuance of the trial because the parties will now have the opportunity to prepare for and proceed to trial only after completion of fact discovery. *See* Filing 506 at 34.

The Court finds further that Dow's assertions of prejudice are not fully convincing where Dow insisted on maintaining the September 21, 2026, trial date despite Plaintiff's suggestions that it could not complete disclosures before July 15, 2026. It was Dow's insistence on maintaining the September 2026 trial date that created the unpalatable choices presented to the Court. Where the trial has been continued, both Dow's request for dismissal and the Court's consideration of lesser sanctions are now premature. *See $11,071,188.64 in United States Currency*, 825 F.3d at 369 (stating that "before dismissing a case under Rule 37(b)(2) the court must investigate whether a sanction less extreme than dismissal would suffice").

Although Dow's Motion to Dismiss is denied at this time, Plaintiff must bear in mind that failure to meet the Court's July 15, 2026, deadline to complete disclosure of declassified documents or producing an unusually large number of documents as purported "supplemental" discovery responses after the deadline would warrant a re-evaluation of whether and what sanctions should be imposed for discovery failings. The Court reiterates that Plaintiff knew that the problems at the Site existed at least by 1992. Plaintiff knew that pursuing litigation against allegedly responsible parties would involve production of classified documents at least by 2019,

and Plaintiff should have grasped that fact long before that from the use of the Site and the nature of the contamination of the Site. The Court reiterates that it is not willing to allow this case to remain unresolved for years after the case reasonably should have been tried.

Dow's Motion to Dismiss is denied as premature without prejudice to reassertion in appropriate circumstances.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that

1.      The Court *sua sponte* continues the trial currently set to begin on September 21, 2026, to a date in early 2027 to be determined by separate order. The Court refers to Judge Nelson the determination, after consultation with the parties, of the appropriate date for a trial to begin in early 2027 and the setting of appropriate remaining deadlines.

2.      Plaintiff's Motion for Leave to Submit Evidence in Support of Its Objections to Magistrate Judge Nelson's Orders, Filing 482, is granted.

3.      Plaintiff's Objections to Magistrate Judge Nelson's Orders, Filing 486, are overruled, and Judge Nelson's challenged rulings are affirmed. It is further ordered that the deadline for Plaintiff's completion of disclosures of declassified documents is July 15, 2026. Failure to meet this deadline will be considered cause to dismiss this lawsuit completely.

4.      The United States has continuing obligations to supplement such disclosures after the deadline expires pursuant to the Federal Rules of Civil Procedure.

5.      The Court orders the agencies and government entities involved to inform the appropriate chain of command or leadership in charge of deciding what resources to provide to this case that this case is likely to be dismissed if the United States does not follow this Court's orders and produce the documents in question by July 15, 2026.

6.    Dow's Motion to Dismiss for the Government's Failure to Meet Its Discovery Obligations, Filing 505, is denied as premature without prejudice to reassertion.

Dated this 29th day of April, 2026.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge

24