## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff and Counter-Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GENERAL DYNAMICS CORPORATION | ) | CIVIL ACTION NO. 8:23-CV-00416 |
| | ) | |
| and | ) | |
| | ) | |
| DOW CHEMICAL COMPANY, | ) | |
| | ) | |
| Defendants and Counterclaimants. | ) | |
| | ) | |

### JOINT STATUS REPORT

Plaintiff the United States of America ("Plaintiff" or "United States" or "Government") and Defendants General Dynamics Corporation ("GD") and The Dow Chemical Company ("Dow") (collectively, the "Parties") provide this jointly prepared status report regarding further progression of the above-captioned action, as required by the Text Minute Entry entered by the Court on May 7, 2026 (ECF No. 690). Specifically, the Court ordered the Parties to "meet and confer and provide the Court with jointly prepared status report with agreements and/or disagreements regarding further progression of the case incorporating the trial date, including deadlines regarding additional expert discovery, the reopened deposition, the motion to strike [ECF No.] 473, additional written discovery, and dispositive motion deadlines, including briefing as to the United States pending motion [ECF No.] 662 for partial summary judgment." *Id.* The Parties set forth below their respective statements on the relevant issues.

### Plaintiff United States' Statement:

The United States is committed to working with Defendants in good faith to facilitate follow-up discovery related to the limited set of declassified documents produced after February

24, 2025 (ECF No. 312), subject to its right to object to such follow-up discovery that is inconsistent with the Federal Rules of Civil Procedure, including the requirement that discovery be proportional. These recently declassified documents are a fraction of the discovery produced by the United States in this case and include only Air Force records (primarily from the Cold War period). Before February 24, 2025, the United States had produced millions of pages of unclassified documents; Defendants had deposed dozens of fact witnesses; and the United States had responded to over five hundred requests for admission, among other things.

Any follow-up case progression matters (e.g., amended or supplemental expert reports) must be limited to what is needed to address any declassified documents produced after February 24, 2025 (and follow-up discovery related thereto) in this case. And the United States reserves its rights to object as otherwise appropriate under the Federal Rules of Civil Procedure. Given the limited scope of the follow-up discovery, the United States expects that some of the proposed deadlines may not be needed (e.g., motions to compel) and that, if needed, the additional matters to be addressed by each deadline will be appropriately limited.

The United States believes that the March 1, 2027 trial date is feasible, provided all parties abide by the limited scope of permissible follow-up discovery and work together to proceed efficiently. The United States made several proposals in the interest of efficiency during the meet and confer process to keep portions of the case that are unrelated to the recently produced, declassified documents moving forward, but Defendants declined to engage on those proposals. Specifically, we proposed an earlier timeline to complete any follow-up related to Dr. Brigham's supplemental report and to complete briefing on summary judgment issues unrelated to the recently declassified documents (e.g., costs) on an earlier time frame to allow the Court additional time to resolve those issues. The United States stands ready to provide a proposal along these lines for the Court's consideration if it would assist the Court.

2

During the meet and confer process Defendants raised allegations regarding prejudice and possible sanctions. The United States approached the meet and confer process with the goal of reaching agreement on a proposed schedule consistent with the March 1, 2027 trial date set by the Court. The United States did not believe it was necessary to relitigate issues raised in Defendants' prior briefing related to the declassified document productions and possible sanctions. *See, e.g.,* ECF No. 505 (The Dow Chemical Company's Motion to Dismiss for the Government's Failure to Meet its Discovery Obligations). The United States instead attempted to propose workable dates for all Parties and to respond to Defendants' questions to the best of its ability, while preserving its rights as appropriate given the hypothetical nature of certain questions (e.g., whether the United States would object to Defendants hypothetically reopening the United States' 30(b)(6) deposition for a third time following a hypothetical successful motion to compel). Accordingly, the United States does not address any arguments regarding prejudice here and refers back to its Opposition to Dow Chemical Company's Motion to Dismiss (ECF No. 533) and its Reply to General Dynamics Corporation's Response (ECF No. 613) and reserves the right to address any additional or renewed arguments regarding prejudice and possible sanctions in the future.[1]

Many of the United States' proposed dates align with the dates proposed by General Dynamics. That said, the United States' proposals diverge from General Dynamics' proposals (and Dow's) for several reasons explained below:

