**U.S. Department of Justice**
Environment and Natural Resources Division

Hon. Michael D. Nelson
U.S. District Court, District of Nebraska
111 South 18th Plaza, Ste. 2210
Omaha, NE 68102

Re: *United States v. General Dynamics Corp.*, No. 8:23-cv-00416
United States' Position Statement Regarding Interrogatory Dispute

The United States asks the Court to enforce the Order and Stipulation Regarding Discovery Procedure regarding the number of interrogatories Dow may serve. Discovery Order ¶ 42, ECF No. 41. In 2024, Dow served three sets of interrogatories that exceed the seventy-five interrogatories that are permitted under the Discovery Order. To move forward with the discovery process, the United States answered all Dow's interrogatories. Now, without seeking leave, Dow served more interrogatories in a fourth set. Ex. A. The Court should confirm that the United States need not answer the fourth set.

The Federal Rules generally allow a party to serve up to twenty-five interrogatories, "including all discrete subparts," on any other party. Fed. R. Civ. P. 33(a)(1). Counting interrogatories with discrete subparts is often a source of dispute. After all, a party's numbering of interrogatories does not control. *See Prochaska & Assocs. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 155 F.R.D. 189, 191 (D. Neb. 1993). Rather, an interrogatory that "require[s] discrete pieces of information [is] counted as if the sub-parts were specifically itemized." *Id.* The local civil rules that were effective when discovery commenced provide further instruction:

> In determining the number of interrogatories, including subquestions, each inquiry seeking a discrete item of information is counted as one interrogatory. For example, the following question is counted as 3 interrogatories: "Please state the name, address, and telephone number of any witness to the accident set forth in the complaint."

NECivR. 33.1(c) (effective Dec. 1, 2023); *Bd. of Regents of Univ. of Neb. v. BASF Corp.*, No. 04-3356, 2007 WL 1321723, at *1 (D. Neb. Apr. 2, 2007) (discussing local rule and explaining that a "'discrete' part is a part that seeks information not sought by another part").

Against this backdrop, the parties stipulated to exceed the number of interrogatories allowed by Rule 33. The parties agreed—and the Court endorsed as an Order—that each Defendant may serve up to seventy-five interrogatories, unless otherwise stipulated or ordered by the Court. Discovery Order ¶ 42.

Dow exceeded its seventy-five interrogatories in the first set it served on the United States. In July 2024, Dow served thirty numbered interrogatories that contained discrete subparts. Ex. B (United States' Amended Answers to Dow's First Set of Interrogatories dated November 15, 2024). For example, Interrogatory No. 2 asked for the identity of persons with information regarding steps taken to address certain contamination and the dates of such steps (two distinct inquiries). *See Duffie v. City of Lincoln*, No. 13-3169, 2014 WL 3509893, at *2 (D. Neb. July 14, 2014) (treating request for "a detailed description" of injuries and conditions and "the date those injuries and conditions occurred" as two questions). Interrogatory Nos. 11–14

asked about ordnance plants the United States "owned or operated," which are distinct categories of liability under CERCLA and thus separate inquiries. *See United States v. Bestfoods*, 524 U.S. 51, 65 (1998). Interrogatory No. 29 asked the United States to describe four categories of information for certain "individuals or entities," yielding a combined eight discrete subparts. *See Bd. of Regents of Univ. of Nebraska*, 2007 WL 1321723, at *1–2 (D. Neb. Apr. 2, 2007) (holding that interrogatory seeking identity of "individual or group" consisted of discrete subparts). Interrogatory No. 30 similarly asked to describe five categories of information for certain "individuals or entities," yielding ten discrete subparts. *See id.*

The United States identified the discrete subparts of each of Dow's compound interrogatories in the first set and reserved its right to seek a protective order if Dow propounded more interrogatories. Ex. C (September 16, 2024, DOJ letter to Dow); Ex. D (October 9, 2024, DOJ letter to Dow). Notwithstanding its objections, the United States answered each interrogatory. Ex. B.

In November 2024, Dow served a second and third set each with one numbered interrogatory. Ex. E (United States' Answers to Dow's Second Set of Interrogatories dated December 4, 2024); Ex. F (United States' Amended Answers to Dow's Third Set of Interrogatories dated January 17, 2025). They, too, consisted of several subparts. Interrogatory No. 31 sought at least five discrete pieces of information, and Interrogatory No. 32 sought at least three. Again, in the interest of moving forward with the case, the United States answered all Dow's interrogatories notwithstanding its objections.

Unfortunately, Dow is abusing the United States' willingness to move forward notwithstanding Dow's excessive interrogatories. In its fourth set, Dow served another eighteen numbered interrogatories, some of which again consist of separate subparts. Because Dow exceeded the number of interrogatories permitted under the Discovery Order, the Court should relieve the United States from answering the pending fourth set.[1]

To be sure, Local Rule 33.1 was amended to allow subparts that are "logically or factually subsumed within and necessarily related to the primary question" to count as one interrogatory. NECivR. 33.1(d)(1) (effective Dec. 1, 2025). But the recent amendment is immaterial. Dow exceeded its limit before the amendment. *See Venable v. Equifax Credit Info. Servs.*, No. 92-0477, 1994 WL 268264, at *2 (E.D. Pa. June 13, 1994) (declining to apply amended rule that took effect after service of requests). And the parties stipulated to the interrogatory limit in the backdrop of rules in effect at that time. Applying the amended rule to the Discovery Order would effectively rewrite the parties' agreement and the Court's Order.

That the Court permitted Defendants to request follow-up discovery related to declassified documents produced after February 24, 2025, was not license for Dow to exceed the limits of the Discovery Order altogether. ECF No. 312. Dow exceeded its interrogatory limit long before the Court's Order on follow-up discovery. And Dow served its first three sets with full awareness that document production was not complete. Nor has Dow sought leave to serve more interrogatories. Dow should not be excused from the consequences of its litigation strategy.

[1] The interrogatories in Dow's fourth set also suffer from other defects. The United States served specific objections and, if the Court declines to relieve the United States of its obligation to answer, the United States intends to confer further with Dow over the objections and seek Court intervention as necessary.

Dated: July 13, 2026

Respectfully submitted,

*s/ Brandon N. Adkins*
BRANDON N. ADKINS (D.C. Bar No. 1010947)
Senior Trial Counsel
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 598-9562
Email: Brandon.Adkins@usdoj.gov

*Counsel for Plaintiff the United States of America*

cc: counsel of record

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff and Counter-Defendant,<br><br>v.<br><br>GENERAL DYNAMICS CORPORATION<br><br>and<br><br>DOW CHEMICAL COMPANY,<br><br>Defendants and Counterclaimants. | CIVIL ACTION NO.: 8:23-CV-00416 |

**THE DOW CHEMICAL COMPANY'S FOURTH SET OF INTERROGATORIES TO THE UNITED STATES OF AMERICA**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Local Rule 33.1 of the District of Nebraska, and the Court's order permitting follow-up discovery on classified documents produced after February 24, 2025 (ECF No. 228 at ¶ 6), The Dow Chemical Company ("Dow") propounds the following Fourth Set of Interrogatories to the United States of America ("Plaintiff," "United States," or "You") and requests that the United States provide written answers to them in accordance with Rule 33 of the Federal Rules of Civil Procedure within 30 days of service hereof.

**INSTRUCTIONS**

A. Unless otherwise specified, each Interrogatory herein relates to, covers, and requests information for the period of 1955 through 1965.

B. These Interrogatories shall be deemed to be continuing so as to require supplementation if necessary to maintain the accuracy and completeness of Your answers. If at any time after compliance with these Interrogatories You should acquire possession, custody, or control

of any additional information within the scope of the Interrogatory, You are required to promptly furnish such information to Dow's attorneys in a supplemental response.

C. These Interrogatories are propounded separately and should be answered separately.

D. Whenever appropriate in these Interrogatories, the singular and plural forms of words shall be interpreted interchangeably so as to bring within the scope of these Interrogatories any matter that might otherwise be construed to be outside their scope.

E. "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories any information that might otherwise be construed as outside their scope.

F. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

G. The past tense of a verb shall include the present and the present tense shall include the past.

H. "Identify," when used in reference to an individual Person, means to state his or her full name, address or last known address, telephone number, and his or her present employment position and business affiliation. When used in reference to a Person other than an individual, the term "identify" means to state whether such Person is a corporation, partnership, or other organization and its name, present or last known address, the principal place of business, and the names of the officers, directors, and registered agent for service of process. Once any Person has been identified properly, it shall be sufficient thereafter when identifying the same Person to state the name only.

I. "Identify," when used in reference to a request for facts or information, shall mean to state the facts and information that support or otherwise relate to the request and to identify a Person or Persons with knowledge of the facts that support or otherwise relate to the facts or information requested.

J. "Identify," when used in reference to a Document, shall mean to state (a) the type of Document; (b) the date, if any, on the Document; (c) the author(s) or sender(s) of the Document; (d) the addressee(s) or recipient(s) of the Document; (e) the subject matter of the Document, including any attachments; and (f) the Person(s) having custody or control over the Document.

K. "Describe" shall mean to exhaust all information, knowledge, or belief with respect to the subject matter of the Interrogatory.

L. "Including" means "including, but not limited to"; "includes" means "includes, but is not limited to."

M. "Relating to" or "related to" means anything which, directly or indirectly, concerns, consists of, pertains to, reflects, evidences, describes, sets forth, constitutes, contains, shows, underlies, supports, refers to in any way, is or was used in the preparation of, is appended to, is legally, logically or factually connected with, proves, disproves, or tends to prove or disprove.

## INTERROGATORIES

### INTERROGATORY NO. 33

Define the phrase "all activities" as used in the Government's response to Dow's Request for Admission No. 66 stating, "The United States denies that the Government was assigned responsibility, authority, and control for ***all activities*** associated with the Air Force Ballistic Missile programs, such as activities undertaken pursuant to contracts or subcontracts." (May 22, 2026, Gov't Resp. to Dow RFA No. 66) (emphasis added).

**INTERROGATORY NO. 34**

Identify all "activities" for which the Government did not have "authority, responsibility, and control" as used in the Government's response to Dow's Request for Admission No. 66 stating, "The United States denies that the Government was assigned responsibility, authority, and control for ***all activities*** associated with the Air Force Ballistic Missile programs, such as activities undertaken pursuant to contracts or subcontracts." (May 22, 2026, Gov't Resp. to Dow RFA No. 66) (emphasis added).

**INTERROGATORY NO. 35**

Identify the factual basis and supporting evidence for the Government's response to Dow's Request for Admission No. 66, stating that "Air Force commanders, the Air Force Ballistic Missile Division (AFBMD), and the Air Force Ballistic Missile Center (BMC) had non-exclusive roles with certain management responsibilities relating to the Air Force Ballistic Missile programs," including without limitation the factual basis for the assertion that the Government entities identified had "non-exclusive" roles. (*See* May 22, 2026, Gov't Resp. to Dow RFA No. 66).

**INTERROGATORY NO. 36**

Describe why the "[p]olicies and procedures" for "control over Government property" were "not satisfactory for property control at the missile sites," as described in USAF0177176 at USAF0177537.

**INTERROGATORY NO. 37**

Describe the Government's responsibility for the "management control of all depot level maintenance, both contractor and USAF performed," as described in USAF0175990 at USAF0176084.

**INTERROGATORY NO. 38**

Identify all Dual Propellant Loading exercises conducted by the Government between January 1, 1963, and December 31, 1965, at NOP, including the dates of such exercises.

**INTERROGATORY NO. 39**

Describe the process of the removal of "[a]ll liquids and gases" from Warren Air Force Base during phase-out of the Atlas missiles, including, but not limited to, the Government's role and responsibility in the removal of "[a]ll liquids and gases." (*See* USAF0165524 at USAF0165535).

**INTERROGATORY NO. 40**

Describe how "liquids and gasses" were disposed of at Warren Air Force Base during phase-out of the Atlas missiles in accordance with "instructions from MAAM." (*See* USAF0165524 at USAF01565604).

**INTERROGATORY NO. 41**

Identify all "liquids and gasses" that were disposed of at Warren Air Force Base during phase-out of the Atlas missiles in accordance with "instructions from MAAM." (*See* USAF0165524 at USAF01565604).

**INTERROGATORY NO. 42**

Describe the "transport and/or storage requirements for salvaged liquids and gases" during the phase-out of the Atlas missiles at missiles sites associated with Offutt Air Force Base, including NOP. (*See* USAF0166663 at USAF0167214).

**INTERROGATORY NO. 43**

Identify all "salvaged and liquid gases" that were transported and/or stored during the phase-out of the Atlas missiles at missiles sites associated with Offutt Air Force Base, including NOP. (*See* USAF0166663 at USAF0167214).

