**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff and Counter-Defendant,<br><br>v.<br><br>GENERAL DYNAMICS CORPORATION<br><br>and<br><br>DOW CHEMICAL COMPANY,<br><br>Defendants and Counterclaimants. | CIVIL ACTION NO. 8:23-cv-00416 |

# DECLARATION OF MICHAEL D. ROWE

I, Michael D. Rowe, do hereby state and declare as follows:

1. I am an Associate Deputy General Counsel assigned to the Environment, Energy and Installations Section in the Office of the General Counsel ("OGC") for the Department of War ("DoW"). I am licensed to practice law in Virginia and the District of Columbia. Following several years in private practice, I joined the Environmental Defense Section within what was then known as the Land and Natural Resources Division (currently the Energy and Natural Resources Division) ("ENRD") at the Department of Justice ("DOJ") in December 1985. I worked in that job continuously until June of 2020, when I transferred into my current position.

2. DoW was recently advised that that DOJ required assistance obtaining and producing documents from the Defense Technology Information Center ("DTIC"). DoW OGC agreed that it would take on the task of locating and producing documents directly, as quickly and efficiently as practicable. I am responsible for the coordination of that effort.

**The DTIC Collection**

3. Prior to making the commitment referenced in Paragraph 2, I was unfamiliar with the DTIC repository. Upon inquiry, I am informed that DTIC houses reports and other documents recording scientific and technical information produced as part of DoW research and engineering activities.

4. Several aspects of DTIC's collection are material with regard to any effort to collect documents for the present litigation. The following characteristics have been explained to me by the professional staff:

a. Like many archives, DTIC is in the process of digitizing its collection. Approximately half of the documents in the repository have been scanned and run through the optical character recognition systems required to render them full text searchable. Most of the remainder of the collection that is stored on microfilm or microfiche.

b. For documents that have been digitized and for those held on film and fiche, DTIC maintains a database of finding aids that record what we would today refer to as meta-data, generally including a brief abstract of subjects addressed in the underlying document. This system is also text searchable.

c. The Archive contains two tranches of documents that are substantially beyond the reach of these systems: A set of approximately 200,000 documents known as the "Air Technical Information collection" ("ATI collection"), which contains documents generated no later than 1953, and approximately 37,000 paper documents from many different organizations within the DOW. DoW

has not been asked to search for, or to recover, documents in these portions of the collection.

5. Documents at DTIC fall into three basic categories: 1) Documents that are made available to the public; 2) documents that are controlled unclassified information, or "CUI;" and 3) materials that remain classified for national security reasons. In each case, some of the records will be digitized, and some will not. Apart from materials referenced in Paragraph 4(c), the meta-data for all three categories is text searchable.

**Search Terms**

6. Initial evaluation of the magnitude of the required production involved running search terms against full text (as available) and meta-data (including abstracts) to ascertain the number of documents in various categories that will need to be addressed.

7. Shortly after DoW agreed to take on production efforts, I was provided with a worksheet containing approximately 80 queries, which DOJ requested that we run immediately against DTIC's collection to obtain a preliminary read on the size of the relevant document set.

8. However, the professional staff at DTIC promptly recommended a restructuring using the same search terms to generate revised queries meant to produce a group of responsive documents that was both more comprehensive and more refined. Staff provided a worksheet recording the adjustments that they suggested, and these revised queries were run against the collection from that point forward. Staff's recording of the changes made is attached as Addendum 1.

**Potentially Responsive Documents**

9. The revised search terms produced the following document counts across the various categories of documents in the available document set:

| Public | | Controlled (CUI) | | Classified | |
|---|---|---|---|---|---|
| Digitized | Non-Digitized | Digitized | Non-Digitized | Digitized | Non-Digitized |
| 1146 | 27 | 1685 | 236 | 376 | 118 |

These initial hit counts are approximate, because a limited number of documents will not be recovered in global queries as the result of materials improperly recorded across systems meant to distinguish between classified and unclassified material. DTIC staff will correct for the issue, and estimates that the number of documents in each instance would likely increase by no more than ten percent.