**Answers to Written Discovery.** Defendants have proposed a two-week abbreviated time period for the United States to respond to any follow-up written discovery. Under the Federal Rules

---

[1] Dow's statement, below, was first provided to the other parties at 4:40 p.m. central time (5:40 p.m. eastern time) on the deadline for submission to the Court and raises issues not directly related to proposed case progression matters, including numerous characterizations of the United States' conduct both in the negotiations regarding this proposed schedule and in the case overall. The United States again reserves its right to respond, if necessary.

of Civil Procedure, the United States would be afforded 30 days to respond. In the interest of compromise, the United States has proposed a deadline for responses to follow-up written discovery of 21 days, while reserving its rights to object to any follow-up discovery as otherwise inconsistent with the rules and/or to request a longer time period to respond depending on the volume and scope of written discovery served. The United States anticipates the compressed 21-day schedule will be workable here (subject to its reservation of rights), given that follow-up discovery is limited in scope (ECF No. 312) and Defendants have been serving additional follow-up written discovery on a rolling basis. The United States notes that a period shorter than 21 days would not allow for sufficient time to review and analyze any requests and coordinate with client agencies.

**Motions to Compel.** Defendants have proposed a motion to compel deadline related to follow-up written discovery. The United States does not oppose the Court imposing such a deadline, but notes that such a deadline may not be necessary given the limited scope of follow-up discovery. Dow has also sought the United States' agreement not to object to reopening depositions and further amendments to expert reports in the event of a successful motion to compel. The United States believes this is a hypothetical situation that is unlikely to occur, given that the scope of follow-up discovery permitted by ECF No. 312 is already limited. The primary motion to compel deadline passed on March 10, 2025 (ECF No. 228), so any motions to compel should only relate to the limited follow-up discovery permitted by ECF No. 312. The United States reserves its rights to oppose any motions to compel (if needed), including on proportionality and burden grounds, but would not object to a motion to compel *solely* on the grounds that the depositions have already been completed or where the motion to compel deadline falls in the new case progression order relative to the deposition deadline or the deadline to amend or supplement expert reports. Similarly, the United States reserves its rights to object to reopening depositions again or

4

further amending expert reports in the event of a successful motion to compel under the Federal Rules of Civil Procedure, including on proportionality and burden grounds, but does not dispute that Defendants may likewise reserve their rights to seek to reopen depositions or further amend expert reports to address any additional discovery ordered by the Court in response to a motion to compel. In other words, even if Defendants file a (currently hypothetical) motion to compel and prevail on such a motion, the compelled discovery may or may not warrant further discovery under the Federal Rules of Civil Procedure and the United States reserves its rights to object on other grounds, including that it is not proportional to the needs of the case or that it is unnecessarily duplicative.

*Daubert* **and Related Motions**. The United States requests that the Court order that no new or amended *Daubert* or related motions be filed without seeking leave of the Court. The Parties have fully briefed nine *Daubert* motions in accordance with ECF No. 453. Should any of the disclosed experts amend or supplement their reports in response to recently declassified documents, it seems unlikely that the amended or supplemental reports would provide new grounds for a *Daubert* challenge. Again, given the limited scope of follow-up discovery under ECF No. 312, the Parties should seek leave from the Court if they believe any additional *Daubert* briefing is appropriate, and if the Court finds good cause, the Court can set an appropriately narrow briefing schedule (for initial motions, responses, and replies) and an appropriate word limit for any such briefing. Similarly, if any Party is given leave to file such a motion, the other Parties should have the right to respond to any new arguments. It would be prejudicial to preclude any Party from responding to new or supplemental motions or new arguments.

**Summary Judgment Briefing.** The United States is seeking four weeks for its combined responsive summary judgment briefing, to include both its oppositions to Defendants' summary judgment briefs and its replies in support of its motion for partial summary judgment. This is one

week less than would be provided under the local rules' default schedule, which allows three weeks for summary judgment oppositions (Neb. Civ. R. 56.1(b)(3)) and two weeks for replies (Neb. Civ. R. 56.1(c)). This is particularly appropriate in this case because Defendants have declined to agree to consolidate any of their summary judgment opening briefs and/or oppositions. Further, the United States' opening brief has been on file since April 3, 2026 (ECF No. 672), and Defendants will have had months to prepare their responses. Moreover, pending the Court's decision regarding additional *Daubert* briefing, the United States also may have to respond to further *Daubert* motions during the same abbreviated period as its summary judgment oppositions and replies.