**INTERROGATORY NO. 44**

Describe the how the "Site Maintenance teams" "assist[ed] in removal of liquids and gases" during the phase-out of the Atlas missiles at missiles sites associated with Offutt Air Force Base, including NOP. (*See* USAF0166663 at USAF0167235).

**INTERROGATORY NO. 45**

Identify all "liquids and gases" that the "Site Maintenance teams" "assist[ed] in the removal of" during the phase-out of the Atlas missiles at missiles sites associated with Offutt Air Force Base, including NOP. (*See* USAF0166663 at USAF0167235).

**INTERROGATORY NO. 46**

Describe how the "Mobile maintenance teams" "assist[ed] in removal of liquids and gases" during the phase-out of the Atlas missiles at missiles sites associated with Offutt Air Force Base, including NOP. (*See* USAF0166663 at USAF0167236).

**INTERROGATORY NO. 47**

Identify all "liquids and gases" that the "Mobile maintenance teams" "assist[ed] in the removal of" during the phase-out of the Atlas missiles at missiles sites associated with Offutt Air Force Base, including NOP. (*See* USAF0166663 at USAF0167235).

**INTERROGATORY NO. 48**

Describe how the Government disposed of TCE that remained in the "SSU" during the phase-out of the Atlas missiles at missiles sites associated with Offutt Air Force Base, including NOP. (*See* USAF0166663 at USAF0167252).

**INTERROGATORY NO. 49**

Identify the factual basis and supporting evidence for the Government's response to Dow's Request for Admission No. 68 stating that the Air Force Ballistic Missile Division and the Ballistic Missile Center had "non-exclusive" responsibility at the operational sites. (*See* May 22, 2026, Gov't Resp. to Dow RFA No. 68).

**INTERROGATORY NO. 50**

Identify the factual basis for the Government's response to Dow's Request for Admission No. 71 stating that the "Field Offices" had "non-exclusive 'technical direction and control over the installation and checkout of operational equipment and facilities.'" (*See* May 22, 2026, Gov't Resp. to Dow RFA No. 71).

Dated: May 29, 2026

*/s/ Frank G. Dylewski*
JOHN R. WORTH (pro hac vice)
JARAN R. MOTEN (pro hac vice)
FRANK G. DYLEWSKI (pro hac vice)
Phillips Lytle LLP
35 W. Wacker Drive, 34th Floor
Chicago, Illinois 60601
Telephone No. (312) 794-7300
jworth@phillipslytle.com
jmoten@phillipslytle.com
fdylewski@phillipslytle.com

JOEL A. BLANCHET (pro hac vice)
Phillips Lytle LLP
One Canalside
125 Main Street
Buffalo, New York 14203
Telephone No. (716) 847-8400
jblanchet@phillipslytle.com

MICHAEL L. MORAN (#24042)
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Telephone No. (402) 341-3070
mmoran@mcgrathnorth.com

***Counsel for The Dow Chemical Company***

**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: May 29, 2026

PHILLIPS LYTLE LLP

*/s/ John R. Worth*

John R. Worth (pro hac vice)
35 W. Wacker, 34th Floor
Chicago, IL 60601
(312) 794-7300
Jworth@phillipslytle.com

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff and Counter-Defendant,<br><br>v.<br><br>GENERAL DYNAMICS CORPORATION<br><br>and<br><br>DOW CHEMICAL COMPANY,<br><br>Defendants and Counterclaimants. | CIVIL ACTION NO. 8:23-cv-00416 |

**UNITED STATES' AMENDED ANSWERS TO DOW CHEMICAL COMPANY'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Local Rule 33.1 of the District of Nebraska, and the Protective Order and Discovery Order entered in this action (ECF Nos. 32, 41), the United States of America amends its answers the Dow Chemical Company's First Set of Interrogatories ("Interrogatories"). The United States' Amended Answers represent the United States' current state of knowledge based on investigation and trial preparation to date, and the United States reserves the right to amend and/or supplement these Amended Answers as appropriate to reflect different or additional responsive information that may be obtained during this litigation, or if there are changes in the relevance, significance, or applicability of the information now known.

The United States does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of its responses into evidence in this or any other action or proceedings. Further, the United States provides these Amended Answers, as well as its objections

herein, without implying that it considers the Interrogatories to be relevant or material to the subject matter of this action.

**GENERAL OBJECTION**

The United States objects to the instructions and definitions in the Interrogatories to the extent that they seek to impose obligations that exceed the requirements of the Federal Rules of Civil Procedure; the Local Rules of this Court, specifically NECivR 33.1(b) and 33.1(c); and the orders entered in this case. The United States will respond to the Interrogatories consistent with the requirements of those rules and orders and with relevant caselaw.

**SPECIFIC OBJECTIONS**

The United States objects to Instruction A, which states that, unless otherwise specified, each Interrogatory relates to, covers, and requests information for the period of 1941 through the present. This instruction is overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks information covering more than 80 years, most of which is not relevant to the events at issue in this case.

The United States objects to Instruction H, which defines "Identify" when used in reference to an individual Person to request the Person's full name, address or last known address, telephone number, present employment position, and business affiliation. This instruction requests multiple pieces of information that are properly the subject of discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c).

The United States objects to Instruction I, which defines "Identify" when used in reference to a request for facts or information to request the facts and information themselves that support or otherwise relate to the Interrogatory, and information, as defined in Instruction H, about Persons with knowledge of the facts that support or otherwise relate to the facts or information

requested. This instruction is overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information already sought by the Interrogatories themselves. Specifically, the instruction requests both (1) facts and information, and (2) persons with knowledge about those facts and information, when these requests are properly the subject of discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c).

In addition to the foregoing, the United States objects to the Instructions to the extent that the Instructions request information that is properly the subject of a discrete interrogatory pursuant to NECivR 33.1(b) and 33.1(c), which mandate that interrogatory subparts be set forth as separate interrogatories.

**INCORPORATION**

Each of the foregoing objections, whether listed as a General Objection or as a Specific Objection to Instructions, is incorporated into each Amended Answer provided, as if fully set forth herein. The inclusion of a specific objection to a specific Interrogatory is neither intended as, nor should be construed as, a limitation or waiver of any other objection made in these Amended Answers. Subject to the United States' objections, the United States amends its answers as follows:

**RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

Identify every person who participated in preparing any part of a response on Plaintiff's behalf to these Interrogatories, including any person who provided information that was used to prepare a response or part thereof to these Interrogatories.

**ANSWER:**

The United States objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by the General Dynamics Corporation ("General Dynamics") and answered by

the United States, including, but not limited to, General Dynamics Interrogatory No. 3. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

- Matthew Ward, Chief of the Remediation Section of the Environmental Programs Branch. Mr. Ward is currently employed at the U.S. Army Corps of Engineers ("USACE") Kansas City District, located at 700 Bolling Federal Building, Kansas City, MO 64106-2896.

- Alissa Sutter, Project Manager, Former Nebraska Ordnance Plant Formerly Used Defense Sites ("FUDS"). Ms. Sutter is currently employed at the USACE Kansas City District, located at 700 Bolling Federal Building, Kansas City, MO 64106-2896.

- Wesley March, the U.S. Environmental Protection Agency ("EPA") Project Manager since April 2023. Mr. March is currently employed within the Remediation Branch of the Superfund & Emergency Management Division in EPA Region 7, located at 11201 Renner Road, Lenexa, KS 66219.

- Norma McCloud, EPA cost accountant currently assigned to the Former Nebraska Ordnance Plant site. Ms. McCloud is an accountant within the Resources and Financial Management Branch of the Mission Support Division in EPA Region 7, located at 11201 Renner Road, Lenexa, KS 66219.

**INTERROGATORY NO. 2:**

Describe, including by identifying all Persons with relevant knowledge or information, all steps You have taken to address (including by investigating, monitoring, removing, remediating, or mitigating) any contamination or threats of such contamination that You contend is or may be the basis for imposing liability on Dow in this lawsuit and the date(s) such steps were taken.

**ANSWER:**

The United States objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. The United States also objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory No. 4. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The approximately 17,000-acre Former Nebraska Ordnance Plant Site ("Site") near Mead, Nebraska, is a Formerly Used Defense Site ("FUDS") that was listed by the U.S. Environmental Protection Agency ("EPA") on the National Priorities List on August 30, 1990. In September

1991, the U.S. Army as the higher command for the U.S. Army Corps of Engineers ("USACE"), the EPA, and the Nebraska Department of Environmental Quality (now the Nebraska Department of Environment and Energy ("NDEE")) signed an Interagency Agreement ("IAG"), which became effective in January 1992. The IAG prescribes USACE's role as the lead Federal agency for cleaning up the Site and the roles of EPA and the NDEE as the regulatory agencies for the cleanup by USACE.

Consistent with the IAG, USACE took the following steps to address the contamination and threats of contamination that are the basis for imposing liability on the Defendants:

| | |
|---|---|
| Initial environmental investigation of soil, sediment, surface water, and groundwater by USACE (Confirmation Study) | April 1989 |
| NOP added to National Priorities List ("NPL") by EPA | 30 August 1990 |
| Additional soil gas, soil, and unexploded ordnance ("UXO") investigations by USACE | 1990 – 1991 |
| Preliminary health assessment by Agency for Toxic Substances and Disease Registry ("ATSDR") | 1991 |
| Supplemental Soil Remedial Investigation ("RI") by USACE | 1991 |
| Interagency agreement ("IAG") between Army/USACE, EPA and NDEE signed and effective | 17 January 1992 |
| Operable Unit 2 ("OU2") Remedial Investigation | 1992 - 1993 |
| Quarterly groundwater sampling initiated and continues to present | August 1992 to date |
| Public involvement activities including planning, Admin Records and Information Repository, public meetings, and publication of information | 1992 to date |
| Baseline Risk Assessment | 1994 |
| Soil vapor extraction pilot study | 1994 to 1996 |
| Engineering Evaluation/Cost Assessment ("EE/CA") for Removal Action | May 1995 |
| Feasibility Study | May 1995 |
| OU2 Proposed Plan released | October 1995 |
| Restoration Advisory Board ("RAB") Public Involvement | October 1996 - 2014 |
| Removal Action Decision Document approved | May 1996 |
| OU2 Record of Decision ("ROD") signed by Army and EPA | 7 April 1997 |
| Construction start containment removal action (Main Groundwater Treatment Plant ("GTP")) | October – November 1997 |
| Annual groundwater monitoring reports | 1997 to date |
| Operation of groundwater Pump &Treat containment system initiated and continues | October 1998 to date |
| Construction of expanded Main GTP initiated | November 1999 |
| Groundwater circulation pilot studies completed | March 2001 |
| Expansion of main treatment plant operational | February 2002 |
| Groundwater Circulation Explanation of Significant Differences ("ESD") | July 2002 |
| Monitoring Well ("MW")-85/Johnson Creek vicinity groundwater investigation | 2005 to 2006 |

| | |
|---|---|
| Metropolitan Utilities District ("MUD") baseline groundwater investigation and characterize groundwater contamination along south and eastern portion of site | 2005 to 2006 |
| Load Line 1 ("LL1") treatment plant operational | January 2006 to date |
| Multiple phases of plume delineation transect sampling performed | 2007 – 2012 |
| Advanced Oxidation Process ("AOP") treatment plant operational | March 2008 to date |
| Installation of focused extraction well ("FEW") 15 within Load Line 4 ("LL4") to remove high concentrations of trichloroethylene ("TCE") | Oct 2008 – May 2009 |
| Installation of FEW 14 and Extraction Well ("EW")-16 to improve containment within Load Line 3 ("LL3") | Aug 2008 – June 2009 |
| Groundwater Investigation in the areas of LL1, EW-10, FEW-15, and Platte Valley, to further characterize contamination to implement the remedy | November 2008 to May 2009 |
| First Five-Year Review ("FYR") completed | 2009 |
| Pre-pilot study plume delineation baseline sampling performed | May 2010 |
| LL4 treatment plant operational | August 2010 to date |
| Aquifer characterization to refine the extent and composition of the plumes across the site and obtain hydrogeologic properties at specific locations within LL1, LL2, LL3, LL4/Atlas Missile Area ("AMA") plumes | 2010 to 2011 |
| In-situ pilot studies to evaluate treatment of TCE and hexahydro-1,3,4-trinito-1,3,5-triazine ("RDX") contaminated groundwater | June 2011 |
| Groundwater monitoring program optimization to address data gaps in the vicinity of EW-12 and EW-13, and further revise vertical and lateral extents of groundwater plumes. | 2011 to 2012 |
| Abandonment of Extraction Well 1 ("EW-1") and drilling/installation of replacement EW-1R within LL4 to improve containment | February 2012 |
| Helicopter Electromagnetic and Magnetic ("HEM") Geophysical Survey conducted to map the electrical conductivity and subsurface properties of the site | October 2012 |
| Ultraviolet ("UV") wellhead treatment pilot study completed | December 2012 |
| Vertical zero-valent iron ("ZVI") permeable reactive barrier ("PRB") installed (pilot study) within LL2 | Aug to Nov 2012 |
| Design for Extraction Well 17 ("EW-17") within LL1 to improve TCE containment and supplement EW-12. | February 2013 |
| EW-17 installed within LL1 to supplement TCE containment | June 2013 |
| Aquifer testing and installation of observation wells near EW-1R | 2013 |
| Pilot study investigations using enhanced bioreduction ("EBR") within LL2 | 2012 to 2014 |
| The Main GTP was taken offline and replaced with five wellhead UV treatment systems (EW-4, EW-7, EW-9, FEW-11, and FEW-14) operations continue to date | April 2014 to date |
| Second FYR completed | June 2014 |
| Groundwater Modeling Study of Remediation Timeframe | 2013 to 2015 |
| In situ anaerobic biological treatment pilot study completed | 2015 |
| Phase I Omadi Bedrock Assessment | 2015 |