10. Two aspects of the document collection will complicate efforts to gather and produce DTIC documents. First, as noted in Paragraph 4, the non-digitized documents are stored on once-prevalent micro-film or micro-fiche. These documents in their present format can only be examined one page at a time, by one individual on dedicated device. Second, a significant amount of the potentially responsive document set is controlled (CUI) or classified – an issue that will have to be addressed before documents can be produced to the Defendants.

11. DoW expects to resolve these issues as follows:

a. First, we have consulted with the DTIC staff and with Defense Logistics Agency officials (the latter relative to contracting requirements) and are in the process of hiring a contractor that can provide high-speed scanning of potentially responsive information stored on film or fiche.

b. Second, I have contacted and am working with an Air Force Information Security Program Manager on the CUI issues. Though not available to the public, these materials are more readily cleared for production than classified files. In general, the documents may be released to anyone seeking them for a lawful government purpose. They are coded based on their status and the

reasons for their sensitivity, and preliminary indications are that because: 1) many of the documents are coded for access by the Government and its Contractors; and 2) any production may be made subject to the Court's existing protective order, we are likely to be able to release much or all of the material to the Plaintiffs with only limited further review, and that document by document consideration will not be required.

c. Assuming that the effort noted in sub-paragraph (b) is successful, DoW will then forward at least a large portion of the now fully digitized CUI set, to DOJ for production to the Defendants.

12. The classified documents, though they occur in smaller numbers, are likely the most difficult problem relative to a prompt resolution of the DTIC issue. For reasons addressed in more detail in AFDO Director Sara MacLeod's declaration submitted with the Government's *Motion for Leave to Submit Evidence in Support of its Objections to Magistrate Judge Nelson's Orders*, No. # 484-2 ("*MacLeod Dec.*"), we have very limited means to accelerate the declassification process.

13. Uncertainty about the character of the classified documents – which by definition we have not reviewed as yet – means that any attempt to set or predict a completion date at this time is little more than educated speculation. Some documents may be released in their entirety. Some may need to remain classified. Some might contain a mix of responsive information that can be produced, and highly sensitive material that must remain classified. If there are multiple documents in the latter category, if those documents tend to be lengthy, and particularly if they must be circulated to other federal agencies with "equities" before being redacted and released, *see MacLeod Dec.* ¶ 13, progress will slow for reasons that we cannot control or ignore.

14. In the interest of avoiding time-consuming declassification review of non-responsive documents, we will not send all of the approximately 500 classified documents that respond to the search terms directly to AFDO. We will instead use cleared personnel to review the classified documents identified by the search terms for responsiveness, removing those that are non-responsive from the review process before sending the remainder for declassification review.

15. I have already advised Ms. MacLeod, the Director of the Air Force Declassification Office, that her team should stand ready to review additional documents shortly. Upon completion of the responsiveness review described in Paragraph 14, the surviving document set will be forwarded to AFDO for review and declassification as warranted. Those that can be released in whole or in part will be forwarded to DOJ for production to the Defendants.

**Timelines & Scheduling**

16. I am advised that the Court has requested timelines for the various aspects of the supplemental production for scheduling purposes. Because we have only recently undertaken the effort to locate and produce DTIC documents, my ability to accommodate that request at present is limited. I am, however, happy to provide the information that I have available, and I will update the Government's trial team as we gain more information that would inform the timeline. The information below is based on my current understanding of the resources available and the tasks required to complete production of DTIC-related documents.

17. The initial collection of public digitized documents is already underway. Based on current information, I estimate the responsive documents (nearly one-third of the collection

responding to the search terms) can be delivered to the Defendants in approximately two to three weeks.

18. The production date for the CUI documents is uncertain in the short term but should be resolved relatively quickly. If we make an optimistic assumption that the issues with those documents can be overcome, the nearly 1700 additional documents marked CUI and stored digitally – or at least a significant majority of them – can probably be produced in a second round that would take only a few additional weeks following the production of the public digitized documents. I am currently consulting as described in Paragraph 11(b) about what can be done, about whether a direct transfer of digitized CUI materials can be made from DTIC to that office for review by a new automated tool, and about whether doing so is likely to accelerate ultimate production of the documents.