**Defendant General Dynamics' Statement:**

Defendant GD's priority, consistent with its previous positions, is to proceed to trial as quickly as possible.  Accordingly, GD opposes any attempt to change the trial date now reset for March 1, 2027.  GD proposes a schedule generally consistent with the pacing of prior case progression orders and with the Court's anticipated timeframe as discussed during the May 7, 2026 conference.  For example, GD proposes a deadline of September 25, 2026 to re-start summary judgment briefing, consistent with Judge Nelson's suggestion that such briefing will need to be completed in September.  (May 7, 2026 Telephone Conference Tr. at 19:25-20:2 ("the likely result is at least any initial briefing on dispositive motions is going to need to be done by the middle of September.").)  Similarly, GD proposes a deadline of October 30, 2026 for all summary judgment briefing, including responses and replies, which is 17 weeks before the March 1, 2027 trial date (as compared with 16 weeks under the previous schedule, see ECF No. 453).  The typical holiday periods in November and December make this amount of time for the Court to consider the summary judgment briefing not only consistent with the previous schedule but critical.

In an effort to be comprehensive, and to include deadlines contemplated by ECF No. 690, GD included interim deadlines that may not ultimately be necessary.  In advance of filing this joint

6

status report, GD conveyed to the other Parties that it would be very flexible on all interim deadlines so long as summary judgment briefing is finished by the end of October, which provides a timeline consistent with previous schedules for the Court to fully consider the Parties' respective motions in advance of trial.

To be clear, GD maintains that the United States' belated production of classified documents, which caused the delay in schedule, is prejudicial to GD. Accordingly, GD continues to believe the United States should be held accountable in some form of sanctions. Notwithstanding the prejudice caused by the United States' discovery shortcomings, and consistent with GD's prior positions, GD is willing to take whatever steps are necessary to meet its proposed deadlines and maintain the March 1, 2027 trial date.

Finally, GD notes its specific objections to two of the Government's proposals: First, the Government seeks to give itself one extra week beyond the previously contemplated briefing schedule for its reply in support of its opening summary judgment motion and responses to Defendants' motions. The Government has provided no valid justification or good cause to support its proposed extension of time for summary judgment briefing, and both GD and Dow oppose this proposal. For example, the Government claims it is owed extra time "because Defendants have declined to agree to consolidate any of their summary judgment" briefs, but Defendants are separate parties and have no obligation to consolidate their arguments. Nor were consolidated briefs contemplated when the previous schedule (with a shorter briefing timeframe) was set. Further, the Government should not be rewarded with extra briefing time as a result of its discovery failures that have already prejudiced GD, particularly when Defendants are already being forced to compress the case schedule in light of the Government's deficiencies. In contrast,

GD's proposed timeframe follows the same cadence as the prior summary judgment briefing schedule.

Second, the Government proposes that the Parties must seek leave from the Court to file a motion to exclude testimony for follow-up discovery. GD objects to inserting another, unnecessary step into the already compressed schedule that may result in further delays. To the extent the Government takes issue with any potential motions to exclude follow-up expert discovery, the Government can address those concerns in its response.

**Defendant Dow's Statement:**

The defendants and the Court have been put in an unenviable and disorderly situation due exclusively to the Government's willful discovery misconduct. ECF No. 689 at 21 ("[T]his Court believes that the failure to produce the documents in this case has been willful."). Nevertheless, the Government has misrepresented the materiality of its extremely tardy document production and the impact of its lateness, and has attempted to frustrate the defendants' attempts to seek follow-up discovery to which they are entitled.[2] Notwithstanding clear messages from the Court concerning the gravity of the Government's discovery misconduct and the defendants' rights to obtain follow-up discovery that goes to the heart of liability issues—unlike millions of pages of