| | |
|---|---|
| Final Work Plan Addendum and design for containment EW-18 and UV treatment system at EW-18 to treat RDX | November 2015 |
| EW-18 installed within LL2 to improve RDX containment between EW-7 and EW-9, as recommended in the 2012 Containment Evaluation | 2016 |
| Phase II Omadi Bedrock Assessment | 2016 |
| Restart of EW-16 and addition of UV treatment system at EW-16 to improve containment at LL3 RDX plume as recommended in the 2015 Containment Evaluation | December 2017 |
| Source Optimization initiated to conduct high resolution sampling to determine if source area remains within LL1 plume | August 2018 |
| Strategic Optimization Tech Memo, Environmental & Munitions Center of Expertise | August 2018 |
| Third FYR completed | June 2019 |
| Land Use Control Implementation Plan (“LUCIP”) finalized | April 2020 |
| Source Optimization high resolution investigation completed | March 2020 |
| Phase III Omadi Assessment | 2019 to 2020 |
| Source Optimization initiated for high resolution data gap investigation and targeted source pilot study | October 2021 |
| Groundwater profiling to refine TCE plume LL2 and LL3 based on FEW-14 influent TCE exceedance observed in 2019; and refine RDX plume in LL4 proximal to MW-11. | April to November 2021 |
| Groundwater profiling to refine extent of RDX contamination near MW-84 at the southern edge of LL2 and LL3; refine RDX contamination in LL4 plume; and abandon and replace monitoring wells to address property access limitations. | July to August 2022 |
| FEW-19 design for additional mass removal within LL4, finalized | January 2023 |
| Omadi assessment in northern extent of LL1 | 2021 |
| Omadi Assessment Addendum | 2022 |
| Supplement Field Investigation Data Summary Report | May 2023 |
| Groundwater Models I through IV 1994 to 2004 for Removal and Remedial Designs and Updates 2005 to 2022 | 1994 to 2023 |
| Groundwater Containment Evaluations - Annual | 2005 to date |
| Fourth FYR | 2024 |

The activities listed above were overseen by EPA consistent with the process set forth in the IAG. The EPA also independently assessed the results of the RI to evaluate potential threats to human health. In 1997, the Army and EPA issued a ROD for OU2 at the Site . USACE as the lead Federal agency has been and remains responsible for implementation of the remedy set forth in the ROD, while EPA is the lead regulatory agency. Components of the selected OU2 Remedy for which EPA has provided and continues to provide review pursuant to the process set forth in the IAG are:

- Hydraulic control for contaminated groundwater exceeding the Final Target Groundwater Cleanup Goals;

- Focused extraction of groundwater in identified areas with high concentrations of TCE and explosives;
- Treat all extracted groundwater using granular activated carbon ("GAC") adsorption, AOP, and air stripping, any of which may be applied in combination with one of the other technologies to effectively treat the contaminated groundwater;
- Beneficial reuse or surface discharge of the treated groundwater;
- Provide a potable water supply to local groundwater users whose water supply contains RDX exceeding the health advisory and/or TCE exceeding the maximum contaminant level set forth in the Safe Drinking Water Act;
- Monitor the groundwater elevations and water quality; and
- Excavate and treat explosives-contaminated soil which could act as a source of explosives contamination of groundwater and which does not meet the OU1 excavation criteria.

USACE continues to operate a groundwater extraction and treatment system through several treatment methods at locations throughout the Site. Treatment metrics are provided to the EPA both quarterly and annually and are reviewed to ensure the system functions properly to protect human health and environment. USACE also continues a monitoring program that assesses wells within and around the plume for containment assurance. Several domestic wells are known to have been affected by contamination. These locations are provided alternate water supplies by USACE and continue to be monitored. Throughout the cleanup process, EPA has participated in monthly meetings with USACE to monitor project status and upcoming work. USACE has provided public involvement opportunities throughout the period of the actions related to the groundwater cleanup, including holding public meetings and offering opportunities for public comment, maintaining the administrative record and information repository, and establishing a RAB to facilitate public participation. The EPA has also served as a member of the RAB, which met regularly between 1996 and 2014, when public interest diminished and the RAB was dissolved. USACE still meets twice a year with the public to update the public on Site progress and address any concerns, and maintains a public website to inform the public of new information, provide access to significant site documents, and notify the public of planned public meetings.

Individuals who may have relevant knowledge regarding the answer to this Interrogatory are:

- **Diana Bailey.** Ms. Bailey was the Remedial Project Manager ("RPM") assigned by EPA to the Site from 1986 until June 1987. Ms. Bailey's current whereabouts are not known to the United States.

- **Greg McCabe.** Mr. McCabe was the RPM assigned by EPA to the Site from June 1987 until December 1995. Mr. McCabe's current whereabouts are not known to the United States.

- **Craig Bernstein.** Mr. Bernstein was EPA's designated Project Manager under the IAG from December 1995 to September 2003. Mr. Bernstein's current whereabouts are not known to the United States.

- **Scott Marquess.** Mr. Marquess was EPA's designated Project Manager under the IAG from September 2003 to January 2009. Mr. Marquess is currently employed in the Water Branch of the Enforcement & Compliance Assurance Division in EPA Region 7, located at 11201 Renner Road, Lenexa, KS 66219.

- **Bill Gresham.** Mr. Gresham was EPA's designated Project Manager under the IAG from March 2018 to April 2023. Mr. Gresham is currently employed as a section supervisor within the Site Remediation Branch of the Superfund & Emergency Management Division in EPA Region 7, located at 11201 Renner Road, Lenexa, KS 66219.

- **Wesley March.** Mr. March is currently assigned to the Site after being designated as EPA's Project Manager under the IAG in April 2023. Mr. March is currently employed within the Remediation Branch of the Superfund & Emergency Management Division in EPA Region 7, located at 11201 Renner Road, Lenexa, KS 66219.

- **Randy Brown.** Mr. Brown is currently assigned to the Site after being designated as the EPA's Site hydrogeologist in 2019. Mr. Brown is currently employed as a hydrogeologist and Section Chief within the Laboratory Services and Applied Sciences Division in EPA Region 7, located at 11201 Renner Road, Lenexa KS 66219.

- **Matthew Ward.** Mr. Ward is currently Chief of the Remediation Section of the Environmental Programs Branch for the USACE Kansas City District. Mr. Ward works at the USACE Kansas City District office, located at 601 E. 12th St, KC, MO, 64106.

- **Alissa Sutter.** Ms. Sutter currently is Kansas City District FNOP FUDS response action Project Manager. Ms. Sutter works at the USACE Kansas City District office, located at 601 12th St., KC, MO, 64106.

- **Janet Mathews-Flynn.** Ms. Mathews-Flynn was the FNOP Project Manager between approximately 2017 and 2019. Ms. Mathews-Flynn works at the USACE Kansas City District office, located at 601 12th St., KC, MO, 64106.

- **Garth Anderson.** Mr. Anderson was a Technical Manager for FNOP Site between approximately 1997 and 2003. Mr. Anerson currently is with the United States Africa Command in Stuttgart, Germany.

- **Mary Lyle.** Ms. Lyle was the Project Engineer between approximately 2002 and 2011. Ms. Lyle works at the USACE Kansas City District office, 601 12th St., KC, MO, 64106.

- **Edwin Louis.** Mr. Louis was the FNOP Project Manager between approximately 2002 and 2003, and again between approximately 2015 and 2017. Mr. Louis has retired from USACE.

- **Rosemary Gilbertson.** Ms. Gilbertson was the FNOP Project Manager between approximately 1992 and 1997. Ms. Gilbertson has retired from USACE.

- **Kristine Stein.** Ms. Stein was the FNOP Project Manager between approximately 2008 and 2015. Ms. Stein has retired from USACE..

The persons with knowledge of the foregoing response actions are USACE and EPA employees identified in the United States' Rule 26(f)(1) Initial Disclosures dated 23 February 2024. The United States reserves the right to supplement this response if additional information becomes available to it on the subject matter of this Interrogatory.

**INTERROGATORY NO. 3:**

Identify all contractors and subcontractors, including but not limited to those directly engaged by the government, that performed any work at or for the Nebraska Ordnance Plant during the World War II era (i.e., January 1, 1941 to November 28, 1945).

**ANSWER:**

The United States objects to this Interrogatory because "work" is vague, ambiguous, and overbroad. The United States has limited information on the United States Government contracts awarded at this property between 1941 and 1964 because contracting records have been routinely destroyed under Government regulations throughout the period of the United States' ownership of this property, and the types of contracts that could potentially have involved "work" at this property are widely variable and many would be irrelevant to this litigation. The United States also objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory No. 10. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The following United States contract numbers and prime contractors have been identified as having performed "work" related to the Former Nebraska Ordnance Plant property during the period of the United States' ownership of the property:

- AF04(645)-4 (GD/Convair)
- AF04(647)-450 (GD/Convair)
- AF33(600)-7172 (GD/Convair)
- DA-25-066-eng-5535 (Malan Construction Corp.)
- DA-25-066-eng-5464 (Winger Construction Co.)
- DA-25-066-eng-5657 (Sides Construction Co.)
- DA-25-066-eng-5732 (Parsons Construction Co.)
- DA-25-066-eng-5749 (Wickes Engineering and Construction)
- DA-25-066-eng-5810 (Martin K. Eby Construction)

- DA-25-066-eng-6395 (Sikes Construction Co.)
- W-643-2506 (Chicago Burlington & Quincy Railroad Co.)
- W-643-2508 (Union Pacific Railroad Co.)
- W-643-2512 (Hagstrom Construction Co.)
- W-643-2593 (Metcalfe Construction Co, Hamilton Construction Co., Kansas City Bridge Co.)
- W-643-2553 (Hagstrom Construction Co.)
- W-ORD-552 (Nebraska Defense Corp.)
- W-7257-qm-1 (Giffels & Vallet, Inc.)
- W-49-010-ORD-49 (Emergency Export Corp./Spencer Chemical Co.)
- DA-11-173-ORD-99 (National Gypsum Co.)

**AMENDED ANSWER:**

The United States objects to this Interrogatory because "work" is vague, ambiguous, and overbroad. The United States has limited information on the United States Government contracts awarded at this property between 1941 and 1964 because contracting records have been routinely destroyed under Government regulations throughout the period of the United States' ownership of this property, and the types of contracts that could potentially have involved "work" at this property are widely variable and many would be irrelevant to this litigation. The United States also objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory No. 10. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The following United States contract numbers and prime contractors have been identified as having performed "work" related to the Former Nebraska Ordnance Plant property during the "the World War II era" period of the United States' ownership of the property:

- W-643-2506 (Chicago Burlington & Quincy Railroad Co.)
- W-643-2508 (Union Pacific Railroad Co.)
- W-643-2512 (Hagstrom Construction Co.)
- W-643-2593 (Metcalfe Construction Co, Hamilton Construction Co., Kansas City Bridge Co.)
- W-643-2553 (Hagstrom Construction Co.)
- W-ORD-552 (Nebraska Defense Corp.)
- W-7257-qm-1 (Giffels & Vallet, Inc.)

**INTERROGATORY NO. 4:**

Identify all contractors and subcontractors, including but not limited to those directly engaged by the government, that performed any work at or for the Nebraska Ordnance Plant during the post- World War II interim period (*i.e.*, November 29, 1945 to May 1950).