19. The total number of non-digitized public and CUI documents responding to the search terms is modest – less than 10% of the document set. Our ability to process those documents will depend significantly on how quickly a contractor like that discussed in Paragraph 11(a) can be secured, on the queue depth relative to other materials awaiting scanning, and on our ability to jump that queue. We already have Senior Executive Service level attention focused on the contracting issue, and I have confirmed informally that funds are available. I am uncertain about precisely how long the process will take. I am, however, relatively confident that his approach will be faster than manual review, followed by copying out film or fiche page by page and scanning prior to creating load files.

20. The classified document timeline is a Rumsfeldian known unknown at present. We are preparing to have cleared personnel visit Ft. Belvoir (home of the DTIC facility) to conduct a responsiveness review of the classified documents identified using the search terms

described above. I am hopeful that the review will begin within a week or two, and that we will be in a better position to predict a completion date within approximately 30 days.

** ** **

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is, to the best of my knowledge, true and correct. Executed this 1st day of September 2026.

ROWE.MICHAEL.D.1591447994 Digitally signed by ROWE.MICHAEL.D.1591447994 Date: 2026.09.01 19:19:33 -04'00'

Michael D. Rowe
Associate Deputy General Counsel
Environment, Energy and Installations

| num | terms | revision |
|---|---|---|
| 42 | "TCE" AND "Atlas D" | "atlas D" and (tce or Trichloroethylene or tric or trik or rocketdyne or offutt) |
| 16 | "Dual Propellant Loading" | "Dual Propellant Loading" |
| 8 | "Malan Construction" | "Malan Construction" |
| 79 | "MX-1593" | "MX-1593" |
| 10 | "Nebraska Ordnance Plant" | "Nebraska Ordnance Plant" |
| 17 | "Offutt" AND "Golden Ram" | "Offutt" AND "Golden Ram" |
| 78 | "Project Atlas" | "Project Atlas" |
| 36 | "Propellant Loading System" AND Offutt | "Propellant Loading System" AND (Offutt or atlas or rocketdyne) |
| 4 | "SMS 566" | ("SMS 566" or "566 SMS" or "SMS 549" or "549 SMS") |
| 1 | "Wahoo Nebraska" | ("Wahoo Nebraska" or "Wahoo NE" or "Mead NE" or "Mead Nebraska") |
| 2 | "Wahoo NE" | in 1 |
| 3 | "Mead NE" | in 1 |
| 20 | ~~"Wahoo Nebraska" AND "Personnel"~~ | in 1 |
| 21 | ~~"Wahoo NE" AND "Personnel"~~ | in 1 |
| 22 | ~~"Mead Nebraska" AND "Personnel"~~ | in 1 |
| 23 | ~~"Mead NE" AND "Personnel"~~ | in 1 |
| 25 | ~~"Degreasing" AND "Mead NE"~~ | in 1 |
| 26 | ~~"Degreasing" AND "Mead Nebraska"~~ | in 1 |
| 27 | ~~"PLS" AND "Wahoo NE"~~ | in 1 |
| 28 | ~~"PLS" AND "Wahoo Nebraska"~~ | in 1 |
| 43 | "TCE" AND "Mead NE" | in 1 |
| 44 | "TCE" AND "Mead Nebraska" | in 1 |
| 45 | "TCE" AND "Wahoo Nebraska" | in 1 |
| 50 | "Trichloroethylene" AND "Mead NE" | in 1 |
| 51 | "Trichloroethylene" AND "Mead Nebraska" | in 1 |
| 52 | "Trichloroethylene" AND "Wahoo Nebraska" | in 1 |
| 68 | "Mead NE" AND tric | in 1 |
| 69 | "Mead Nebraska" AND tric | in 1 |
| 70 | "Wahoo NE" AND tric | in 1 |
| 74 | "Mead NE" AND trik | in 1 |
| 75 | "Wahoo NE" AND trik | in 1 |
| 11 | ~~"Former Nebraska Ordnance Plant"~~ | in 10 |
| 24 | ~~"Nebraska Ordnance Plant" AND "Personnel"~~ | in 10 |
| 29 | ~~"PLS" AND "Nebraska Ordnance Plant"~~ | in 10 |
| 48 | "TCE" AND "Nebraska Ordnance Plant" | in 10 |
| 53 | "Trichloroethylene" AND "Nebraska Ordnance Plant" | in 10 |
| 66 | "Nebraska Ordnance Plant" AND trich | in 10 |
| 72 | "Nebraska Ordnance Plant" AND tric | in 10 |
| 37 | "Propellant Loading System" AND Atlas | in 36 |
| 38 | "Propellant Loading System" AND "Atlas D" | in 36 |
| 41 | "Propellant Loading System" AND "Rocketdyne" | in 36 |
| 5 | "566 SMS" | in 4 |
| 6 | "SMS 549" | in 4 |
| 7 | "549 SMS" | in 4 |
| 12 | ~~"Convair" AND "566 SMS"~~ | in 4 |
| 13 | ~~"Convair" AND "549 SMS"~~ | in 4 |
| 14 | ~~"General Dynamics" AND "549 SMS"~~ | in 4 |
| 15 | ~~"General Dynamics" AND "566 SMS"~~ | in 4 |
| 18 | ~~"549 SMS" AND "Dow"~~ | in 4 |
| 19 | ~~"566 SMS" AND "Dow"~~ | in 4 |
| 46 | "TCE" AND "SMS 566" | in 4 |
| 47 | "TCE" AND "SMS 549" | in 4 |
| 71 | "SMS 566" AND tric | in 4 |