---

2   For example, the Government unreasonably protracted the meet-and-confer process concerning the re-opening of its 30(b)(6) deposition for nearly a month (despite having repeatedly agreed that Dow was entitled to seek such follow-up discovery as reflected in several Court orders). In doing so, it raised vague and specious objections such as the lack of living witnesses with personal knowledge of belatedly produced documents (a phenomenon that permeates all liability discovery in this case in light of the fact that relevant documents concern events that occurred up to 85 years ago), and Dow was forced to raise the issue with the Court simply to obtain resolution as to whether the Court's repeated orders allowing for re-opened depositions *actually* afforded Dow the opportunity to re-open the Government's deposition. *See* ECF No. 690, May 7, 2026 Minute Entry ("As stated on the record during the call, Dow Chemical's request to reopen the United States' 30(b0(6) deposition to address declassified documents produced after February 24, 2025, is granted."). Notably, notwithstanding yet another clear directive from the Court, the Government continues to signal that it intends to avoid its supplemental discovery obligations by previewing arguments it intends to make related to "proportionality" and other spurious grounds.

remediation and cost documents produced, the declassified documents are contemporaneous to events allegedly giving rise to the contamination at issue and are particularly probative—the Government has continued to minimize the prophylactic and curative actions on which Dow must now spend substantial resources to ameliorate the prejudice caused by the Government's conduct of its prosecution of this case. This extends to the Government's view of further case progression in this matter, as it appears clear that the Government has pre-determined that Dow should be afforded only the most minimal discovery and due process rights based on the Government's continued disregard of the impacts of its discovery failures.

Against this backdrop, Dow has engaged in good faith discussions with all parties concerning case progression, and as explained during such efforts to meet and confer, the schedules proposed by the other parties compound the prejudice that Dow has already suffered in a rush to trial.[3] Meanwhile, Dow provided the parties with an illustrative schedule providing enough time to actually complete the tasks that still must be completed prior to trial, on a non-prejudicial timeline, which ultimately resulted in dispositive briefing being completed by February 10, 2027. During this meet-and-confer process, it became clear that a non-prejudicial case progression schedule is unlikely to be consistent with a March 1, 2027, trial date.

Nevertheless, in compliance with the Court's order, the schedule Dow has provided below represents its best attempt to put forth pre-trial deadlines "incorporating the trial date" pursuant to the Court's Order (ECF No. 690) combined with the Court's email of May 8, 2026, indicating that it will order trial to begin on March 1, 2027. It is Dow's position, however, that this schedule compounds the prejudice to Dow resulting from the Government's tardy productions, including

---

[3] Dow notes that the parties are each uniquely situated, and while Dow has no desire to unnecessarily delay resolution of this dispute, the other parties' insistence on a rush to trial is difficult to square with the fact that this case was pending pursuant to a tolling agreement for approximately 21 years before the Government filed suit. *See* ECF No. 508-12, Tolling Agreement at 1.

by requiring compressed timeframes for almost all deadlines compared to previous schedules and reasonable expectations. For example, the Court's March 5, 2024, Case Progression Order (ECF No. 39) provided approximately ten months between the close of written discovery and the completion of dispositive briefing. Similarly, the Court's December 12, 2024, Amended Case Progression Order provided approximately nine months between the completion of the Government's belated declassified document production, specifically, and the completion of dispositive briefing.

By contrast, the schedule Dow provides herein would have the parties complete dispositive briefing only five months after the Government completes its document production. It does so by reducing Dow's time to complete critical pre-trial tasks, all made necessary at this juncture due to the Government's discovery failures—and all of which further prejudices Dow.  Ironically, the Government has complained about  truncated deadlines for itself (*e.g.*, balking at a two-week turnaround for written discovery responses), while insisting that Dow be forced to defend itself on an unreasonably rapid schedule (*e.g.*, proposing only one week between the end of re-opened fact depositions and amended expert disclosures, and only two weeks between opening and rebuttal expert reports), and then further insisting that the Government be provided with ***more*** time than standard to file its summary judgment briefs.  The unfairness of the Government's proposals to ameliorate the chaos caused by ***its*** willful discovery failures is striking.[4]

This schedule also precariously includes certain deadlines that immediately become unworkable if certain events occur. For example, both the March 5, 2024, and December 12, 2024,

---

[4] It is also worth noting that the Government continues to advocate for a prejudicial schedule requiring Dow to discretely respond to the portions of the Government's motion for summary judgment related to DOJ and EPA costs early, all while it is unclear whether the Government will fail to meet its hard July 15, 2026, deadline resulting in the case being dismissed in its entirety, and despite the fact that the Court noted it "probably frowns upon breaking things up on dispositive motion practice[.]" May 7, 2026 Hr'g Tr. at 23:7-10.  Dow continues to oppose this request.