**ANSWER:**

The United States objects to this Interrogatory because "work" is vague, ambiguous, and overbroad. The United States has limited information on the United States Government contracts awarded at this property between 1941 and 1964 because contracting records have been routinely destroyed under Government regulations throughout the period of the United States' ownership of this property, and the types of contracts that could potentially have involved "work" at this property are widely variable and many would be irrelevant to this litigation. The United States also objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory No. 10. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The following United States contract numbers and prime contractors have been identified as having performed "work" related to the Former Nebraska Ordnance Plant property during the period of the United States' ownership of the property:

- AF04(645)-4 (GD/Convair)
- AF04(647)-450 (GD/Convair)
- AF33(600)-7172 (GD/Convair)
- DA-25-066-eng-5535 (Malan Construction Corp.)
- DA-25-066-eng-5464 (Winger Construction Co.)
- DA-25-066-eng-5657 (Sides Construction Co.)
- DA-25-066-eng-5732 (Parsons Construction Co.)
- DA-25-066-eng-5749 (Wickes Engineering and Construction)
- DA-25-066-eng-5810 (Martin K. Eby Construction)
- DA-25-066-eng-6395 (Sikes Construction Co.)
- W-643-2506 (Chicago Burlington & Quincy Railroad Co.)
- W-643-2508 (Union Pacific Railroad Co.)
- W-643-2512 (Hagstrom Construction Co.)
- W-643-2593 (Metcalfe Construction Co, Hamilton Construction Co., Kansas City Bridge Co.)
- W-643-2553 (Hagstrom Construction Co.)
- W-ORD-552 (Nebraska Defense Corp.)
- W-7257-qm-1 (Giffels & Vallet, Inc.)
- W-49-010-ORD-49 (Emergency Export Corp./Spencer Chemical Co.)
- DA-11-173-ORD-99 (National Gypsum Co.)

**AMENDED ANSWER:**

The United States objects to this Interrogatory because "work" is vague, ambiguous, and overbroad. The United States has limited information on the United States Government contracts awarded at this property between 1941 and 1964 because contracting records have been routinely destroyed under Government regulations throughout the period of the United States' ownership of this property, and the types of contracts that could potentially have involved "work" at this property

are widely variable and many would be irrelevant to this litigation. The United States also objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory No. 10. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The following United States contract numbers and prime contractors have been identified as having performed "work" related to the Former Nebraska Ordnance Plant property during the "post- World War II interim period" of the United States' ownership of the property:

- W-49-010-ORD-49 (Emergency Export Corp./Spencer Chemical Co.)

**INTERROGATORY NO. 5:**

Identify all contractors and subcontractors, including but not limited to those directly engaged by the government, that performed any work at or for the Nebraska Ordnance Plant during the Korean Conflict Era (*i.e.*, June 1950 to June 1956).

**ANSWER:**

The United States objects to this Interrogatory because "work" is vague, ambiguous, and overbroad. The United States has limited information on the United States Government contracts awarded at this property between 1941 and 1964 because contracting records have been routinely destroyed under Government regulations throughout the period of the United States' ownership of this property, and the types of contracts that could potentially have involved "work" at this property are widely variable and many would be irrelevant to this litigation. The United States also objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory No. 10. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The following United States contract numbers and prime contractors have been identified as having performed "work" related to the Former Nebraska Ordnance Plant property during the period of the United States' ownership of the property:

- AF04(645)-4 (GD/Convair)
- AF04(647)-450 (GD/Convair)
- AF33(600)-7172 (GD/Convair)
- DA-25-066-eng-5535 (Malan Construction Corp.)
- DA-25-066-eng-5464 (Winger Construction Co.)
- DA-25-066-eng-5657 (Sides Construction Co.)
- DA-25-066-eng-5732 (Parsons Construction Co.)
- DA-25-066-eng-5749 (Wickes Engineering and Construction)
- DA-25-066-eng-5810 (Martin K. Eby Construction)

- DA-25-066-eng-6395 (Sikes Construction Co.)
- W-643-2506 (Chicago Burlington & Quincy Railroad Co.)
- W-643-2508 (Union Pacific Railroad Co.)
- W-643-2512 (Hagstrom Construction Co.)
- W-643-2593 (Metcalfe Construction Co, Hamilton Construction Co., Kansas City Bridge Co.)
- W-643-2553 (Hagstrom Construction Co.)
- W-ORD-552 (Nebraska Defense Corp.)
- W-7257-qm-1 (Giffels & Vallet, Inc.)
- W-49-010-ORD-49 (Emergency Export Corp./Spencer Chemical Co.)
- DA-11-173-ORD-99 (National Gypsum Co.)

**AMENDED ANSWER:**

The United States objects to this Interrogatory because "work" is vague, ambiguous, and overbroad. The United States has limited information on the United States Government contracts awarded at this property between 1941 and 1964 because contracting records have been routinely destroyed under Government regulations throughout the period of the United States' ownership of this property, and the types of contracts that could potentially have involved "work" at this property are widely variable and many would be irrelevant to this litigation. The United States also objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory No. 10. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The following United States contract numbers and prime contractors have been identified as having performed "work" related to the Former Nebraska Ordnance Plant property during the "the Korean Conflict Era" period of the United States' ownership of the property:

- DA-11-173-ORD-99 (National Gypsum Co.)

**INTERROGATORY NO. 6:**

Identify all contractors and subcontractors, including but not limited to those directly engaged by the government, that performed any work at or for the Nebraska Ordnance Plant during the post-Korean Conflict interim period (*i.e.*, July 1956 to December 1959).

**ANSWER:**

The United States objects to this Interrogatory because "work" is vague, ambiguous, and overbroad. The United States has limited information on the United States Government contracts awarded at this property between 1941 and 1964 because contracting records have been routinely

destroyed under Government regulations throughout the period of the United States' ownership of this property, and the types of contracts that could potentially have involved "work" at this property are widely variable and many would be irrelevant to this litigation. The United States also objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory No. 10. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The following United States contract numbers and prime contractors have been identified as having performed "work" related to the Former Nebraska Ordnance Plant property during the period of the United States' ownership of the property:

- AF04(645)-4 (GD/Convair)
- AF04(647)-450 (GD/Convair)
- AF33(600)-7172 (GD/Convair)
- DA-25-066-eng-5535 (Malan Construction Corp.)
- DA-25-066-eng-5464 (Winger Construction Co.)
- DA-25-066-eng-5657 (Sides Construction Co.)
- DA-25-066-eng-5732 (Parsons Construction Co.)
- DA-25-066-eng-5749 (Wickes Engineering and Construction)
- DA-25-066-eng-5810 (Martin K. Eby Construction)
- DA-25-066-eng-6395 (Sikes Construction Co.)
- W-643-2506 (Chicago Burlington & Quincy Railroad Co.)
- W-643-2508 (Union Pacific Railroad Co.)
- W-643-2512 (Hagstrom Construction Co.)
- W-643-2593 (Metcalfe Construction Co, Hamilton Construction Co., Kansas City Bridge Co.)
- W-643-2553 (Hagstrom Construction Co.)
- W-ORD-552 (Nebraska Defense Corp.)
- W-7257-qm-1 (Giffels & Vallet, Inc.)
- W-49-010-ORD-49 (Emergency Export Corp./Spencer Chemical Co.)
- DA-11-173-ORD-99 (National Gypsum Co.)

**AMENDED ANSWER:**

The United States objects to this Interrogatory because "work" is vague, ambiguous, and overbroad. The United States has limited information on the United States Government contracts awarded at this property between 1941 and 1964 because contracting records have been routinely destroyed under Government regulations throughout the period of the United States' ownership of this property, and the types of contracts that could potentially have involved "work" at this property are widely variable and many would be irrelevant to this litigation. The United States also objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory No. 10. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The following United States contract numbers and prime contractors have been identified as having performed "work" related to the Former Nebraska Ordnance Plant property during the "post-Korean Conflict interim period" of the United States' ownership of the property:

- AF04(645)-4 (GD/Convair)
- AF33(600)-7172 (GD/Convair)
- DA-25-066-eng-5535 (Malan Construction Corp.)
- DA-25-066-eng-5464 (Winger Construction Co.)
- DA-25-066-eng-5657 (Sides Construction Co.)
- DA-25-066-eng-5732 (Parsons Construction Co.)
- DA-25-066-eng-5749 (Wickes Engineering and Construction)
- DA-25-066-eng-5810 (Martin K. Eby Construction)
- DA-25-066-eng-6395 (Sikes Construction Co.)
- DA-(?)-5410 (Chicago Pneumatic Tool Co.)
- DA-(?)-5847 (Evans Electric Construction Co.)
- DA-(?)-5917 (Condon-Cunningham Co.)

**INTERROGATORY NO. 7:**

Identify and describe with specificity the activities that took place at the Nebraska Ordnance Plant, including without limitation the types of ordnance manufactured, assembled, stored, maintained, and/or cleaned during the World War II era (*i.e.*, January 1, 1941 to November 28, 1945) and including the dates of such manufacture, assembly, storage, maintenance, cleaning, and/or other activities.

**ANSWER:**

The United States objects to this Interrogatory to the extent that it calls for a narrative spanning a period of many years that occurred more than 78 years ago for which limited documentation is available and remaining documentation is equally available to all the parties in public records collections. The United States also objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. The United States further objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory Nos. 17 and 18, . Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The Nebraska Ordnance Plant was established in 1942 as a load and pack facility for the finished production of various military munitions, including bombs, artillery rounds, boosters, and other military munitions by the Nebraska Defense Corporation. Production was halted at the end of World War II, and it was placed in standby status in 1945.

**INTERROGATORY NO. 8:**

Identify and describe with specificity the activities that took place at the Nebraska Ordnance Plant during the Post-World War II interim period (*i.e.*, November 29, 1945 through May 1950) including the dates of such activities.

**ANSWER:**

The United States objects to this Interrogatory to the extent that it calls for a narrative spanning a period of many years that occurred more than 74 years ago for which limited documentation is available and remaining documentation is equally available to all the parties in public records collections. The United States also objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The Nebraska Ordnance Plant was held in standby status after production was halted in 1945, except for the production of ammonia nitrate for fertilizer purposes by the Emergency Export Corporation between 1946 and 1949. Munitions material was reportedly stored on the property and some military munitions or munitions components were disposed by detonation or burning. Decontamination was conducted in some buildings and areas.

**INTERROGATORY NO. 9:**

Identify and describe with specificity the activities that took place at the Nebraska Ordnance Plant, including without limitation the types of ordnance manufactured, assembled, stored, maintained, and/or cleaned during the Korean Conflict era (*i.e.*, June 1950 to June 1956) and including the dates of such manufacture, assembly, storage, maintenance, cleaning, and/or other activities.

**ANSWER:**

The United States objects to this Interrogatory to the extent that it calls for a narrative spanning a period of many years that occurred more than 68 years ago for which limited

documentation is available and remaining documentation is equally available to all the parties in public records collections. The United States also objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The Nebraska Ordnance Plant was reactivated for military munitions production in 1952 and operated by the National Gypsum Company, producing a variety of bombs, boosters, flares, and other military munitions, with some areas having lesser operations than in the World War II period. The plant was closed in 1955 and declared excess to the needs of the U.S. Army in 1956.

**INTERROGATORY NO. 10:**

Identify and describe with specificity the activities that took place at the Nebraska Ordnance Plant during the Post-Korean Conflict interim period (*i.e.*, July 1956 to December 1959) including the dates of such activities.

**ANSWER:**

The United States objects to this Interrogatory to the extent that it calls for a narrative spanning a period of many years that occurred more than 64 years ago for which limited documentation is available and remaining documentation is equally available to all the parties in public records collections. The United States also objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The Former Nebraska Ordnance Plant property was managed for excessing from 1956 to 1959, with various parcels made available for property disposal to Federal or State agencies, and some parcels were made available for public disposition.

**INTERROGATORY NO. 11:**

Identify all ordnance plants owned or operated by the United States that were contaminated with trichloroethylene (*e.g.*, where trichloroethylene has been detected in the ground, groundwater, bedrock, or elsewhere in the environment) during the World War II era (*i.e.*, January 1, 1941 to November 28, 1945).