| num | terms | revision |
|---|---|---|
| 30 | ~~**SMS 566 AND "Mead Nebraska"**~~ | in 4 and in 1 |
| 31 | ~~**SMS 566 AND "Mead NE"**~~ | in 4 and in 1 |
| 32 | ~~**SMS 566 AND "Wahoo NE"**~~ | in 4 and in 1 |
| 33 | ~~**SMS 549 AND "Mead Nebraska"**~~ | in 4 and in 1 |
| 34 | ~~**SMS 549 AND "Mead NE"**~~ | in 4 and in 1 |
| 35 | ~~**SMS 549 AND "Wahoo NE"**~~ | in 4 and in 1 |
| 39 | **"Propellant Loading System" AND SMS 566** | in 4 but was missing quotes and would find false drops |
| 40 | **"Propellant Loading System" AND SMS 549** | in 4 but was missing quotes and would find false drops |
| 64 | **SMS 566 AND trich** | in 4 but was missing quotes and would find false drops |
| 65 | **SMS 549 AND trich** | in 4 but was missing quotes and would find false drops |
| 76 | **SMS 566 AND trik** | in 4 but was missing quotes and would find false drops |
| 77 | **SMS 549 AND trik** | in 4 but was missing quotes and would find false drops |
| 9 | **"Offutt" AND "Atlas D"** | in 42 |
| 49 | **"Trichloroethylene" AND "Atlas D"** | in 42 |
| 54 | **Rocketdyne AND "Atlas D"** | in 42 |
| 67 | **"Atlas D" AND tric** | in 42 |
| 73 | **"Atlas D" AND trik** | in 42 |
| 56 | **Rocketdyne AND "MA2"** | in 55 |
| 57 | **Rocketdyne AND "MA-3"** | in 55 |
| 58 | **Rocketdyne AND "MA3"** | in 55 |
| 59 | **Rocketdyne AND "MA-5"** | in 55 |
| 60 | **Rocketdyne AND "MA5"** | in 55 |
| 61 | **Rocketdyne AND "G2000"** | in 55 |
| 62 | **Rocketdyne AND "G2006"** | in 55 |
| 80 | **Project Atlas AND MX-1593** | in 78 and in 79 but was missing quotes and would find false drops |
| 63 | **Offutt AND trich** | offutt and (tce or Trichloroethylene or tric or trik) |
| 55 | **Rocketdyne AND "MA-2"** | rocketdyne and ("MA-2" or MA2 or "MA-3" or MA3 or "MA-5" or MA5 or G2000 or G2006) |