Case Progression Orders included deposition and expert deadlines *after* deadlines for motions to compel, which resembled a standard litigation schedule that permitted compelled discovery to be used in depositions and by experts. But, to set a deadline for motions to compel sufficiently in advance of depositions and then follow-on expert work in this schedule would extend the remaining deadlines such that dispositive briefing would not be completed until sometime in 2027. Thus, the motion to compel deadline comes after the fact deposition deadline on the assumption that Dow will be permitted to reopen depositions to account for any compelled discovery, which would also jeopardize the remaining schedule. Similarly, the schedule contains no deadline for responsive *Daubert* briefs, which assumes that the Government will not file any supplemental, amended, or additional *Daubert* motions to which Dow would need to respond, and that the Government will not file any responses to amended or supplemental *Daubert* motions Dow may file. Dow notes that the Court acknowledged that pending motions—like *Daubert* motions—"may be impacted" by the Government's ongoing production. ECF 689 at 8. To incorporate responsive *Daubert* briefing would in turn require the dispositive briefing schedule to be extended, as the *Daubert* briefing will likely inform Dow's dispositive briefing and should be completed beforehand, again pushing dispositive briefing into 2027.[5] In addition to these issues, the schedule assumes that no unknown but potentially disruptive events (like those that have occurred throughout this litigation) will occur that could further jeopardize its feasibility.[6]

---

[5] Notably, the Court's most recent briefing schedule specifically avoided overlap between *Daubert* and dispositive briefing. *See* ECF No. 453.

[6] Consistent with the Government's theme attempting to belittle the prejudice caused by its willful discovery failures, the Government also seeks to frustrate Dow's ability to amend or supplement its already-filed *Daubert* briefing in response to new evidence and/or amended or supplemental reports by the Government's experts by introducing unnecessary friction into the process (*i.e.*, requiring Dow first to "seek leave" to amend its briefing). When frankly asked what standard for "good cause" the Government believed would apply, the Government could articulate no position. When questioned further as to what scenarios the Government could envision where new, relevant evidence bearing on an expert's opinion was produced and/or a Government expert

Further, the Government unreasonably dismisses the importance that motions to compel are likely to play in the schedule, based apparently on the assumption that such motion practice will simply never come to fruition. But as noted above, the Government's conduct during discussions among the parties and before the Court has made clear that it is highly unlikely that the Government will comply with its obligations to permit Dow to fully avail itself to its rights to have questions concerning the Government's declassified documents answered under oath absent motion practice.[7] Further, Dow notified the Government on May 15, 2026, that it had already identified over 100 document production deficiencies based on review of the declassified documents produced to date. The Government has not confirmed its willingness to produce such documents, making it likely that Dow will eventually be before the Court with a motion to compel addressing those deficiencies as well. Accordingly, the Government's repeated characterization of upcoming motions to compel as hypothetical and unlikely are not grounded in reality.

At bottom, the other parties' scheduling proposals are unworkable and prejudicial for many reasons, including that they variously provide (1) only two days after the written discovery deadline for fact depositions to be completed, (2) only one week after fact depositions to complete expert disclosures, (3) only one week after expert rebuttal reports to complete expert depositions, (4) only one week after expert depositions to file amended or supplemental *Daubert* motions, (5) a requirement for "leave from the Court" to file Daubert motions (the resolution of which would

---

provided new or amended opinions, but the Government's amorphous "good cause" standard would *not* be met, the Government again could not answer the question. Dow opposes this request.

[7] For example, Dow has been asking specific questions of the Government for over a month and a half, such as whether the Government would object to questions (and instruct witnesses not to answer) related to prior inconsistent statements from its previous 30(b)(6) representatives that may contradict testimony about belatedly produced declassified documents. Despite innumerable written communications, several live discussions, and even a conference with the Court, the Government continues to refuse to answer Dow's questions while "reserving" its rights to object. Dow believes it is highly unlikely that the Government will comply with its obligations absent motion practice and rulings from the Court—similar to what was necessary to address the Government's document production.

only *extend* subsequent dates), and (6) insufficient time after fact and expert discovery and resulting *Daubert* briefing for Dow to file its summary judgment briefs. The other parties' proposed schedules are apparently based on an unfounded assumption that Dow's briefing will be unimpacted by the follow-up fact and expert discovery, but Dow rejects that assumption and insists that it be given adequate time to prepare its dispositive briefing after all fact and expert discovery and any resulting *Daubert* briefing have been finalized.