**ANSWER:**

The United States objects to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks information without regard to whether such information has any connection to the releases of hazardous substances at the Former Nebraska Ordnance Plant property that are the basis for the Complaint and Dow's Counterclaim. The United States also objects to this Interrogatory as vague and ambiguous to the extent that it is unclear whether the specified time period applies to when the ordnance plants were owned or operated by the United States, when the ordnance plants were contaminated with trichloroethylene, or when trichloroethylene was detected in the ground, groundwater, bedrock, or elsewhere in the environment. The United States further objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The United States has no knowledge of ordnance plants owned or operated by the United States where releases of trichloroethylene ("TCE") are known to have occurred during the period of January 1, 1941 to November 28, 1945.

**INTERROGATORY NO. 12:**

Identify all ordnance plants owned or operated by the United States that were contaminated with trichloroethylene (*e.g.*, where trichloroethylene has been detected in the ground, groundwater, bedrock, or elsewhere in the environment) during the post-World War II interim period (*i.e.*, November 29, 1945 to May 1950).

**ANSWER:**

The United States objects to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks information without regard to whether such information has any connection to the releases of hazardous substances at the Former Nebraska Ordnance Plant property that are the basis for the Complaint and Dow's Counterclaim. The United States also objects to this Interrogatory as vague and ambiguous to the extent that it is unclear whether the specified time period applies to when the ordnance plants were owned or operated by the United States, when the ordnance plants were contaminated with trichloroethylene, or when trichloroethylene was detected in the ground, groundwater, bedrock, or elsewhere in the environment. The United States further objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The United States has no knowledge of ordnance plants owned or operated by the United States where releases of trichloroethylene ("TCE") are known to have occurred during the period of November 29, 1945 to May 1950.

**INTERROGATORY NO. 13:**

Identify all ordnance plants owned or operated by the United States that were contaminated with trichloroethylene (*e.g.*, where trichloroethylene has been detected in the ground, groundwater, bedrock, or elsewhere in the environment) during the Korean Conflict era (*i.e.*, June 1950 to June 1956).

**ANSWER:**

The United States objects to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks information without regard to whether such information has any connection to the releases of hazardous substances at the Former Nebraska Ordnance Plant property that are the basis for the Complaint and Dow's Counterclaim. The United States also objects to this Interrogatory as vague and ambiguous to the extent that it is unclear whether the specified time period applies to when the ordnance plants were owned or operated by the United States, when the ordnance plants were contaminated with trichloroethylene, or when trichloroethylene was detected in the ground, groundwater, bedrock, or elsewhere in the environment. The United States further objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The United States has no knowledge of ordnance plants owned or operated by the United States where releases of trichloroethylene ("TCE") are known to have occurred during the period of June 1950 to June 1956.

**INTERROGATORY NO. 14:**

Identify all ordnance plants owned or operated by the United States that were contaminated with trichloroethylene (*e.g.*, where trichloroethylene has been detected in the ground, groundwater, bedrock, or elsewhere in the environment) during the post-Korean Conflict interim period (*i.e.*, July 1956 to December 1959).

**ANSWER:**

The United States objects to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks information without regard to whether such information has any connection to the releases of hazardous substances at the Former Nebraska Ordnance Plant property that are the basis for the Complaint and Dow's Counterclaim. The United States also objects to this Interrogatory as vague and ambiguous to the extent that it is unclear whether the specified time period applies to when the ordnance plants were owned or operated by the United States, when the ordnance plants were contaminated with trichloroethylene, or when trichloroethylene was detected in the ground, groundwater, bedrock, or elsewhere in the environment. The United States further objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The United States has no knowledge of ordnance plants owned or operated by the United States where releases of trichloroethylene ("TCE") are known to have occurred during the period of July 1956 to December 1959.

**INTERROGATORY NO. 15:**

For each ordnance plant identified in response to Interrogatory No. 11, identify and describe with specificity the activities that took place, including without limitation the types of ordnance manufactured, assembled, stored, maintained, and/or cleaned, and including the dates of such manufacture, assembly, storage, maintenance, cleaning, and/or other activities, during the World War II era (*i.e.*, January 1, 1941 to November 28, 1945).

**ANSWER:**

The United States objects to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks information without regard to whether such information has any connection to the releases of hazardous substances at the Former Nebraska Ordnance Plant property that are the basis for the Complaint and Dow's Counterclaim. The United States also objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The United States has no knowledge of ordnance plants responsive to Interrogatory No. 11.

**INTERROGATORY NO. 16:**

For each ordnance plant identified in response to Interrogatory No. 12, identify and describe with specificity the activities that took place during the post-World War II interim period (*i.e.*, November 29, 1945 to May 1950) including the dates of such activities.

**ANSWER:**

The United States objects to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks information without regard to whether such information has any connection to the releases of hazardous substances at the Former Nebraska Ordnance Plant property that are the basis for the Complaint and Dow's Counterclaim. The United States also objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The United States has no knowledge of ordnance plants responsive to Interrogatory No. 12.

**INTERROGATORY NO. 17:**

For each ordnance plant identified in response to Interrogatory No. 13, identify and describe with specificity the activities took place, including without limitation types of ordnance manufactured, assembled, stored, maintained, and/or cleaned, and including the dates of such manufacture, assembly, storage, maintenance, and/or cleaning, during the Korean Conflict era (*i.e.*, July 1956 to December 1959).

**ANSWER:**

The United States objects to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks information without regard to whether such information has any connection to the releases of hazardous substances at the Former Nebraska Ordnance Plant property that are the basis for the Complaint

and Dow's Counterclaim. The United States also objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The United States has no knowledge of ordnance plants responsive to Interrogatory No. 13.

**INTERROGATORY NO. 18:**

For each ordnance plant identified in response to Interrogatory No. 14, identify and describe with specificity the activities that took place during the post-Korean Conflict interim period (*i.e.*, July 1956 to December 1959) including the dates of such activities.

**ANSWER:**

The United States objects to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks information without regard to whether such information has any connection to the releases of hazardous substances at the Former Nebraska Ordnance Plant property that are the basis for the Complaint and Dow's Counterclaim. The United States also objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The United States has no knowledge of ordnance plants responsive to Interrogatory No. 14.

**INTERROGATORY NO. 19:**

Identify and describe with specificity all uses of trichloroethylene at the Nebraska Ordnance Plant prior to 1959.

**ANSWER:**

The United States objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory Nos. 6, 7, and 13. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

Based on information and belief, the United States believes that General Dynamics and its Convair Division used trichloroethylene ("TCE") at the Former Nebraska Ordnance Plant property, and that The Dow Chemical Company used TCE at the property. The United States believes that General Dynamics and Dow used TCE to clean parts or components of the Atlas Missile and the Atlas Missile Launch facilities at the property, specifically in the area known as the "Dow Building" located on the north end of the former Load Line 1 buildings and the Atlas Missile Launch facilities in the northeast portion of the property. Responsive information is contained in the administrative record, including in the Remedial Investigation Report for Operable Unit No. 2, Bates No. AR_1031 to AR_3685; the Record of Decision for Operable Unit No. 2, Bates No. AR_6590 to AR_6661; and supporting documentation referenced therein. Responsive information is also provided in the United States' response to General Dynamics' Interrogatory No. 6, served previously.

**INTERROGATORY NO. 20:**

Identify and describe with specificity all disposals of trichloroethylene at the Nebraska Ordnance Plant prior to 1959.

**ANSWER:**

The United States objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory Nos. 7, and 8. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The United States has no knowledge or information regarding disposals of trichloroethylene at the Former Nebraska Ordnance Plant property prior to 1959.

**INTERROGATORY NO. 21:**

Identify and describe with specificity all steps taken by Plaintiff to investigate whether trichloroethylene was used and/or disposed of at the Nebraska Ordnance Plant during the World War II era (*i.e.*, January 1, 1941 to November 28, 1945), including without limitation the identities of individuals who were contacted as part of or otherwise participated in any such investigation, and identify and describe any and all documents consulted.

**ANSWER:**

The United States objects to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it is unclear whether the specified time period applies to when the investigation as described in the Interrogatory took place, or when TCE was allegedly used or disposed of at the ordnance plant. The United States also objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. The United States further objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory Nos. 4 and 20. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The United States refers to its answer to Dow's Interrogatory No. 2 for steps that the United States took to investigate trichloroethylene contamination at the Former Nebraska Ordnance Plant property. These steps did not investigate trichloroethylene contamination related to a specific historic time period. In addition, the United States conducted two preliminary assessments of potential releases on the Former Nebraska Ordnance Plant. The reports are the "Archives Search Report of the Former Nebraska Ordnance Plant, Saunders County, Nebraska" July 1983, prepared by Environmental Sciences and Engineering, Inc. for the U.S. Army Toxic and Hazardous Materials Agency (produced as Bates No. AR_6 to AR_78), and the "Supplementary Archives Search Report at the Former Nebraska Ordnance Plant Mead, Nebraska" November 1993, prepared by TCT-St. Louis for the St. Louis District, USACE.

**INTERROGATORY NO. 22:**

Identify and describe with specificity all steps taken by Plaintiff to investigate whether trichloroethylene was used and/or disposed of at the Nebraska Ordnance Plant during the post-World War II interim period (*i.e.*, November 19, 1945 to May 1950), including without limitation the identities of individuals who were contacted as part of or otherwise participated in any such investigation, and identify and describe any and all documents consulted.

**ANSWER:**

The United States objects to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it is unclear whether the specified time period applies to when the investigation as described in the Interrogatory took place, or when TCE was allegedly used or disposed of at the ordnance plant. The United States also objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding

multiple requests for information as a single interrogatory. The United States further objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory Nos. 4 and 20. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The United States refers to its answer to Dow's Interrogatory No. 2 for steps that the United States took to investigate trichloroethylene contamination at the Former Nebraska Ordnance Plant property. These steps did not investigate trichloroethylene contamination related to a specific historic time period. In addition, the United States conducted two preliminary assessments of potential releases on the Former Nebraska Ordnance Plant. The reports are the "Archives Search Report of the Former Nebraska Ordnance Plant, Saunders County, Nebraska" July 1983, prepared by Environmental Sciences and Engineering, Inc. for the U.S. Army Toxic and Hazardous Materials Agency (produced as Bates No. AR_6 to AR_78), and the "Supplementary Archives Search Report at the Former Nebraska Ordnance Plant Mead, Nebraska" November 1993, prepared by TCT-St. Louis for the St. Louis District, USACE.

**INTERROGATORY NO. 23:**

Identify and describe with specificity all steps taken by Plaintiff to investigate whether trichloroethylene was used and/or disposed of at the Nebraska Ordnance Plant during the Korean Conflict era (*i.e.*, June 1950 to June 1956), including without limitation the identities of individuals who were contacted as part of or otherwise participated in any such investigation, and identify and describe any and all documents reviewed.

**ANSWER:**

The United States objects to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it is unclear whether the specified time period applies to when the investigation as described in the Interrogatory took place, or when TCE was allegedly used or disposed of at the ordnance plant. The United States also objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. The United States further objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory Nos. 4 and 20. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The United States refers to its answer to Dow's Interrogatory No. 2 for steps that the United States took to investigate trichloroethylene contamination at the Former Nebraska Ordnance Plant

property. These steps did not investigate trichloroethylene contamination related to a specific historic time period. In addition, the United States conducted two preliminary assessments of potential releases on the Former Nebraska Ordnance Plant. The reports are the "Archives Search Report of the Former Nebraska Ordnance Plant, Saunders County, Nebraska" July 1983, prepared by Environmental Sciences and Engineering, Inc. for the U.S. Army Toxic and Hazardous Materials Agency (produced as Bates No. AR_6 to AR_78), and the "Supplementary Archives Search Report at the Former Nebraska Ordnance Plant Mead, Nebraska" November 1993, prepared by TCT-St. Louis for the St. Louis District, USACE.

**INTERROGATORY NO. 24:**

Identify and describe with specificity all steps taken by Plaintiff to investigate whether trichloroethylene was used and/or disposed of at the Nebraska Ordnance Plant during the post-Korean Conflict interim period (*i.e.*, July 1956 to December 1959), including without limitation the identities of individuals who were contacted as part of or otherwise participated in any such investigation, and identify and describe any and all documents consulted.

**ANSWER:**

The United States objects to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it is unclear whether the specified time period applies to when the investigation as described in the Interrogatory took place, or when TCE was allegedly used or disposed of at the ordnance plant. The United States also objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. The United States further objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory Nos. 4 and 20. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The United States refers to its answer to Dow's Interrogatory No. 2 for steps that the United States took to investigate trichloroethylene contamination at the Former Nebraska Ordnance Plant property. These steps did not investigate trichloroethylene contamination related to a specific historic time period. In addition, the United States conducted two preliminary assessments of potential releases on the Former Nebraska Ordnance Plant. The reports are the "Archives Search Report of the Former Nebraska Ordnance Plant, Saunders County, Nebraska" July 1983, prepared by Environmental Sciences and Engineering, Inc. for the U.S. Army Toxic and Hazardous Materials Agency (produced as Bates No. AR_6 to AR_78), and the "Supplementary Archives Search Report at the Former Nebraska Ordnance Plant Mead, Nebraska" November 1993, prepared by TCT-St. Louis for the St. Louis District, USACE.