As a defendant sued by the Government in federal court, Dow believes it is entitled to a reasonable case progression schedule. For example, during the meet-and-confer process, Dow made clear that it believed it should be entitled to a month between the Government's final production (if the production is completed in time to avoid dismissal, that is) and the re-opened 30(b)(6) deposition; at least three weeks for Dow and its experts to consider the Government's deposition prior to tendering amended or supplemental reports; and briefing of dispositive motions that does not overlap with fact discovery and *Daubert* briefing. Such time periods are not luxuries; they are the crucial threads of due process that permit defendants hauled into Court by the federal government to adequately defend themselves. Denying Dow that which is standardly provided to other federal defendants (and *was* provided to Dow under prior case progression schedules)[8] based purely on the Government's willful discovery failures would compound prejudice to Dow, reward the Government's malfeasance, and create perverse incentives for the Government.

Notwithstanding Dow's view that the schedules provided below are all prejudicial to Dow, Dow has participated in discussions with the other parties in good faith concerning additional case

---

[8] For example, Dow was originally entitled to nearly a month between completion of depositions and opening expert reports; approximately two months between opening expert reports and rebuttals; about a month and a half between sur-rebuttal expert reports and the deadline to complete expert depositions; and a month between completion of expert depositions and filing of opening *Daubert* briefs. ECF No. 228, Dec. 12, 2024 Case Progression Order at 2. None of the proposed schedules below remotely resemble the reasonable and orderly schedule under which this litigation previously operated.

progression scheduling in compliance with the Court's order to do so. Dow therefore respectfully requests that the Court hold a scheduling conference to discuss Dow's concerns, and in complying with the Court's order to propose a schedule consistent with a March 1, 2027 trial date, Dow emphasizes that it does not waive its right to formally seek a continuance of the trial date as necessary to cure the prejudice caused by a pre-trial schedule that leads to a March 1 trial.  Should the Court be amenable to such a conference, Dow seeks leave to provide an illustrative schedule that it believes mitigates some of the prejudice caused by the Government's discovery failures to facilitate a productive discussion.

Finally, Dow notes that no case progression schedule could fully cure the prejudice caused to Dow as a result of the Government's willful discovery failures.  Dow reserves the right to seek appropriate sanctions in the future,[9] in the event the Government's case is not dismissed for failure to comply with the Court's April 29, 2026 Order.

---

[9] Dow notes, for example, that it has sought costs incurred as the result of the Government's discovery failures, and it remains prepared to address its request for costs with the Court as soon as the Court deems appropriate.

**Proposed Case Progression Deadlines**

| Event | Prior Deadline | GD Proposal | US Proposal | Dow Proposal |
|---|---|---|---|---|
| Production of all declassified documents | Oct. 10, 2025 (Dkt. 312)[10] | July 15, 2026 (Dkt. 689) | July 15, 2026 (Dkt. 689) | July 15, 2026 |
| Service of follow-up written discovery[11] | N/A, but deadline for rest of written discovery was Nov. 22, 2024 (Dkt. 39) | July 29, 2026 | July 29, 2026 | July 29, 2026 |
| Answers to written discovery | N/A, but deadline for answers to written discovery for rest of case was Dec. 23, 2024 (Dkt. 39) | Aug. 12, 2026 | Aug. 19, 2026 (reserving rights) | Aug. 12, 2026 |
| Motions to compel follow-up written discovery | N/A, but deadline for rest of case was Mar. 10, 2025 (Dkt. 228) | Aug. 26, 2026 | [If necessary, by Sept. 2, 2026] | Sept. 2, 2026 [opening briefs]<br><br>Sept. 16, 2026 [responses][12]<br>Sept. 23, 2026 [replies][13] |
| Follow-up fact depositions (e.g., 30b6) | N/A, but deadline for rest of fact | Aug. 14, 2026 | Aug. 21, 2026 | Aug. 26, 2026 |

---

[10]  The October 10, 2025 deadline was stayed on Oct. 3, 2025 (Dkt. 412). On December 5, 2025, the U.S. noted in its Status Report (Dkt. 436) that reinstating a deadline to complete production of the declassified documents was inconsistent with the then-current September 21, 2025 trial date. In a December 11, 2025 conference, Judge Nelson ordered that the U.S. would not be relieved from its obligation to continue its efforts for the review and production of currently classified documents. The U.S. objected to the portions of Judge Nelson's order requiring continued review and production of currently classified documents, which Judge Buescher overruled on April 29, 2026 setting a deadline for production on July 15, 2026 (Dkt. 689).