**INTERROGATORY NO. 25:**

Identify and describe with specificity all materials, including any solvents, used for degreasing (including without limitation vapor degreasing) at the Nebraska Ordnance Plant during the World War II era (*i.e.*, January 1, 1941 to November 28, 1945).

**ANSWER:**

The United States objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. The United States also objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory No. 16. The United States further objects to this Interrogatory as vague, ambiguous, and overbroad to the extent that the term "solvent" could encompass any substance that may potentially dissolve any other substance, including water, virtually any other liquid, and many compounds that degrade or separate other compounds or substances. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

Liquids or compounds used as solvents at the Former Nebraska Ordnance Plant include water, oil, petroleum distillate sometimes referred to as "Stoddard Solvent," soap solutions, acetone, and other compounds used to dissolve various types of materials.

**AMENDED ANSWER:**

The United States objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. The United States also objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory No. 16. The United States further objects to this Interrogatory as vague, ambiguous, and overbroad to the extent that the term "solvent" could encompass any substance that may potentially dissolve any other substance, including water, virtually any other liquid, and many compounds that degrade or separate other compounds or substances. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

Water, oil, petroleum distillate sometimes referred to as "Stoddard Solvent," soap solutions, acetone, and methanol were used as solvents at the Former Nebraska Ordnance Plant during the "World War II era".

**INTERROGATORY NO. 26:**

Identify and describe with specificity all materials, including any solvents, used for degreasing (including without limitation vapor degreasing) at the Nebraska Ordnance Plant during the post-World War II interim period (*i.e.*, November 29, 1945 through May 1950).

**ANSWER:**

The United States objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. The United States also objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory No. 16. The United States further objects to this Interrogatory as vague, ambiguous, and overbroad to the extent that the term "solvent" could encompass any substance that may potentially dissolve any other substance, including water, virtually any other liquid, and many compounds that degrade or separate other compounds or substances. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

Liquids or compounds used as solvents at the Former Nebraska Ordnance Plant include water, oil, petroleum distillate sometimes referred to as "Stoddard Solvent," soap solutions, acetone, and other compounds used to dissolve various types of materials.

**AMENDED ANSWER:**

The United States objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. The United States also objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory No. 16. The United States further objects to this Interrogatory as vague, ambiguous, and overbroad to the extent that the term "solvent" could encompass any substance that may potentially dissolve any other substance, including water, virtually any other liquid, and many compounds that degrade or separate other compounds or substances. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The United States has no information regarding the materials, including any solvents, used for degreasing (including without limitation vapor degreasing) at the Former Nebraska Ordnance Plant during the "post-World War II interim period".

**INTERROGATORY NO. 27:**

Identify and describe with specificity all materials, including any solvents, used for degreasing (including without limitation vapor degreasing) at the Nebraska Ordnance Plant during the Korean Conflict era (*i.e.*, June 1950 to June 1956).

**ANSWER:**

The United States objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. The United States also objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory No. 16. The United States further objects to this Interrogatory as vague, ambiguous, and overbroad to the extent that the term "solvent" could encompass any substance that may potentially dissolve any other substance, including water, virtually any other liquid, and many compounds that degrade or separate other compounds or substances. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

Liquids or compounds used as solvents at the Former Nebraska Ordnance Plant include water, oil, petroleum distillate sometimes referred to as "Stoddard Solvent," soap solutions, acetone, and other compounds used to dissolve various types of materials.

**AMENDED ANSWER:**

The United States objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. The United States also objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory No. 16. The United States further objects to this Interrogatory as vague, ambiguous, and overbroad to the extent that the term "solvent" could encompass any substance that may potentially dissolve any other substance, including water, virtually any other liquid, and many compounds that degrade or separate other compounds or substances. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

Water, oil, petroleum distillate sometimes referred to as "Stoddard Solvent," soap solutions, and possibly acetone and methanol, were used as solvents at the Former Nebraska Ordnance Plant during the "Korean Conflict era".

**INTERROGATORY NO. 28:**

Identify and describe with specificity all materials, including any solvents, used for degreasing (including without limitation vapor degreasing) at the Nebraska Ordnance Plant during the post-Korean Conflict interim period (*i.e.*, July 1956 to December 1959).

**ANSWER:**

The United States objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. The United States also objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory No. 16. The United States further objects to this Interrogatory as vague, ambiguous, and overbroad to the extent that the term "solvent" could encompass any substance that may potentially dissolve any other substance, including water, virtually any other liquid, and many compounds that degrade or separate other compounds or substances. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

Liquids or compounds used as solvents at the Former Nebraska Ordnance Plant include water, oil, petroleum distillate sometimes referred to as "Stoddard Solvent," soap solutions, acetone, and other compounds used to dissolve various types of materials.

**AMENDED ANSWER:**

The United States objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. The United States also objects to this Interrogatory to the extent that it duplicates interrogatories previously asked by General Dynamics and answered by the United States, including, but not limited to, General Dynamics Interrogatory No. 16. The United States further objects to this Interrogatory as vague, ambiguous, and overbroad to the extent that the term "solvent" could encompass any substance that may potentially dissolve any other substance, including water, virtually any other liquid, and many compounds that degrade or separate other compounds or substances. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The United States has no information regarding the materials, including any solvents, used for degreasing (including without limitation vapor degreasing) at the Former Nebraska Ordnance Plant during the "post-Korean Conflict interim period".

**INTERROGATORY NO. 29:**

Identify all individuals or entities who had authority to dispose of trichloroethylene at the Nebraska Ordnance Plant between December 1959 and present, and for each individual or entity, describe the basis on which such authority was derived, including without limitation what individual or entity provided such authority and how.

**ANSWER:**

The United States objects to this Interrogatory because "authority" is vague, ambiguous, and overbroad and because this Interrogatory covers numerous owners and operators across the entire Former Nebraska Ordnance Plant property, including long periods when the United States was neither an owner nor an operator. The United States also objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The United States is not aware of any individual or entity "who had authority to dispose of trichloroethylene" on the Former Nebraska Ordnance Plant property between December 1959 and the present date. The United States is of the belief that disposal on the Former Nebraska Ordnance Plant property was subject to the terms of contracts or subcontracts entered into by General Dynamics Corporation, H.K. Ferguson, Dow, and any other contractor or subcontractor at the Former Nebraska Ordnance Plant, and subject to the directions of authorized officials of those entities.

**AMENDED ANSWER:**

The United States objects to this Interrogatory because "authority" is vague, ambiguous, and overbroad and because this Interrogatory covers numerous owners and operators across the entire Former Nebraska Ordnance Plant property, including long periods when the United States was neither an owner nor an operator. The United States also objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The United States is not aware of any individual or entity "who had authority to dispose of trichloroethylene" on the Former Nebraska Ordnance Plant property between December 1959 and the present date.

**INTERROGATORY NO. 30:**

Identify all individuals or entities who had authority to direct Dow's work at the Nebraska Ordnance Plant, and for each individual or entity, describe the basis on which such authority was derived and the extent of such authority, including without limitation what individual or entity provided such authority and how.

**ANSWER:**

The United States objects to this Interrogatory because "authority" is vague, ambiguous, and overbroad. The United States also objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c), rather than propounding multiple requests for information as a single interrogatory. Subject to the objections set forth here and above, and without waiving the same, the United States answers as follows:

The United States is of the belief that the work performed by Dow on the Former Nebraska Ordnance Plant property was subject to the terms of contracts Dow entered into with other entities as a subcontractor, including General Dynamics Corporation, H.K. Ferguson, and any other entity with whom Dow entered into a contract involving such work, and subject to the directions of authorized officials of those entities.

I attest that the foregoing United States' Amended Answers to the Dow Chemical Company's First Set of Interrogatories are true and correct to the best of my knowledge.

| | |
|---|---|
| _11/15/2024__<br>Date | _/s/ Matthew Ward______<br>Matthew Ward<br>U.S. Army Corps of Engineers |
| _11/15/2024_<br>Date | _/s/ Wesley March_______<br>Wesley March<br>U.S. Environmental Protection Agency |

Objections by:

/s/ Frederick Phillips
Frederick Phillips (D.C. Bar No. 433729)
Environmental Enforcement Section
U.S. Department of Justice 202.305.0439
Frederick.phillips@usdoj.gov

# Exhibit C

**U.S. Department of Justice**
Environment and Natural Resources Division

DJ ## 90-11-2-07548/2, 90-11-6-22585

***Environmental Defense Section***
***P.O. Box 7611***
***Washington, D.C. 20044***

***Telephone (202) 514-0994***
***Daniel.Dertke@usdoj.gov***

September 16, 2024

**VIA EMAIL**

Frank G. Dylewski
Phillips Lytle LLP
161 North Clark Street, Suite 1700
Chicago, IL 60601-3342
fdylewski@phillipslytle.com

**Re: United States v. General Dynamics Corporation and Dow Chemical Company, Civil Action No. 8:23-cv-416 (D. Neb.)**

Dear Frank:

This letter responds to your September 9, 2024, letter to Fred Phillips regarding the United States' August 26, 2024, Responses to Dow's First Set of Document Requests ("RFPs") and Answers to Dow's First Set of Interrogatories ("Interrogatories"). Your letter raises two issues.

First, you ask whether the United States is withholding, or intends to withhold, any documents based on its objections to Dow's First Set of RFPs. As the United States has stated many times, including in the May 31 letter you reference, the United States has not withheld any documents on the basis of its objections and we presently do not plan to withhold any documents on the basis of those objections. This applies equally to Dow's RFPs as it does to GD's RFPs. We will inform GD and Dow should we decide to withhold any documents on the basis of our objections.

Second, you state that none of Dow's interrogatories are compound, and that the United States' objection that they are compound is "frivolous."

Before addressing your specific concerns regarding compound Interrogatories, I would like to follow up on your statement in footnote 1 of your letter that the United States should have met and conferred with Dow regarding the compound Interrogatories instead of responding to the Interrogatories subject to objections, and that in light of the United States' response Dow reserves the right to assert that the United States has waived its "compound" objection. Yet, in response to the United States' Interrogatories, Dow stated its objections but did not initiate a meet-and-confer. *See* Dow Chemical Company's Answers to the United States of America's First Set of Interrogatories (May 22, 2024). In light of Dow's response, subject to objections, has Dow waived its objections to the United States' Interrogatories?

Your letter also accuses the United States of providing "evasive and nonresponsive answers" to Dow's Interrogatories, which is not true. The United States' responses meet its obligations under the rules, but we are happy to discuss any specific concerns you may have.

Similarly, your letter accuses the United States of responding "subject to improper boilerplate objections." The United States's objections are not boilerplate. They are tailored to the specific problems with the Interrogatory to which they are made. The fact that many of Dow's Interrogatories raise the same problem and thus draw the same objection does not make that objection boilerplate. For example, Dow provided an identical, word-for-word response to the United States' Interrogatories 3, 4, 6-7, and 10-20 to Dow. Changing only the Interrogatory number, Dow objected that each Interrogatory "is a premature contention interrogatory in light of the fact that discovery in this matter is in its very early stages." The United States takes issue with the substance of Dow's objection, as explained in a letter dated August 23, 2024. But by your logic, Dow's own objections would also be improper boilerplate.

On the substance, the United States' "compound" objection is hardly frivolous. Your letter states that the United States "failed to provide any explanation as to why it believes that these interrogatories are compound, or how many 'subparts' it contends each interrogatory includes." I question whether an objection that an Interrogatory is compound must recite those details in order to "specify" the objection's grounds, especially since the compound nature of many of Dow's Interrogatories is evident. Under the local rules, each inquiry seeking a discrete item of information is counted as one interrogatory. *See* LR 33.1(c). The local rules go on to provide the following example of a question that is counted as 3 interrogatories: "Please state the name, address, and telephone number of any witness to the accident set forth in the complaint."

Nonetheless, I am happy to walk through each of Dow's Interrogatories to which the United States objected on the basis that it is compound, i.e., Interrogatories 2, 7-18, and 21-30.

**INTERROGATORY NO. 2:** Describe, including by identifying all Persons with relevant knowledge or information, all steps You have taken to address (including by investigating, monitoring, removing, remediating, or mitigating) any contamination or threats of such contamination that You contend is or may be the basis for imposing liability on Dow in this lawsuit and the date(s) such steps were taken.