[11]  Follow-up discovery may include discovery to address the scope of declassified documents produced after February 24, 2025, subject to Plaintiffs right to object to any follow-up discovery, including that such discovery or request for reopening a deposition is inconsistent with the Federal Rules of Civil Procedure or is not of a type contemplated by the Parties' agreement (*see* Dkt. 312).

[12]  Per Local Rule 7.1(b)(1)(B)

[13]  Per Local Rule 7.1(c)(1)

| Event | Prior Deadline | GD Proposal | US Proposal | Dow Proposal |
|---|---|---|---|---|
| | depositions was Mar. 31, 2025 (Dkt. 228) | | | |
| Follow-up expert disclosures (e.g., amended/ supplemental expert reports) (including any Rebuttal to Dr. Jay Brigham's December 23, 2025 Supplemental Report) | N/A, but deadline for all other expert disclosures was Sept. 5, 2025 (sur-rebuttal deadline as extended by Dkt. 350) | Aug. 28, 2026 | Aug. 28, 2026 | Sept. 11, 2026 |
| Rebuttals to amended/ supplemental expert reports | | [If necessary, by September 11] | [If necessary, by Sept. 11, 2026] | Sept. 25, 2026 |
| Follow-up expert depositions | N/A, but deadline for all other expert deps (except for extensions for Brigham and Wright) was Jan. 30, 2026, accounting for post-shutdown extension (Dkt. 453) | Sept. 18, 2026 | Sept. 25, 2026 | Oct. 9, 2026 |
| Motions to exclude testimony for follow-up expert discovery | N/A, but deadline for all other *Daubert* and related motions was Feb. 27, 2026 (Dkt. 453) | Sept. 25, 2026 | No motions to exclude testimony for follow-up expert discovery without leave from the Court | Oct. 23, 2026 |
| SJ: Govt. opening motion for summary judgment | Apr. 3, 2026 (Dkt. 453) | N/A, was filed on 4/3/26 | N/A, was filed on 4/3/26 | N/A, was filed on 4/3/26 |
| SJ: Defendants' cross motions and responses to the Govt.'s motion for partial SJ | Apr. 24, 2026 (Dkt. 453) | Sept. 25, 2026 | Oct. 2, 2026 | Nov. 13, 2026 |

| Event | Prior Deadline | GD Proposal | US Proposal | Dow Proposal |
|---|---|---|---|---|
| SJ: Govt. reply in support of its opening motion and responses to Defendants' motions | May 15, 2026 (Dkt. 453) | Oct. 16, 2026 | Oct. 30, 2026 | Dec. 8, 2026 |
| SJ: Defendants' reply | May 29, 2026 (Dkt. 453) | **Oct. 30, 2026** | Nov. 13, 2026 | Dec. 22, 2026 |
| Final pre-trial conference | Aug. 17, 2026 (Dkt. 453) | At the Cout's discretion, but GD requests Jan. 25, 26, 27, or Feb. 2, 3, or 4 | Approx. 1 month before trial start date (to be set by the Court) | Court's Discretion |
| Trial start date | Sept. 21, 2026 (Dkt. 453) | March 1, 2027 (5/8/26 email from J. Knapp) | March 1, 2027 (5/8/26 email from J. Knapp) | *Dow's position is that this compressed schedule to achieve a March 1 trial compounds the prejudice to Dow caused by the Govt.'s late document production.* |

Dated this 22nd day of May, 2026.

|  | Respectfully submitted, |
|---|---|

**Counsel for Plaintiff United States:**

/s/ Johanna M. Franzen

JOHANNA M. FRANZEN
MN Bar # 0392191
VANESSA MOORE
DAVID L. GORDON
MAE C. BOWEN
U.S. Department of Justice
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044
(202) 598-3319 (Franzen)
Johanna.Franzen@usdoj.gov
Vanessa.Moore@usdoj.gov
David.L.Gordon@usdoj.gov
Mae.Bowen@usdoj.gov