In summary, this asks the United States to identify persons with knowledge of the United States's steps to address contamination, and the date each step was taken. Under the local rules, that is counted as two interrogatories.

**INTERROGATORY NO. 7:** Identify and describe with specificity the activities that took place at the Nebraska Ordnance Plant, including without limitation the types of ordnance manufactured, assembled, stored, maintained, and/or cleaned during the World War II era (*i.e.*, January 1, 1941 to November 28, 1945) and including the dates of such manufacture, assembly, storage, maintenance, cleaning, and/or other activities.

In summary, this asks the United States to identify the activities that took place at the NOP, such as manufacturing ordnance, and the dates when such activities occurred. Under the local rules, that is counted as two interrogatories.

Interrogatories 8-10 are identical to Interrogatory 7 but with different timeframes. They are compound for the same reason as Interrogatory 7.

**INTERROGATORY NO. 11:** Identify all ordnance plants owned or operated by the United States that were contaminated with trichloroethylene (*e.g.*, where trichloroethylene has been detected in the ground, groundwater, bedrock, or elsewhere in the environment) during the World War II era (*i.e.*, January 1, 1941 to November 28, 1945).

In summary, this asks the United States to identify the ordnance plants it owned during a specific timeframe, and the ordnance plants it operated during the same timeframe. Ownership and operation are distinct concepts, particularly under CERCLA. Under the local rules, that is counted as two interrogatories.

Interrogatories 12-14 are identical to Interrogatory 11 but with different timeframes. They are compound for the same reason as Interrogatory 11.

**INTERROGATORY NO. 15:** For each ordnance plant identified in response to Interrogatory No. 11, identify and describe with specificity the activities that took place, including without limitation the types of ordnance manufactured, assembled, stored, maintained, and/or cleaned, and including the dates of such manufacture, assembly, storage, maintenance, cleaning, and/or other activities, during the World War II era (i.e., January 1, 1941 to November 28, 1945).

As with Interrogatories 7-10, this in summary asks the United States to identify the activities that took place at ordnance plants, such as manufacturing ordnance, and the dates when such activities occurred. Under the local rules, that is counted as two interrogatories.

Interrogatories 16-18 are identical to Interrogatory 15 but with different timeframes. They are compound for the same reason as Interrogatory 15.

**INTERROGATORY NO. 21:** Identify and describe with specificity all steps taken by Plaintiff to investigate whether trichloroethylene was used and/or disposed of at the Nebraska Ordnance Plant during the World War II era (*i.e.*, January 1, 1941 to November 28, 1945), including without limitation the identities of individuals who were contacted as part of or otherwise participated in any such investigation, and identify and describe any and all documents consulted.

In summary, this asks the United States to identify the steps the United States took to investigate TCE use during a certain timeframe, and/or TCE disposal during the same timeframe, the people the United States contacted, and the documents the United States consulted. Under the local rules, that is counted as six interrogatories: steps to investigate TCE use, people contacted to investigate TCE use, documents consulted to investigate TCE use, steps to investigate TCE disposal, people contacted to investigate TCE disposal, and documents consulted to investigate TCE disposal.

Interrogatories 22-24 are identical to Interrogatory 21 but with different timeframes. They are compound for the same reason as Interrogatory 21.

**INTERROGATORY NO. 25:** Identify and describe with specificity all materials, including any solvents, used for degreasing (including without limitation vapor degreasing) at the Nebraska Ordnance Plant during the World War II era (*i.e.*, January 1, 1941 to November 28, 1945).

Upon further consideration in light of your letter, the United States withdraws its objection that Interrogatory 25 is compound.

Interrogatories 26-28 are identical to Interrogatory 25 but with different timeframes. The United States likewise withdraws its objection that these interrogatories are compound.

**INTERROGATORY NO. 29:** Identify all individuals or entities who had authority to dispose of trichloroethylene at the Nebraska Ordnance Plant between December 1959 and present, and for each individual or entity, describe the basis on which such authority was derived, including without limitation what individual or entity provided such authority and how.

In summary, this asks the United States to identify individuals with authority to dispose of TCE during a certain timeframe, to identify the basis for that authority, to identify who provided that authority, and to identify how that authority was provided. In addition, this asks the same four questions for entities with authority to dispose of TCE during a certain timeframe. Under the local rules, that is counted as eight interrogatories.

**INTERROGATORY NO. 30:** Identify all individuals or entities who had authority to direct Dow's work at the Nebraska Ordnance Plant, and for each individual or entity, describe the basis on which such authority was derived and the extent of such authority, including without limitation what individual or entity provided such authority and how.

In summary, this asks the United States to identify individuals with authority to direct Dow's work, to identify the basis for that authority, to identify the extent of that authority, to identify who provided that authority, and to identify how that authority was provided. In addition, this asks the same five questions for entities with authority to direct Dow's work. Under the local rules, that is counted as ten interrogatories.

Thus, Dow's Interrogatories 2, 7-18, 21-24, and 29-30 are compound. Under the local rules, Dow has propounded a total of 79 interrogatories.

Thank you,

s/*Daniel R. Dertke*
USDOJ/ENRD/EDS
Daniel.Dertke@usdoj.gov

cc: Steven D. Davidson (sdavidson@bairdholm.com)
Lindsay K. Lundholm (llundholm@bairdholm.com)

Wade A. Thomson (WThomson@jenner.com)
Steven M. Siros (ssiros@jenner.com)
Sarah L Futernick (SFuternick@jenner.com)
Stephanie B. Sebor (SSebor@jenner.com)
Hope H. Tone O'Keefe (HToneOKeefe@jenner.com)
Rachel Foster (rfoster@jenner.com)
Joel A. Blanchet (jblanchet@phillipslytle.com)
Jaran R. Moten (JMoten@phillipslytle.com)
Jeremy M. Amar-Dolan (jamar-dolan@phillipslytle.com)
Michael L. Moran (mmoran@mcgrathnorth.com
William F. Hargens (whargens@mcgrathnorth.com)

Frederick S. Phillips (Frederick.Phillips@usdoj.gov)
Charles Fletcher (Charles.Fletcher@usdoj.gov)
Mark Elmer (Mark.Elmer@usdoj.gov)
Erin M. Davis (Erin.Davis@usdoj.gov)
Ann L. Wright (Ann.L.Wright@usace.army.mil)
Jared D. Bustamante (Jared.D.Bustamante@usace.army.mil)
Jared Pessetto (Pessetto.Jared@epa.gov)
Catherine Chiccine (Chiccine.Catherine@epa.gov)

# Exhibit D

**U.S. Department of Justice**
Environment and Natural Resources Division

DJ ## 90-11-2-07548/2, 90-11-6-22585

***Environmental Defense Section***
***P.O. Box 7611***
***Washington, D.C. 20044***

***Telephone (202) 514-0994***
***Daniel.Dertke@usdoj.gov***

October 9, 2024

**VIA EMAIL**

Frank G. Dylewski
Phillips Lytle LLP
161 North Clark Street, Suite 1700
Chicago, IL 60601-3342
fdylewski@phillipslytle.com

**Re: United States v. General Dynamics Corporation and Dow Chemical Company, Civil Action No. 8:23-cv-416 (D. Neb.)**

Dear Frank:

This letter responds to your October 2, 2024, letter regarding the United States' answers to Dow's First Set of Document Requests and First Set of Interrogatories. Your October 2 letter replied to my September 16 letter, which in turn was in response your September 9 letter on this same subject. Your October 2 letter disputes the United States' position that Dow's interrogatories are compound, and seeks amended responses to certain of those interrogatories.

First, neither the United States' answers to Dow's interrogatories, nor my September 16 letter, are a "gambit," "flippant," or made in "bad faith" as your October 2 letter asserts. Your September 9 letter similarly asserted that the United States provided "evasive" answers to Dow's interrogatories. These are grave accusations. The United States takes its discovery obligations seriously, and addresses any dispute in good faith. I assume Dow does as well. I ask that you withdraw your statement on page 2 of your October 2 letter that the United States has engaged in "bad faith discovery conduct."

Second, you assert that the United States failed to address "the guiding case law cited in" your September 9 letter. That caselaw appears to be *Precision of New Hampton, Inc. v. TriComponent Prod. Corp.*, No. CV12-2020, 2012 WL 6520139, at *2 (N.D. Iowa Dec. 13, 2012), noting that "[c]ourts have struggled with finding a workable method to determine if a 'subpart' is properly counted as an additional interrogatory," and that subparts count as one interrogatory "if they are logically or factually subsumed within and necessarily related to the primary question." (Citation omitted.)

The United States agrees that it is not always clear when a subpart counts as a separate interrogatory. The United States also agrees that a common test is whether a subpart is subsumed within and necessarily related to the primary question. *See also* Local Rule 33.1(c).

My September 16 letter explains why Dow's Interrogatories 2, 7-18, and 21-30, have distinct subparts that are neither subsumed within nor necessarily related to each other or to the primary question.

For example your October 2 letter again points to Interrogatory 11, which asks the United States to identify the ordnance plants it owned during a specific timeframe, and the ordnance plants it operated during the same timeframe. My September 16 letter explained that ownership and operation are distinct concepts, particularly under CERCLA. Your October 2 letter complains that the United States fails "to provide any precedent supporting such a position." A leading case is *United States v. Bestfoods*, 524 U.S. 51, 65 (1998) ("Under the plain language of the statute, any person who operates a polluting facility is directly liable for the costs of cleaning up the pollution. See 42 U.S.C. § 9607(a)(2). This is so regardless of whether that person is the facility's owner … .").

Third, you state that "many" of the United States' interrogatories to Dow are "similar in form to Dow's" interrogatories, and that the United States' failure to explain why its own interrogatories are not compound is "telling." The United States carefully drafted its interrogatories to comply with the local rules and to avoid compound interrogatories. If Dow believes that the United States' interrogatories are compound, then Dow should object on that basis. Yet Dow has not done so, either in its May 22 response or in its October 9 supplemental response.

Fourth, you state that even if Dow's interrogatories are compound and do contain discrete subparts, there is no increased burden on the United States because the United States responded to many of Dow's interrogatories that it has no knowledge. This has it backwards. Discovery can still be excessive even if the answering party has no knowledge. The burden from excessive discovery requests comes from the need to respond to those requests, regardless of what the substantive response is. Under your argument, a party could propound any number of requests without creating undue burden, so long as the answer to each request is that the responding party has no information.

Fifth, you cite numerous cases discussing waiver of a party's objection that the number of interrogatories exceeded the allowed limit. A common thread running through these cases is that the objecting party attempted to selectively answer only certain interrogatories. Courts correctly reject that tactic. For example, in *Paananen v. Cellco P'ship*, No. CO8-1042, 2009 WL 3327227, at *4 (W.D. Wash. Oct. 8, 2009), Verizon partially answered several interrogatories and stated that it would not answer the other subparts of those interrogatories because the plaintiff had exceeded the limit. The court held that "the responding party is not free to choose the interrogatories to which it will respond. Such a rule would allow the responding party to 'selectively respond to the interrogatories and thereby strategically omit the most prejudicial information.'" *Id.*; *see also Knit With v. Knitting Fever, Inc.*, No. 08-4221, 2010 WL 11474937, at *1 n.2 (E.D. Pa. Jan. 22, 2010) ("it remains established that if a party selectively answers interrogatories, it has waived its objections [under Rule 33(a)] as to the remaining interrogatories"); *Capacchione v. Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 493 (W.D.N.C. 1998) ("the responding party is not entitled to randomly select which of the twenty interrogatories it will answer"); *Herdlein Techs., Inc. v. Century Contractors, Inc.*, 147 F.R.D. 103, 104–05 (W.D.N.C. 1993) (Herdlein "answered selective interrogatories" and "if the Court were to allow Herdlein—the responding party—to answer certain interrogatories and then object

that the total number of interrogatories exceeds the limit of twenty, the Court essentially would be allowing Herdlein to determine for itself what information to reveal.").

That is not true here. The United States did not select which of Dow's interrogatories to answer. The United States answered each and every interrogatory, including all of the subparts.

The United States stands by its count of the number of interrogatories that Dow has served, although, as noted above, the United States recognizes that "there is often a question of when an interrogatory which asks multiple questions or contains multiple subparts is in fact multiple interrogatories rather than one." *Paananen*, 2009 WL 3327227, at *2. The United States therefore reserves the right to object and seek a protective order if Dow propounds further interrogatories.

Finally, the United States is still reviewing the concerns you raised regarding the United States' responses to specific interrogatories, and is endeavoring to respond as soon as possible.