MARK C. ELMER
U.S. Department of Justice
Environmental Enforcement Section
999 18th Street, North Terrace, Suite 600
Denver, CO 80210
(303) 519-4954 (PHONE)
(303) 844-1350 (FAX)
Mark.Elmer@usdoj.gov (EMAIL)

**Counsel for Defendant General Dynamics:**

/s/ Steven D. Davidson

Steven D. Davidson
Bar Number: 18684
Lindsay K. Lundholm
Bar Number: 22224
Brian Barmettler
Bar Number: 27017
BAIRD HOLM LLP
1700 Farnam Street, Suite 1500
Omaha, Nebraska 68102
Telephone: (402) 344-0500
Fax: (402) 344-0588
Email:  sdavidson@bairdholm.com
Email:  llundholm@bairdholm.com
Email:  bbarmettler@bairdholm.com

Wade A. Thomson
Steve M. Siros
Sarah L. Futernick
*Pro hac vice*
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654
Telephone: (312) 840-8613
Fax: (312) 527-0484
Email:  wthomson@jenner.com
Email:  ssiros@jenner.com
Email:  sfuternick@jenner.com

Matthew S. Hellman
*Pro hac vice*
JENNER & BLOCK LLP
1099 New York Avenue, N.W., Suite 900
Washington, DC 20001
Telephone: (202) 639-6861
Fax: (202) 639-6066
Email:  mhellman@jenner.com

Attorneys for Defendant General Dynamics
Corporation

**Counsel for Defendant Dow:**

*/s/ Frank G. Dylewski*
JOHN R. WORTH (pro hac vice)
JARAN R. MOTEN (pro hac vice)
FRANK G. DYLEWSKI (pro hac vice)
Phillips Lytle LLP
35 W.  Wacker Drive, 34th Floor
Chicago, Illinois 60601
Telephone No. (312) 794-7300
jworth@phillipslytle.com
jmoten@phillipslytle.com
fdylewski@phillipslytle.com

JOEL A. BLANCHET (pro hac vice)
Phillips Lytle LLP
One Canalside
125 Main Street
Buffalo, New York 14203
Telephone No. (716) 847-8400
jblanchet@phillipslytle.com
jamar-dolan@phillipslytle.com

MICHAEL L. MORAN (#24042)
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Telephone No. (402) 341-3070
mmoran@mcgrathnorth.com

Counsel for The Dow Chemical Company

19

**CERTIFICATE OF SERVICE**

I hereby certify that on this twenty-second day of May, 2026, I caused a copy of the

foregoing to be sent via email to the following counsel of record:

Johanna Franzen - johanna.franzen@usdoj.gov
Mae Bowen - Mae.Bowen@usdoj.gov
Mark Elmer - Mark.Elmer@usdoj.gov
David L. Gordon - David.L.Gordon@usdoj.gov
Vanessa Moore - vanessa.moore@usdoj.gov
Brandon A. Adkins - brandon.adkins@usdoj.gov
Christopher H. Mitchell - Christopher.mitchell@usdoj.gov
Andrene Dabaghi – andrene.dabaghi@usdoj.gov
Laura Smythe – laura.smythe@usdoj.gov
Zachary Moor - zachary.moor@doj.gov
Ann L. Wright - Ann.L.Wright@usace.army.mil
Jared D. Bustamante - Jared.D.Bustamante@usace.army.mil
Jared Pessetto - Pessetto.Jared@epa.gov
Catherine Chiccine - Chiccine.Catherine@epa.gov

Steven M. Siros - ssiros@jenner.com
Sarah L. Futernick - sfuternick@jenner.com
Wade A. Thomson - wthomson@jenner.com
Lindsay K. Lundholm - llundholm@bairdholm.com

John R. Worth - jworth@phillipslytle.com
Joel A. Blanchet - jblanchet@phillipslytle.com
Jaran R. Moten - jmoten@phillipslytle.com
Frank G. Dylewski - FDylewski@phillipslytle.com
Michael L. Moran - mmoran@mcgrathnorth.com

*/s/ Vanessa M. Moore*