Thank you,

s/*Daniel R. Dertke*
USDOJ/ENRD/EDS
Daniel.Dertke@usdoj.gov

cc: Steven D. Davidson (sdavidson@bairdholm.com)
Lindsay K. Lundholm (llundholm@bairdholm.com)
Wade A. Thomson (WThomson@jenner.com)
Steven M. Siros (ssiros@jenner.com)
Sarah L Futernick (SFuternick@jenner.com)
Stephanie B. Sebor (SSebor@jenner.com)
Hope H. Tone O'Keefe (HToneOKeefe@jenner.com)
Rachel Foster (rfoster@jenner.com)
Joel A. Blanchet (jblanchet@phillipslytle.com)
Jaran R. Moten (JMoten@phillipslytle.com)
Jeremy M. Amar-Dolan (jamar-dolan@phillipslytle.com)
Michael L. Moran (mmoran@mcgrathnorth.com
William F. Hargens (whargens@mcgrathnorth.com)

Frederick S. Phillips (Frederick.Phillips@usdoj.gov)
Mark Elmer (Mark.Elmer@usdoj.gov)
Erin M. Davis (Erin.Davis@usdoj.gov)
Ann L. Wright (Ann.L.Wright@usace.army.mil)
Jared D. Bustamante (Jared.D.Bustamante@usace.army.mil)
Jared Pessetto (Pessetto.Jared@epa.gov)
Catherine Chiccine (Chiccine.Catherine@epa.gov)

# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff and Counter-Defendant,<br><br>v.<br><br>GENERAL DYNAMICS CORPORATION<br><br>and<br><br>DOW CHEMICAL COMPANY,<br><br>Defendants and Counterclaimants. | CIVIL ACTION NO. 8:23-cv-00416 |

**UNITED STATES' ANSWERS TO**
**DOW CHEMICAL COMPANY'S SECOND SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Local Rule 33.1 of the District of Nebraska, and the Protective Order and Discovery Order entered in this action (ECF Nos. 32, 41), the United States of America answers the Dow Chemical Company's Second Set of Interrogatories ("Interrogatories"). The United States' Answers represent the United States' current state of knowledge based on investigation and trial preparation to date, and the United States reserves the right to amend and/or supplement these Answers as appropriate to reflect different or additional responsive information that may be obtained during this litigation, or if there are changes in the relevance, significance, or applicability of the information now known.

The United States does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of its responses into evidence in this or any other action or proceedings. Further, the United States provides these Answers, as well as its objections herein,

without implying that it considers the Interrogatories to be relevant or material to the subject matter of this action.

**GENERAL OBJECTION**

The United States objects to the instructions and definitions in the Interrogatories to the extent that they seek to impose obligations that exceed the requirements of the Federal Rules of Civil Procedure; the Local Rules of this Court, specifically NECivR 33.1(b) and 33.1(c); and the orders entered in this case. The United States will respond to the Interrogatories consistent with the requirements of those rules and orders and with relevant caselaw.

**SPECIFIC OBJECTIONS**

The United States objects to Instruction A, which states that, unless otherwise specified, each Interrogatory relates to, covers, and requests information for the period of 1941 through the present. This instruction is overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks information covering more than 80 years, most of which is not relevant to the events at issue in this case.

The United States objects to Instruction H, which defines "Identify," when used in reference to an individual Person, to mean to state the Person's full name, address or last known address, telephone number, present employment position, and business affiliation. This instruction requests multiple pieces of information that are properly the subject of discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c).

The United States objects to Instruction I, which defines "Identify," when used in reference to a request for facts or information, to mean (1) to state the facts and information that support or otherwise relate to the Interrogatory, and (2) to identify Persons with knowledge of the facts that support or otherwise relate to the Interrogatory. In addition, read in conjunction with Instruction

H, Instruction I requires the United States to provide the names, addresses, telephone numbers, employment positions, and business affiliations of any Persons with knowledge of the facts that support or otherwise relate to the Interrogatory. This instruction is overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information already sought by the Interrogatories themselves. Specifically, the instruction requests both (1) facts and information, and (2) persons with knowledge about those facts and information, when these requests are properly the subject of discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c).

In addition to the foregoing, the United States objects to the Instructions to the extent that the Instructions request information that is properly the subject of a discrete interrogatory pursuant to NECivR 33.1(b) and 33.1(c), which mandate that interrogatory subparts be set forth as separate interrogatories.

## INTERROGATORIES

**INTERROGATORY NO. 31:**

Identify and Describe each individual that was part of the "PRP Team," including without limitation their name, title, scope of involvement with the PRP Team, responsibilities related to the PRP Team, and the beginning and end date of each individual's tenure on the PRP Team. For the avoidance of doubt, "PRP Team" is the team described in various documents produced by the Government (*see, e.g.*, Exhibit A, EPA_0202946-EPA_0202953 at EPA_0202948; Exhibit B, EPA_1647832; Exhibit C, EPA_1648215).

**ANSWER:** The United States objects to this Interrogatory as an improper compound interrogatory that properly should be stated as discrete Interrogatories pursuant to NECivR. 33.1(c). Subject to this objection and the objections stated above, the United States responds that the USACE Kansas City District employees listed below were assigned to the FUDS PRP Project for the Former Nebraska Ordnance Plant. These employees were attorneys and other staff who assisted counsel for the United States on legal matters related to the claims in this litigation.

- Catherine Sanders, attorney, USACE, formerly employed by the Kansas City District (1990s to 2012);
- Bertie Smisek, attorney, USACE, retired, Kansas City District (2012 to 2016);
- Jennifer Hackman, attorney, USACE, formerly employed by the Kansas City District (2017 to 2018);
- Wendy Lynn, attorney, USACE, formerly employed by the Kansas City District (2019 to 2020);
- Andrea Thueme, attorney, USACE, formerly employed by the Kansas City District (2020 to 2023);
- Emma Altheide, attorney, USACE, formerly employed by the Kansas City District (2023);
- Jared Bustamante, attorney, USACE, employed by the Kansas City District (2023 to date);
- Matthew Ward, Chief, Remediation Section, Environmental Programs Branch, USACE, Kansas City District, and Project Manager (2013 to 2019, 2023 to date);
- Andrew Gosnell, Chief, Hydrogeology Section, Engineering Branch, USACE, Kansas City District (2013 to date);
- Molly Boughan, Project Manager, USACE, formerly employed by the Kansas City District (2023);
- Gary Richards, Project Manager, USACE, Kansas City District (2020 to 2023);
- Glenn Tisdale, Project Manager, USACE, retired, Kansas City District (2009 to 2012);
- Edward Kost, Project Manager, USACE, retired, Kansas City District (late 1990s to 2007).

I attest that the foregoing United States' Answer to General Dynamics Corporation's Interrogatory No. 31 is true and correct to the best of my knowledge.

12/4/2024
Date

/s/ Matthew Ward
Matthew Ward
U.S. Army Corps of Engineers

Objections by:

/s/ Frederick Phillips
Frederick Phillips (D.C. Bar No. 433729)
Environmental Enforcement Section
U.S. Department of Justice 202.305.0439
Frederick.phillips@usdoj.gov

# Exhibit F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff and Counter-Defendant,<br><br>v.<br><br>GENERAL DYNAMICS CORPORATION<br><br>and<br><br>DOW CHEMICAL COMPANY,<br><br>Defendants and Counterclaimants. | CIVIL ACTION NO. 8:23-cv-00416 |

**UNITED STATES' AMENDED ANSWERS TO DOW CHEMICAL COMPANY'S THIRD SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Local Rule 33.1 of the District of Nebraska, and the Protective Order and Discovery Order entered in this action (ECF Nos. 32, 41), the United States of America answers Dow Chemical Company's Third Set of Interrogatories ("Interrogatories"). The United States' Answers represent the United States' current state of knowledge based on investigation and trial preparation to date, and the United States reserves the right to amend and/or supplement these Answers as appropriate to reflect different or additional responsive information that may be obtained during this litigation, or if there are changes in the relevance, significance, or applicability of the information now known.

The United States does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of its responses into evidence in this or any other action or proceedings. Further, the United States provides these Answers, as well as its objections herein, without implying that it considers the Interrogatories to be relevant or material to the subject

matter of this action.

**GENERAL OBJECTION**

The United States objects to the instructions and definitions in the Interrogatories to the extent that they seek to impose obligations that exceed the requirements of the Federal Rules of Civil Procedure; the Local Rules of this Court, specifically NECivR 33.1(b) and 33.1(c); and the orders entered in this case. The United States will respond to the Interrogatories consistent with the requirements of those rules and orders and with relevant caselaw.

**SPECIFIC OBJECTIONS**

The United States objects to Instruction A, which states that, unless otherwise specified, each Interrogatory relates to, covers, and requests information for the period of 1941 through the present. This instruction is overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks information covering more than 80 years, most of which is not relevant to the events at issue in this case.

The United States objects to Instruction H, which defines "Identify," when used in reference to an individual Person, to mean to state the Person's full name, address or last known address, telephone number, present employment position, and business affiliation. This instruction requests multiple pieces of information that are properly the subject of discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c).

The United States objects to Instruction I, which defines "Identify," when used in reference to a request for facts or information, to mean (1) to state the facts and information that support or otherwise relate to the Interrogatory, and (2) to identify Persons with knowledge of the facts that support or otherwise relate to the Interrogatory. In addition, read in conjunction with Instruction H, Instruction I requires the United States to provide the names, addresses, telephone numbers,

employment positions, and business affiliations of any Persons with knowledge of the facts that support or otherwise relate to the Interrogatory. This instruction is overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information already sought by the Interrogatories themselves. Specifically, the instruction requests both (1) facts and information, and (2) persons with knowledge about those facts and information, when these requests are properly the subject of discrete interrogatories pursuant to NECivR 33.1(b) and 33.1(c).

In addition to the foregoing, the United States objects to the Instructions to the extent that the Instructions request information that is properly the subject of a discrete interrogatory pursuant to NECivR 33.1(b) and 33.1(c), which mandate that interrogatory subparts be set forth as separate interrogatories.

## AMENDED RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 32:**

Identify and describe with specificity each instance that a Dow employee physically released trichloroethylene into the environment at the Nebraska Ordnance Plant, including the dates, specific locations, and manner of those releases.

**ANSWER:** The United States objects to Interrogatory No. 32 as vague, ambiguous, and overbroad to the extent the term "physically released" could refer to any form of release to the environment as defined in CERCLA § 105(22). Further, the United States objects that Interrogatory No. 32 is a compound interrogatory. Subject to these objections and the objections stated above, the United States responds that Dow physically released TCE into the environment at or near the temporary building placed and operated by Dow at the north end of the Load Line 1 area of the Former Nebraska Ordnance Plant property between 1960 and 1964. In addition, Dow physically released TCE into the environment at or near the Atlas Missile Launch facilities on the Former Nebraska Ordnance Plant property and may have released TCE into the environment at other locations on the

Former Nebraska Ordnance Plant property. Dow is in a better position than the United States to provide more specificity as to the manner, dates, and locations of its releases of TCE into the environment at the Former Nebraska Ordnance Plant property.

**AMENDED ANSWER:** The United States objects to Interrogatory No. 32 as vague, ambiguous, and overbroad to the extent the term "physically released" could refer to any form of release to the environment as defined in CERCLA § 105(22). Further, the United States objects that Interrogatory No. 32 is a compound interrogatory. Subject to these objections and the objections stated above, the United States responds that Dow physically released TCE into the environment at or near the temporary building placed and operated by Dow at the north end of the Load Line 1 area of the Former Nebraska Ordnance Plant property between 1960 and 1964. In addition, Dow physically released TCE into the environment at or near the Atlas Missile Launch facilities on the Former Nebraska Ordnance Plant property. The United States does not currently possess information regarding the specific dates or manner of those releases. Dow is in a better position than the United States to provide more specificity as to the manner, dates, and locations of its releases of TCE into the environment at the Former Nebraska Ordnance Plant property.

I attest that the foregoing United States' Amended Answer to Dow Chemical Company's Interrogatory No. 32 is true and correct to the best of my knowledge.

| | |
|---|---|
| 1/17/2025<br>Date | */s/ Matthew Ward*<br>Matthew Ward<br>U.S. Army Corps of Engineers |
| 1/17/2025<br>Date | */s/ Wesley March*<br>Wesley March<br>U.S. Environmental Protection Agency |
| Objections by: | */s/ Frederick Phillips*<br>Frederick Phillips (D.C. Bar No. 433729)<br>Environmental Enforcement Section<br>U.S. Department of Justice 202.305.0439<br>Frederick.phillips@usdoj.gov |